CLOSED, JURY, PATENT

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Marshall)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00176-TJW

| | |
|---|---|
| Chi Mei Optoelectronics Corporation v. LG Phillips LCD Co., LTD et al | Date Filed: 05/04/2007 |
| Assigned to: Judge T. John Ward | Date Terminated: 06/09/2008 |
| Cause: 35:271 Patent Infringement | Jury Demand: Plaintiff |
| | Nature of Suit: 830 Patent |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Chi Mei Optoelectronics Corporation**          represented by   **Melissa Richards Smith**
Gillam & Smith, LLP
303 South Washington Avenue
*a Taiwan Corporation*                                                Marshall, TX 75670
903/934-8450
Fax: 903/934-9257
Email: melissa@gillamsmithlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam S Hoffman**
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
310/277-1010
Fax: 310/203-7199
Email: ahoffman@irell.com
*ATTORNEY TO BE NOTICED*

**Alexander Chester Giza**
Irell & Manella LLP
1800 Ave of the Stars
Ste 900
Los Angeles, CA 90067-4276
310/203-7143
Fax: 13102037199
Email: agiza@irell.com
*ATTORNEY TO BE NOTICED*

**Jonathan S Kagan**
Irell & Manella - Los Angeles
1800 Avenue of the Stars

Suite 900
Los Angeles, CA 90067-4276
310/277-1010
Fax: 310/203-7199
Email: jkagan@irell.com
*ATTORNEY TO BE NOTICED*

**Maclain Wells**
Irell & Manella - Los Angeles
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
310.277.1010
Fax: 310.203.7199
Email: mwells@irell.com
*ATTORNEY TO BE NOTICED*

**William Joss Nichols**
Irell & Manella - Los Angeles
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
310-277-1010
Fax: 310-203-7199
Email: JNichols@irell.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**LG Display Co. Ltd**
*a Korean Corporation*

represented by **Franklin Jones, Jr**
Jones & Jones - Marshall
201 W Houston St
PO Drawer 1249
Marshall, TX 75670
903/938-4395
Fax: 9039383360
Email: maizieh@millerfirm.com
*TERMINATED: 08/15/2007*

**Gaspare J Bono**
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC 20006
202-496-7211
Fax: 202-496-7756
Email: gbono@mckennalong.com
*ATTORNEY TO BE NOTICED*

**Jennifer Parker Ainsworth**

Wilson Sheehy Knowles Robertson &
Cornelius PC
909 ESE Loop 323
Suite 400
P.O. Box 7339
Tyler, TX 75711-7339
903-509-5000
Fax: 903-509-5092
Email: jainsworth@wilsonlawfirm.com
*ATTORNEY TO BE NOTICED*

**John William Lomas, Jr.**
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC 20006
202-496-7183
Fax: 202-496-7756
Email: jlomas@mckennalong.com
*ATTORNEY TO BE NOTICED*

**Mike C Miller**
Attorney at Law
201 W Houston
Marshall, TX 75670
903/938-4395
Fax: 19039383360
Email: mikem@millerfirm.com
*TERMINATED: 04/11/2008*

**R Tyler Goodwyn, IV**
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC 20006
202-496-7143
Fax: 202-496-7756
Email: tgoodwyn@mckennalong.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**LG Display America, Inc**                    represented by    **Franklin Jones, Jr**
*a California Corporation*                                        (See above for address)
                                                                 *TERMINATED: 08/15/2007*
                                                                 *LEAD ATTORNEY*

                                                                 **Gaspare J Bono**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Jennifer Parker Ainsworth**
                                                                 (See above for address)

*ATTORNEY TO BE NOTICED*

**John William Lomas, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mike C Miller**
(See above for address)
*TERMINATED: 04/11/2008*

**R Tyler Goodwyn, IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Chi Mei Optoelectronics USA, Inc.**          represented by  **Adam S Hoffman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maclain Wells**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Joss Nichols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Display Co, Ltd**          represented by  **Gaspare J Bono**
*a Korean Corporation*                                 (See above for address)
*ATTORNEY TO BE NOTICED*

**John William Lomas, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R Tyler Goodwyn, IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Chi Mei Optoelectronics Corporation**          represented by  **Alexander Chester Giza**
(See above for address)
*a Taiwan Corporation*                                 *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Display America, Inc**          represented by  **Gaspare J Bono**

*a California Corporation*

(See above for address)
*ATTORNEY TO BE NOTICED*

**John William Lomas, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R Tyler Goodwyn, IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**Chi Mei Optoelectronics Corporation**

*a Taiwan Corporation*

<u>**Counter Claimant**</u>

**Chi Mei Optoelectronics Corporation**      represented by **Alexander Chester Giza**
(See above for address)
*a Taiwan Corporation*                                       *ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**LG Display Co. Ltd**                    represented by **Gaspare J Bono**
*a Korean Corporation*                                       (See above for address)
*ATTORNEY TO BE NOTICED*

**John William Lomas, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R Tyler Goodwyn, IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Defendant**</u>

**LG Display America, Inc**               represented by **Gaspare J Bono**
*a California Corporation*                                   (See above for address)
*ATTORNEY TO BE NOTICED*

**John William Lomas, Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R Tyler Goodwyn, IV**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Display Co. Ltd**                    represented by    **Gaspare J Bono**
*a Korean Corporation*                                      (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John William Lomas, Jr.**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike C Miller**
                                                            (See above for address)
                                                            *TERMINATED: 04/11/2008*

                                                            **R Tyler Goodwyn, IV**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**LG Display America, Inc**               represented by    **Gaspare J Bono**
*a California Corporation*                                  (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John William Lomas, Jr.**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Mike C Miller**
                                                            (See above for address)
                                                            *TERMINATED: 04/11/2008*

                                                            **R Tyler Goodwyn, IV**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Chi Mei Optoelectronics Corporation**

*a Taiwan Corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/04/2007 | 1 | COMPLAINT with JURY DEMAND against LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Filing fee $ 350.) , filed by Chi Mei Optoelectronics Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Civil Cover Sheet)(ehs, ) (Entered: 05/04/2007) |

| 05/04/2007 | | E-GOV SEALED SUMMONS Issued as to Chi Mei Optoelectronics Corporation. (ehs, ) (Entered: 05/04/2007) |
|---|---|---|
| 05/04/2007 | 2 | Magistrate Consent Form Mailed to Chi Mei Optoelectronics Corporation (ehs, ) (Entered: 05/04/2007) |
| 05/04/2007 | 3 | Form mailed to Commissioner of Patents and Trademarks. (ehs, ) (Entered: 05/04/2007) |
| 05/04/2007 | | Filing fee: $ 350.00, receipt number 2-1-2523 (ehs, ) (Entered: 05/04/2007) |
| 05/09/2007 | 4 | E-GOV SEALED SUMMONS Issued as to LG Phillips LCD Co., LTD, LG Philips LCD America, Inc.. (ch, ) (Entered: 05/09/2007) |
| 05/29/2007 | 5 | ***FILED IN ERROR, PLEASE IGNORE.*** <br><br> NOTICE by LG Phillips LCD Co., LTD *Stipulation and Agreement Not to Contest Sufficiency of Process or Sufficiency of Service of Process and to Extend Time to Respond to the Complaint* (Attachments: # 1 Melissa Smith Signature)(Jones, Franklin) Modified on 5/30/2007 (sm, ). (Entered: 05/29/2007) |
| 05/30/2007 | | ***FILED IN ERROR, WRONG EVENT, MUST REFILE AS A STIPULATION TO EXTEND TIME*** <br><br> . Document # 5, Notice. PLEASE IGNORE.*** <br><br> (sm, ) (Entered: 05/30/2007) |
| 05/30/2007 | 6 | NOTICE of Attorney Appearance by Franklin Jones, Jr on behalf of all defendants (Jones, Franklin) (Entered: 05/30/2007) |
| 05/30/2007 | 7 | NOTICE of Attorney Appearance by Mike C Miller on behalf of all defendants (Miller, Mike) (Entered: 05/30/2007) |
| 05/30/2007 | 8 | STIPULATION *Joint Stipulation to Extend Time to File Answer* by LG Phillips LCD Co., LTD. (Jones, Franklin) (Entered: 05/30/2007) |
| 06/01/2007 | | Answer Due Deadline Updated for LG Phillips LCD Co., LTD to 8/13/2007; LG Philips LCD America, Inc. to 8/13/2007 per stipulation filed. (sm, ) (Entered: 06/01/2007) |
| 06/15/2007 | 9 | MOTION to Change Venue *Defendants' Motion to Transfer This Case to Delaware* by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc.. (Attachments: # 1 Affidavit Declaration of Mike C. Miller, Esq.# 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E (Part 1 of 2)# 7 Exhibit E (Part 2 of 2)# 8 Exhibit F# 9 Exhibit G# 10 Exhibit H# 11 Text of Proposed Order Order Granting Defendants' Motion to Transfer)(Jones, Franklin) (Entered: 06/15/2007) |
| 06/27/2007 | 10 | MOTION for Extension of Time to File *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend Time to Respond to Defendants' Motion to Transfer This Case to Delaware* by Chi Mei Optoelectronics Corporation. (Attachments: # 1 Text of Proposed Order)(Smith, Melissa) |

| | | (Entered: 06/27/2007) |
|---|---|---|
| 06/28/2007 | 11 | RESPONSE to Motion re 10 MOTION for Extension of Time to File *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend Time to Respond to Defendants' Motion to Transfer This Case to Delaware Defendants' Response to Plaintiff's Motion to Extend Time to Respond to Defendants' Motion to Transfer filed by LG Phillips LCD Co., LTD.* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Text of Proposed Order)(Jones, Franklin) (Entered: 06/28/2007) |
| 06/28/2007 | 12 | APPLICATION to Appear Pro Hac Vice by Attorney Jonathan S Kagan for Chi Mei Optoelectronics Corporation (RECEIPT 2-1-2742). (rml, ) (Entered: 07/05/2007) |
| 07/09/2007 | 13 | REPLY to Response to Motion re 10 MOTION for Extension of Time to File *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend Time to Respond to Defendants' Motion to Transfer This Case to Delaware Plaintiff Chi Mei Optoelectronics Corporation's Reply in Support of its Motion to Extend Time to Respond to Defendants' Motion to Transfer filed by Chi Mei Optoelectronics Corporation.* (Smith, Melissa) (Entered: 07/09/2007) |
| 07/10/2007 | 14 | ORDER granting 10 Pla Chi Mei Optoelectronics Corporation Opposed Motion to Extend time to Respond to Dft Motion to Transfer this case to Delaware. Deadline for response is 7/11/07. Signed by Judge T. John Ward on 7/10/07. (ch, ) (Entered: 07/10/2007) |
| 07/11/2007 | 15 | RESPONSE in Opposition re 9 MOTION to Change Venue *Defendants' Motion to Transfer This Case to Delaware Plaintiff Chi Mei Optoelectronics Corporation's Opposition to Defendants' Motion to Transfer filed by Chi Mei Optoelectronics Corporation.* (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Text of Proposed Order)(Smith, Melissa) (Entered: 07/11/2007) |
| 07/18/2007 | 16 | REPLY to Response to Motion re 9 MOTION to Change Venue *Defendants' Motion to Transfer This Case to Delaware Defendants' Reply Memorandum In Support of Their Motion to Transfer This Case To Delaware filed by LG Phillips LCD Co., LTD.* (Jones, Franklin) (Entered: 07/18/2007) |
| 07/26/2007 | 17 | NOTICE by LG Philips LCD America, Inc. *Defendants' Unopposed Notice of Entry of Order of Consolidation by the District Court of Delaware* (Attachments: # 1 Exhibit)(Jones, Franklin) (Entered: 07/26/2007) |
| 07/30/2007 | 18 | SUR-REPLY to Reply to Response to Motion re 9 MOTION to Change Venue *Defendants' Motion to Transfer This Case to Delaware filed by Chi Mei Optoelectronics Corporation.* (Kagan, Jonathan) (Entered: 07/30/2007) |
| 08/06/2007 | 19 | ***FILED IN ERROR, PLEASE IGNORE.***<br><br>MOTION for Extension of Time to File Response/Reply *Defendants' Opposed Motion to Extend Time to Respond to the Complaint* by LG Phillips LCD Co., LTD. (Attachments: # 1 Text of Proposed Order)(Jones, Franklin) Modified on 8/6/2007 (sm, ). (Entered: 08/06/2007) |

| | | |
|---|---|---|
| 08/06/2007 | | ***FILED IN ERROR, PER ATTY, WRONG DOCUMENT FILED, ATTY WILL REFILE***<br><br>. Document # 19, Motion. PLEASE IGNORE.***<br><br>(sm, ) (Entered: 08/06/2007) |
| 08/06/2007 | 20 | MOTION for Extension of Time to File Response/Reply *Defendants' Opposed Motion to Extend Time to Respond to the Complaint* by LG Phillips LCD Co., LTD. (Attachments: # 1 Text of Proposed Order)(Jones, Franklin) (Entered: 08/06/2007) |
| 08/06/2007 | 21 | RESPONSE in Opposition re 20 MOTION for Extension of Time to File Response/Reply *Defendants' Opposed Motion to Extend Time to Respond to the Complaint Plaintiff Chi Mei Optoelectronics Corporation's Opposition to Defendants' Motion to Extend Time to Respond to the Complaint filed by Chi Mei Optoelectronics Corporation.* (Attachments: # 1 Text of Proposed Order) (Smith, Melissa) (Entered: 08/06/2007) |
| 08/07/2007 | 22 | MOTION for Leave to File *Defendants' Motion for Leave to File Response to Plaintiff's Sur-Reply* by LG Phillips LCD Co., LTD. (Attachments: # 1 Exhibit A# 2 Text of Proposed Order)(Jones, Franklin) Additional attachment(s) added on 8/8/2007 (sm, ). (Entered: 08/07/2007) |
| 08/07/2007 | 23 | ORDER denying 20 Motion for Extension of Time to File Response/Reply . Signed by Judge T. John Ward on 8/7/07. (ch, ) (Entered: 08/07/2007) |
| 08/07/2007 | 24 | RESPONSE in Opposition re 22 MOTION for Leave to File *Defendants' Motion for Leave to File Response to Plaintiff's Sur-Reply Plaintiff Chi Mei Optoelectronics Corporation's Opposition to Defendants' Motion for Leave to File Response filed by Chi Mei Optoelectronics Corporation.* (Attachments: # 1 Text of Proposed Order)(Smith, Melissa) (Entered: 08/07/2007) |
| 08/13/2007 | 25 | *LG Phillips LCD Co., Ltd's* ANSWER to Complaint with Jury Demand, COUNTERCLAIM *Against Plaintiff and Additional Party Chi Mei Optoelectronics USA, Inc.* against Chi Mei Optoelectronics Corporation by LG Phillips LCD Co., LTD. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E)(Miller, Mike) (Entered: 08/13/2007) |
| 08/13/2007 | 26 | *LG Phillips LCD America Inc.'s* ANSWER to Complaint with Jury Demand, COUNTERCLAIM against Chi Mei Optoelectronics Corporation by LG Philips LCD America, Inc..(Miller, Mike) (Entered: 08/13/2007) |
| 08/14/2007 | 27 | MOTION to Withdraw *Defendants' Unopposed Motion for Withdrawal of Counsel* by LG Phillips LCD Co., LTD. (Attachments: # 1 Text of Proposed Order)(Jones, Franklin) (Entered: 08/14/2007) |
| 08/15/2007 | 28 | ORDER granting 27 Dft's Unopposed Motion for Withdrawal of Counsel . Signed by Judge T. John Ward on 8/15/07. (ch, ) (Entered: 08/15/2007) |
| 08/23/2007 | 29 | MOTION for Extension of Time to File *Agreed and Stipulated Motion for Extension of Time to Answer or Otherwise Respond to Defendants' Counterclaims and Waiver of Service of Process* by Chi Mei Optoelectronics |

| | | |
|---|---|---|
| | | Corporation. (Attachments: # 1 Text of Proposed Order)(Smith, Melissa) (Entered: 08/23/2007) |
| 08/23/2007 | 30 | ORDER granting 22 Defendants' Motion for Leave to File Response to Plaintiff's Sur-reply. Plaintiff's response to Defendants' Response to Plaintiff's Sur-reply Regarding the Motion to Transfer this Case to Delaware should be filed within five (5) business days of this order. Such response should not exceed two (2) pages. Signed by Judge T. John Ward on 8/23/07. (kjr, ) (Entered: 08/23/2007) |
| 08/24/2007 | 31 | ORDER granting 29 Motion for Extension of Time to File response to deft's counterclaims. Deadline for pltf to file their response extended to 10/9/07. Signed by Judge T. John Ward on 8/24/07. (ehs, ) (Entered: 08/24/2007) |
| 08/30/2007 | 32 | SURREPLY to SURREPLY to REPLY to Response to Motion re 9 MOTION to Change Venue, Defendants' Motion to Transfer This Case to Delaware< (Plaintiff Chi Mei Optoelectronics Corporation's Response to Defendants' Supplemental Brief Regarding Its Motion to Transfer RE: 30 order) *filed by Chi Mei Optoelectronics Corporation*. (Smith, Melissa) Modified on 8/31/2007 (sm, ). (Entered: 08/30/2007) |
| 09/04/2007 | 33 | Additional Attachments to Main Document: 32 Reply to Response to Motion,.. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Smith, Melissa) (Entered: 09/04/2007) |
| 10/04/2007 | 34 | APPLICATION to Appear Pro Hac Vice by Attorney Alexander Chester Giza for Chi Mei Optoelectronics Corporation. (APPROVED) (FEE PAID) 2-1-3084 (ch, ) (Entered: 10/05/2007) |
| 10/09/2007 | 35 | *CMO's and CMO USA's* ANSWER to Counterclaim *by LPL*, COUNTERCLAIM against all defendants by Chi Mei Optoelectronics Corporation(a Taiwan Corporation). (Attachments: # 1 Exhibit Ex A to Reply/Counterclaims# 2 Exhibit Ex B to Reply/Counterclaims)(Giza, Alexander) (Entered: 10/09/2007) |
| 10/09/2007 | 36 | *CMO's* ANSWER to Counterclaim *by LPLA* by Chi Mei Optoelectronics Corporation(a Taiwan Corporation).(Giza, Alexander) (Entered: 10/09/2007) |
| 10/23/2007 | 37 | EARLY DISCOVERY ORDER - the court, sua sponte, orders the following. Signed by Judge T. John Ward on 10/23/07. (ch, ) (Entered: 10/23/2007) |
| 11/02/2007 | 38 | *LG Phillips LCD Co., Ltd.'s and LG Philips LCD America Inc.'s* ANSWER to Counterclaim *(CMO's Related Counterclaims)*, COUNTERCLAIM *LG. Philips Co., Ltd's and LG. Phillips LCD America Inc,'s Related Counterclaims* against Chi Mei Optoelectronics Corporation by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc..(Miller, Mike) (Entered: 11/02/2007) |
| 11/08/2007 | 39 | NOTICE by LG Phillips LCD Co., LTD *Notice of Compliance with PR 3-1* (Miller, Mike) (Entered: 11/08/2007) |
| 11/08/2007 | 40 | NOTICE of Disclosure by Chi Mei Optoelectronics Corporation *Compliance with PR 3-1 & 3-2* (Giza, Alexander) (Entered: 11/08/2007) |
| 11/26/2007 | 41 | ANSWER to Counterclaim *of LPL and LPLA* by Chi Mei Optoelectronics |

| | | Corporation.(Giza, Alexander) (Entered: 11/26/2007) |
|---|---|---|
| 12/11/2007 | 42 | ORDER - Status Conference set for 1/8/2008 09:00 AM before Judge T. John Ward and Judge Chad Everingham. Signed by Judge T. John Ward on 12/11/07. (ch, ) (Entered: 12/11/2007) |
| 12/13/2007 | 43 | NOTICE of Attorney Appearance by R Tyler Goodwyn, IV on behalf of LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Goodwyn, R) (Entered: 12/13/2007) |
| 12/13/2007 | 44 | NOTICE of Attorney Appearance by Gaspare J Bono on behalf of LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Bono, Gaspare) (Entered: 12/13/2007) |
| 12/14/2007 | 45 | NOTICE by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. re 9 MOTION to Change Venue *Defendants' Motion to Transfer This Case to Delaware Notice of Case Reassignment by the District Court of Delaware Related to Defendants' Pending Motion to Transfer this Case to Delaware* (Attachments: # 1 Exhibit A# 2 Exhibit B)(Miller, Mike) (Entered: 12/14/2007) |
| 12/26/2007 | 46 | NOTICE of Attorney Appearance by John William Lomas, Jr on behalf of LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Lomas, John) (Entered: 12/26/2007) |
| 12/27/2007 | 47 | NOTICE by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. *of Compliance with P.R. 3-3* (Lomas, John) (Entered: 12/27/2007) |
| 12/28/2007 | 48 | NOTICE of Disclosure by Chi Mei Optoelectronics USA, Inc., Chi Mei Optoelectronics Corporation *Compliance with P.R. 3-3 & 3-4* (Giza, Alexander) (Entered: 12/28/2007) |
| 01/07/2008 | 49 | NOTICE by Chi Mei Optoelectronics Corporation re 45 Notice (Other), Notice (Other) *regarding Delaware case* (Giza, Alexander) (Entered: 01/07/2008) |
| 01/08/2008 | | Minute Entry for proceedings held before Judge T. John Ward and Judge Chad Everingham: Status Conference held on 1/8/2008. Claim construction hearing date and trial date were given to parties. Parties are to meet and confer regarding a scheduling order and discovery order. (Court Reporter Susan Simmons.) (shd, ) (Entered: 01/09/2008) |
| 01/08/2008 | 50 | Minute Entry for proceedings held before Judge T. John Ward and Judge Charles Everingham: Status Conference held on 1/8/08. Counsel for the parties appeared and were asked if they consented to Judge Everingham. Depending on their answer, they were then given Markman and jury selection dates for the appropriate court. The parties are to meet and confer regarding a scheduling order and discovery order, and the parties have 14 days to submit the proposed orders. The Court further instructed the parties that the time for complying with P.R. 3-1 would be 10 days after the date of the parties filing their proposed orders. Court Adjourned. (Court Reporter Susan Simmons) (jml) (Entered: 01/09/2008) |
| 01/09/2008 | 51 | ORDER - parties shall submit their proposed docket control and discovery orders to the court on January 22, 2007. Deadlines under the local patent rules, the court deems February 5, 2007 to be the date of the initial case management |

| | | |
|---|---|---|
| | | conference. Disclosure of Asserted Claims and Infringement Contentions is due on February 19, 2007.. Signed by Judge T. John Ward on 1/9/08. (ch, ) (Entered: 01/09/2008) |
| 01/10/2008 | 52 | APPLICATION to Appear Pro Hac Vice by Attorney William Joss Nichols for Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Corporation. (APPROVED)(FEE PAID) 2-1-3381 (ch, ) (Entered: 01/11/2008) |
| 01/10/2008 | 53 | APPLICATION to Appear Pro Hac Vice by Attorney Maclain Wells for Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Corporation. (APPROVED)(FEE PAID) 2-1-3381 (ch, ) (Entered: 01/11/2008) |
| 01/10/2008 | 54 | APPLICATION to Appear Pro Hac Vice by Attorney Adam S Hoffman for Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Corporation. (APPROVED)(FEE PAID) 2-1-3381 (ch, ) (Entered: 01/11/2008) |
| 01/23/2008 | 55 | NOTICE of filing proposed docket control and discovery orders by Chi Mei Optoelectronics Corporation, LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Attachments: # 1 Proposed Discovery Order)(ehs, ) (Entered: 01/23/2008) |
| 02/01/2008 | 56 | DISCOVERY ORDER. Signed by Judge T. John Ward on 2/1/08. (ch, ) (Entered: 02/01/2008) |
| 02/15/2008 | 57 | NOTICE by LG Phillips LCD Co., LTD *Notice of Setting of Trial Date in Related Delaware Case Relevant to Defendants' Pending Motion to Transfer This Case to Delaware* (Miller, Mike) (Entered: 02/15/2008) |
| 03/04/2008 | 58 | DOCKET CONTROL ORDER - Amended Pleadings due by 11/15/2008.,Discovery due by 7/7/2009.,Joinder of Parties due by 8/1/2008.,Markman Hearing set for 5/7/2009 09:00 AM before Judge T. John Ward.,Motions due by 7/17/2009.,Proposed Pretrial Order due by 7/13/2009., Jury Selection set for 8/3/2009 09:00AM before Judge T. John Ward., Pretrial Conference set for 7/24/2009 09:00 AM before Judge T. John Ward. Mediation deadline 7/7/09. All other deadlines are set forth herein. Signed by Judge T. John Ward on 3/4/08. (ch, ) (Entered: 03/04/2008) |
| 03/05/2008 | 59 | NOTICE of Disclosure by Chi Mei Optoelectronics Corporation (Smith, Melissa) (Entered: 03/05/2008) |
| 03/05/2008 | 60 | NOTICE of Disclosure by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Lomas, John) (Entered: 03/05/2008) |
| 03/10/2008 | 61 | NOTICE by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. *of Party Name Change* (Lomas, John) (Entered: 03/10/2008) |
| 03/18/2008 | 62 | NOTICE of Attorney Appearance by Jennifer Parker Ainsworth on behalf of LG Phillips LCD Co., LTD, LG Philips LCD America, Inc. (Ainsworth, Jennifer) (Entered: 03/18/2008) |
| 03/18/2008 | 63 | Consent MOTION for Name Changes of Defendants/Counterclaim Plaintiffs and to Amend the Case Caption by LG Phillips LCD Co., LTD, LG Philips LCD America, Inc.. (Attachments: # 1 Text of Proposed Order)(Ainsworth, Jennifer) (Entered: 03/18/2008) |

| 03/24/2008 | 64 | ORDER granting 63 Motion for Name change of Dft/Counterclaim Plaintiffs and to Amend the case caption. Accordingly, LG Display Co Ltd is the named dft in this action and replaces LG Philips LCD Co Ltd. Also LG Display America, Inc. is the named dft in this action and replaces LG Philips LCD America, Inc. All future filing should reflect such change. Signed by Judge T. John Ward on 3/24/08. (ch, ) (Entered: 03/24/2008) |
|---|---|---|
| 03/31/2008 | 65 | MEMORANDUM OPINION and ORDER - granting deft's motion to transfer this case to the District of Delaware. Signed by Judge T. John Ward on 3/31/08. (ehs, ) (Entered: 03/31/2008) |
| 03/31/2008 |  | Pursuant to Local Rule 83(b) Clerk will hold the transfer of this case for twenty days pending a response by the parties (ehs, ) (Entered: 03/31/2008) |
| 04/07/2008 | 66 | MOTION for Extension of Time to Complete Discovery *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend The Time to Respond to Defendant LG Display Co. LTD's First Set of Interrogatories* by Chi Mei Optoelectronics Corporation. (Attachments: # 1 Exhibit A# 2 Text of Proposed Order)(Smith, Melissa) (Entered: 04/07/2008) |
| 04/08/2008 | 67 | RESPONSE in Opposition re 66 MOTION for Extension of Time to Complete Discovery *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend The Time to Respond to Defendant LG Display Co. LTD's First Set of Interrogatories filed* by LG Display Co. Ltd. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D)(Ainsworth, Jennifer) (Entered: 04/08/2008) |
| 04/09/2008 | 68 | REPLY TO RESPONSE TO 66 MOTION for Extension of Time to Complete Discovery *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend The Time to Respond to Defendant LG Display Co. LTD's First Set of Interrogatories Plaintiff Chi Mei Optoelectronics Corporation's Reply in Support of Its Opposed Motion to Extend the Time to Respond to Defendant LG Display Co., Ltd.'s First Set of Interrogatories filed* by Chi Mei Optoelectronics Corporation. (Smith, Melissa) Modified on 4/10/2008 (sm, ). (Entered: 04/09/2008) |
| 04/09/2008 | 69 | MOTION to Withdraw as Attorney by LG Display Co. Ltd. (Attachments: # 1 Text of Proposed Order)(Miller, Mike) (Entered: 04/09/2008) |
| 04/10/2008 |  | NOTICE FROM CLERK re 68 Response in Support of Motion. THis entry has been modified to reflect that it is a REPLY. (sm, ) (Entered: 04/10/2008) |
| 04/11/2008 | 70 | ORDER granting 69 Motion to Withdraw as Attorney. Attorney Mike C Miller terminated. Signed by Judge T. John Ward on 4/11/08. (ehs, ) (Entered: 04/11/2008) |
| 04/15/2008 | 71 | STIPULATION re 66 MOTION for Extension of Time to Complete Discovery *Plaintiff Chi Mei Optoelectronics Corporation's Opposed Motion to Extend The Time to Respond to Defendant LG Display Co. LTD's First Set of Interrogatories* by Chi Mei Optoelectronics Corporation, LG Display Co. Ltd, LG Display America, Inc. (Ainsworth, Jennifer) (Entered: 04/15/2008) |
| 04/18/2008 | 72 | NOTICE by Chi Mei Optoelectronics Corporation re 65 Memorandum & |

| | | |
|---|---|---|
| | | Opinion *Plaintiff Chi Mei Optoelectronics Corporation's Request for Reconsideration of Order Granting LG Display's Motion to Transfer* (Attachments: # 1 Exhibit A)(Smith, Melissa) (Entered: 04/18/2008) |
| 04/21/2008 | 73 | NOTICE by LG Display Co. Ltd, LG Display America, Inc re 72 Notice (Other), Notice (Other) *(Response to Plaintiff's Request for Reconsideration of Order Granting LG Display's Motion to Transfer)* (Ainsworth, Jennifer) (Entered: 04/21/2008) |
| 04/30/2008 | 74 | NOTICE by LG Display Co. Ltd, LG Display America, Inc *(Notice of Order Denying CMO's Motion to Dismiss in Related Delaware Case That Establishes CMO's Pending Request for Reconsideration of This Court's Transfer Order Should be Denied)* (Attachments: # 1 Exhibit A# 2 Exhibit B)(Ainsworth, Jennifer) (Entered: 04/30/2008) |
| 05/27/2008 | 75 | ORDER - before the court is Plaintiffs Notice of Request for Reconsideration of Order granting LG Display's Motion to Transfer 72 and related briefing. Though filed as notice, the court treats this as a motion for reconsideration. After careful consideration, this motion is DENIED. The court reaffirms its ruling in the Memorandum Opinion and order issued on 3/31/08. Doc # 65 . Signed by Judge T. John Ward on 5/27/08. (ch, ) (Entered: 05/27/2008) |
| 06/09/2008 | | Interdistrict transfer to the District of Delaware. Certified copy of Docket Sheet, Complaint, and transfer order were sent to US District Court District of Delaware, J. Caleb Boggs Federal Building, Lockbox 18, 844 North King Street, Wilmington, DE 19801 (ch, ) (Entered: 06/09/2008) |

**PACER Service Center**

**Transaction Receipt**

06/13/2008 08:48:44

| | | | |
|---|---|---|---|
| **PACER Login:** | ud0037 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:07-cv-00176-TJW |
| **Billable Pages:** | 9 | **Cost:** | 0.72 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

CHI MEI OPTOELECTRONICS
CORPORATION, a Taiwan Corporation,

        Plaintiff,

      v.

LG.PHILIPS LCD CO., LTD., a Korean
Corporation, and
LG.PHILIPS LCD AMERICA, INC., a
California Corporation,

        Defendants.

Civil Action No. 2:07-cv-00176-TJW

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO TRANSFER THIS CASE TO DELAWARE**

On December 1, 2006, LPL filed suit against CMO and AUO in the District of Delaware

for infringement of patents relating to LCD technology. Then, within six months, these

defendants turned around and sued LPL for alleged infringement of similar patents in the

Western District of Wisconsin (AUO) and in this District (CMO). On May 30, 2007, Judge

Shabaz rejected this gamesmanship, transferring AUO's case from Wisconsin to Delaware. *AU

Optronics Corp. v. LG.Philips LCD Co., Ltd.*, No. 07-C-137-S, 2007 U.S. Dist. LEXIS 39340

(W.D. Wis. May 30, 2007).[1] Judge Shabaz found that the "Delaware action was first filed and is

the only action where all of the issues between the parties have been raised", and that the

"interest of justice would be undermined by the duplication and waste of judicial resources that

would occur by keeping this action in both courts." *Id.* at *6. Judge Shabaz's carefully reasoned

decision, therefore, is central to the issues before this Court.

---

[1] Judge Shabaz's decision is Exhibit C to LPL's opening memorandum.

Remarkably, however, CMO does not even mention Judge Shabaz's decision until page 12 of its 15-page memorandum, and even then limits its discussion to a single sentence. Instead, CMO spends much of its opposition accusing LPL of "procedural trickery." (Opp. at 2.) But this accusation rings hollow in light of Judge Shabaz's ruling and the fact that CMO does not deny that this case could originally have been brought in the District of Delaware.[2] This Court should therefore transfer this case to Delaware.

## I. THE FIRST TO FILE RULE COMPELS TRANSFER

The first part of CMO's opposition is spent advancing two arguments that the Delaware action is not first filed. Neither is persuasive. First, CMO contends that the May 22, 2007, amended complaint that LPL filed against CMO is "inoperative" because LPL previously amended its complaint against AUO. (Opp. at 5-7.) However, as indicated in LPL's opening brief, the May 22 complaint was the first amended complaint filed against CMO and thus permissible as a matter of right. Indeed, the Court accepted the pleading, it remains on the docket, and CMO has never filed a motion to strike. Moreover, even if a procedural defect did exist, it could be cured easily at this stage of the proceedings under Rule 15. Second, CMO contends that the declaratory judgment counts added to the May 22 complaint (to make it mirror this action) do not "relate back" to the original filing. (Opp. at 7-12.) Judge Shabaz, however, rejected this precise argument when AUO raised it in opposition to transfer of its Wisconsin action. *See* 2007 U.S. Dist. LEXIS 39340, *4 (citing cases finding it "immaterial that the issues

---

[2] A true example of "procedural trickery" is seen in the Delaware action itself where CMO (with different counsel) has disregarded Federal Circuit precedent and continued to dispute personal jurisdiction, thereby compelling LPL to file a pending motion for sanctions. *See, e.g.*, *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp. et al.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) (finding that since before 2005, there has been "a prima facie case for CMO's use of an established distribution network that likely results in substantial sales of its products in Delaware").

raised in the second suit were not included in the first until after a subsequent amendment was filed"); *Versus Tech., Inc. v. Hillenbrand Industries, Inc.*, No. 1:04-CV-168, 2004 WL 3457629, *7 (W.D. Mich. Nov. 23, 2004) (court transferred case because declaratory judgment counts added in the amendment related back to initial complaint for purposes of the first-filed rule).

Federal Circuit precedent "favors the first-to-file rule in the absence of circumstances making it unjust or inefficient to permit a first-filed action to proceed to judgment." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005) (internal quotation omitted). CMO can point to no circumstance, which would justify disregarding the first filed rule and Judge Shabaz's sound decision.

## II.    <u>CMO'S CLAIMS ARE PENDING IN DELAWARE</u>

CMO spends several pages parsing the U.S. Patent Classification System in an effort to show a lack of overlap between this case and the Delaware action.  This argument fails for at least four reasons.  First, as a threshold matter, transfer "does not require that the core issues be identical, but that the two actions will involve closely related questions or subject matter." *AmberWave Sys. Co. v. Intel Co.*, No. 2:05-CV-321, 2005 WL 2861476, at *2 (E.D. Tex. Nov 1, 2005) (Davis, D.J.) (ordering transfer).  Second, CMO itself acknowledges that the Delaware action involves alleged "infringement of three patents related to ***certain aspects of LCD technology***" whereas this action involves alleged "infringement of four patents that relate to ***various aspects of LCD technology***."  (Opp. at 3, 4; emphasis added.)  Third, CMO's discussion obscures the fact that one of LPL's patents-in-suit ('449) and two of CMO's patents-in-suit ('352 and '926) are in Class 349, entitled "Liquid Crystal Cells, Elements and Systems."  Fourth, LPL's other two patents-in-suit ('002 and '737) pre-date the PTO's establishment of Class 349 in December 1996.  It is disingenuous to argue that the fact these patents were not placed in a yet-to-be created class is a reason to deny transfer.

Contrary to CMO's argument, this case is *not* "very similar" to the situation Judge Davis

faced in *Garmin, Ltd. v. TomTom, Inc.*, No. 2:06CV338, 2007 WL 708587 (E.D. Tex. March 5,

2007). CMO's discussion of *Garmin* ignores that the first-filed case had been almost completely

disposed of on summary judgment before Judge Davis was asked to transfer the later-filed

action. Furthermore, in *Garmin*, Judge Davis noted that the defendant did not argue that transfer

would result in consolidation of the two cases. *Id.* at *2. Here, by contrast, consolidation is a

primary goal. Indeed, on July 6, 2007, AUO and LPL filed a joint motion in the District of

Delaware to consolidate AUO's transferred Wisconsin action with LPL's original action. CMO

also makes no effort to distinguish *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,

C.A. No. 2:06-CV-151, 2007 WL 712289 (E.D. Tex. Mar. 6, 2007) (Ward, D.J.). In *Fairchild*,

this Court recently transferred a patent infringement case to the District of Delaware for

consolidation with a first-filed Delaware case because of the "overlapping parties and subject

matter." *Id.* at *2. Accordingly, this Court should transfer this case because the same parties are

present and the same subject matter is at issue in Delaware.

## III.    THE INTERESTS OF JUSTICE REQUIRE TRANSFER

A single judge and jury should hear both actions because the Delaware action and this

case involve the same and similar patents and products (*e.g.*, LCD modules used in monitors and

televisions).[3] To argue otherwise, CMO must ignore the extent to which parallel actions would

require redundant use of documents (many of which will require translation) and party testimony

---

[3] The Delaware action was recently reassigned to Chief Judge Sleet, who presided over long-running patent infringement litigation regarding computer monitors, which products are also at issue here. *See, e.g.*, *In re Elonex Phase II Power Mgmt. Litig.*, 279 F. Supp. 2d 521 (D. Del. 2003). Further, LPL does not contest this Court's jurisdiction and therefore – contrary to CMO's suggestions (Opp. at 3) – its intervention in another action in this District is irrelevant to the present motion.

(much of which will require a translator).  For example, large LCD manufacturers such as the parties here often have their sales, marketing, advertising, and manufacturing employees assigned by product line.  Because sales, marketing, distribution, and licensing are issues common to both cases and because the product lines at issue in both suits are the same, many of the same documents and witnesses (most of whom are in Korea and Taiwan) would be required in both actions.  Similarly, CMO does not account for the extent to which parallel proceedings would impose a burden on key third-party witnesses, including ViewSonic and Tatung, which are parties in the Delaware action because of their role in selling the products at issue.

Contrary to CMO's assertions, this Court has observed that "the plaintiffs' forum choice is neither controlling nor determinative" of whether a case should be transferred.  *Repligen Corp. v. Bristol-Myers Squibb Co.*, No. 2-06-CV-4, 2006 WL 2038561, *2 (E.D. Tex. July 20, 2006) (Ward, D.J.).  CMO's choice of forum should thus be afforded little weight where the central issues concern the design and manufacture of LCD products, which occurred outside this country, and where CMO's U.S. subsidiary, CMO USA, is incorporated in Delaware and CMO USA employees will be witnesses in this case.  Thus, as Judge Shabaz concluded, "[t]he interest of justice *overwhelmingly favors* transfer to Delaware for consolidation with the first filed case presently pending in that Court."  2007 U.S. Dist. LEXIS 39340, at *13 (emphasis added).

Respectfully submitted,

JONES & JONES, INC., PC

/s/ Franklin Jones, Jr.
Franklin Jones, Jr.
Texas State Bar No. 00000055
2201 West Houston Street
Marshall, Texas  75671-1249
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

Mike C. Miller
Texas State Bar No. 14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorneys for Defendants*
*LG.Philips LCD Co., Ltd. and LG.Philips LCD*
*America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

July 18, 2007

DC:50488654.3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a TAIWAN Corporation, | § § § | |
| PLAINTIFF | § § | |
| V. | § § | Civil Action: 2:07-CV-001 |
| LG..PHILIPS LCD CO., LTD, A Korean Corporation, and LG. PHILIPS LCD AMERICA, INC., A California Corporation | § § § § § | |

DEFENDANTS' UNOPPOSED NOTICE OF ENTRY OF ORDER OF
CONSOLIDATION BY THE DISTRICT COURT OF DELAWARE

LG. Philips LCD Co., Ltd. ("LPL") and LG.Philips LCD America, Inc.,

("LPL America"), without opposition from Plaintiffs, hereby provide notice to this

Court that the District Court of Delaware entered an Order of Consolidation on

Monday, July 23, 2007 ("Order"). In Defendants' Reply Brief in Support of their

Motion to Transfer this case to Delaware filed July 18, 2007, Defendants stated that

AU Optronics America ("AUO") and LPL filed a Joint Motion for Consolidation

with the District of Delaware to consolidate AUO's transferred Wisconsin action

with the original Delaware action. (LPL's Reply Brief at 4.) The District Court of

Delaware, J. Farnan, granted that motion on July 19, 2007, and the Order was entered

on the docket on July 23, 2007.  A copy of the Order is Attached as Exhibit A.

Respectfully submitted,

JONES & JONES, INC.
P. O. Drawer 1240
Marshall, Texas 75671
Texas State Bar No. 00000055

s/ *[signature]*

Franklin Jones, Jr.


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 26th day of July, 2007, all counsel of record who are deemed to have consented to electronic service are being served with copy of this document through the Court's CM/EF system under Local Rule CV-5(a)(3).

*[signature]*

Franklin Jones, Jr.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | ) ) ) | Case No. 2:07-cv-00176-TJW |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF CHI MEI OPTOELECTRONICS CORPORATION'S SURREPLY IN**

**FURTHER OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Defendants' reply expressly or tacitly admits the facts that mandate a denial of their motion. Defendants do not dispute that (1) they filed their Delaware claims relating to CMO's patents weeks after CMO asserted these claims in this action, (2) Defendants failed to seek leave of Court to file these claims, (3) both parties have substantial ties to Texas, so it would not be inconvenient or unfair to litigate CMO's claims in Texas, (4) the accused products for CMO's patents do not overlap with the products Defendants have accused of infringement, and (5) there is virtually no technology overlap between CMO's patent claims and the patents asserted by LPL in Delaware, as confirmed by the PTO's own patent classification system.

Rather than attempt to refute any of these core issues, Defendants argue that this Court should transfer CMO's case because Judge Shabaz from the Western District of Wisconsin ordered a discretionary transfer of a case under 28 U.S.C. 1404(a) involving different patents and different parties. Even if that order were binding on this Court (which it is not), the facts that persuaded Judge Shabaz to order a discretionary transfer of the *AUO* case – the absence of any connection to the forum where the plaintiff filed its case and the "duplication" of judicial resources if the cases were tried in different fora – are not present here. Both parties maintain multiple offices in Texas, and the technology at issue in CMO's patents does not substantially overlap with the patents LPL has asserted in Delaware. Thus, the "first-to-file" rule requires that infringement and validity issues relating to CMO's patents should be tried here, and there is no basis for a discretionary transfer.

## I.    The "First-To-File" Rule Requires Denial of Defendants' Motion.

Defendants' reply acknowledges – as it must – the basic facts that disprove its "first-to-file" argument:  that CMO filed its patent claims in this Court on May 4, 2007; and that LPL did not attempt to add its "mirror image" claims until May 22, 2007, without leave of court.  Further, Defendants do not (and cannot) dispute that they filed a first amended complaint in the Delaware action on April 11, 2007 (Exhibit 1), which did not include the declaratory relief claims involving CMO's patents that they attempted to file in a second amended complaint.  Nor do Defendants dispute that a second amendment to a complaint, filed without leave of court, is inoperative.

Unable to dispute any of these key facts, Defendants resort to word games: they argue that the second amended complaint is operative because it is a "first amended complaint filed against

CMO." But Rule 15 does not allow a plaintiff to file one amended complaint per defendant, it simply provides: that "a party may ***amend the party's pleading once*** as a matter of course . . . ." Fed. R. Civ. P. 15(a) (emphasis added). Moreover, contrary to Defendants' suggestion, the first amended complaint includes causes of action against CMO: Claim 1-3 are patent infringement claims directed against all "Defendants," and "Defendants" are expressly defined to include CMO (*see* Exhibit 1 at 1, 8-10). Thus, Defendants' "first-to-file" argument must fail because the complaint containing the "mirror image" allegations is inoperative.

Defendants also wrongly suggest that the Delaware court approved LPL's second amended complaint. Reply at 2. Defendants still have not sought leave to file this complaint, and the Delaware court has thus not even considered whether LPL should be granted leave to file the second amended complaint. As explained in CMO's opposition, moreover, leave to amend would likely be denied in this case because CMO will be able to demonstrate that the claims involving CMO's patents were filed first in Texas, and thus these claims (and LPL's overlapping declaratory judgment claims) should be tried here under the "first-to-file" rule.

Defendants also incorrectly argue that Judge Shabaz's opinion has already determined that LPL's second amended complaint "relates back" to its original complaint. Defendants argue:

> CMO contends that the declaratory judgment counts added to the May 22 complaint (to make it mirror this action) do not "relate back" to the original filing. (Opp. at 7-12). Judge Shabaz, however, rejected this precise argument when AUO raised it in opposition to transfer of its Wisconsin action.

Reply at 2. This is not true. First, because Judge Shabaz's order was based on 28 U.S.C. 1404(a), he did not perform a "relation back" analysis in his order. As CMO explained in its opposition brief, the "relation back" doctrine, as codified in Federal Rule of Civil Procedure 15(c)(2), is used to determine if an amended pleading is entitled to claim the priority date of an earlier-filed pleading; courts need not conduct this analysis to determine whether to grant a discretionary transfer. Second, and more significantly, CMO's patents were not at issue before Judge Shabaz. Thus, Judge Shabaz did not – and could not – have determined whether LPL's May 22 declaratory judgment counts "related back" to its original filing.

**II.    There Is No "Substantial Overlap" Between The Cases**

Defendants further fail to offer any evidence that CMO's claims are an "integral part" of, or "substantially overlap" with, the patent claims LPL filed in its original complaint. They proffer four theories as to why CMO's patent claims "substantially overlap." Notwithstanding that LPL's claims are asserted against an entirely different set of products, LPL ignores the unassailable fact that its patent claims are all based on a set of patents that are unrelated to CMO's patents, and there is no substantial overlap between these families of patents. They further disregard key facts in the case law they attempt to distinguish.

Defendants' first argument is a straw man; it is undisputed that Defendants do not need to show that their patent claims and CMO's patent claims present "identical" issues to obtain a transfer, and that CMO does not need to establish the absence of any overlap in technology. Rather, the precise question is whether any overlap is "substantial." Defendants' second argument, that there must be substantial overlap because both sets of patents relate to LCD technology, is disingenuous. LCD technology incorporates many different underlying technologies – as evidenced by the numerous patent classifications the PTO has assigned to LCDs. A patent related to one aspect of LCD technology (such as reducing the thickness of the display) may have nothing to do with other aspects of LCD technology (such as enhancing color transition). This is precisely the situation explained in *Garmin, Ltd. v. TomTom, Inc*.

In *Garmin*, Judge Davis held that patents that relate to navigation technology – even ones with common inventors and that would likely be asserted against the same set of products – did not "substantially overlap." Defendants attempt to distinguish Judge Davis's "substantial overlap" analysis by arguing that the procedural posture of that case was further along than this one. But the procedural posture of the case only related to the analysis of potential judicial efficiencies; it did not impact the separate "substantial overlap" analysis, which is the key question at issue in this case.

Third, Defendants try to minimize the impact of the PTO's own classification system, but they do not – and cannot – dispute that out of 34 different patent classifications assigned by the PTO originally (or 31 different patent classifications currently), there is only one overlapping classification between the relevant sets of patents. Some overlap, to be sure, but clearly not

"substantial." Fourth, Defendants' argument that some of LPL's patents issued before new patent classifications were created is irrelevant and confusing. Patent classifications, even on issued patents, are updated on the PTO website, as CMO explained in its opposition. For example, the PTO website shows that the **current** U.S. classes for LPL's '002 patent include classifications 216/23 and 438/30, both of which were "yet-to-be created" when the patent issued on May 28, 1991 (classifications established May 2, 1995 and Aug 5, 1997, respectively).[1] If technology classifications for the various patents overlapped, that fact would be reflected on the current PTO website.

Defendants' further fail to discuss the dispositive facts in *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, No. 2:06-cv-151, 2007 WL 712289 (E.D. Tex. Mar. 6, 2007), although they attempt to rely on this case. The reason for Defendants' omission is clear – the facts and circumstances of *Fairchild* bear no resemblance to this case. In *Fairchild*, Power Integrations sued two Fairchild entities for patent infringement in Delaware. With respect to the '075 patent asserted against it, Fairchild contended that another patent, the '719 patent, was prior art. *Fairchild Semiconductor Corp.*, 2007 WL 712289, at *1. During the pendency of the Delaware case, Fairchild acquired the right to enforce the '719 patent against Power Integrations and then sued on the '719 patent only in Texas. *Id.* Under these circumstances – where the patent being asserted in the second case was prior art to the patent in the first case – this Court found that there was substantial overlap. By contrast here, neither sets of patents have been asserted to be prior art against the other, and therefore *Fairchild* has no relevance.

## III.    Defendants Have Not Satisfied Their Burden For A Transfer Under § 1404(a).

Defendants argue for discretionary transfer under section 1404(a), but they do not – and cannot – deny that the Eastern District of Texas is a convenient forum for them. Both Defendants and CMO have multiple sales offices in Texas, and neither has any sales offices in Delaware. These facts are key differences between this case and the *AUO v. LPL* case in Wisconsin.

---

[1] For LPL's '737 patent, the PTO website shows the current U.S. classifications include 438/158, 257/353, 257/435, 257/E21.703, 257/E29.147, 257/E29.291, 438/30, and 438/482, all of which were "yet-to-be created" when the patent issued on November 25, 1986. *See, e.g.*, http://www.uspto.gov/web/offices/opc/coi/classes436-494.htm (last modified Aug. 25, 2006).

Defendants argue that the cases may have some issues that could possibly include some of the same documents or witnesses. Reply at 4. Even if true, the fact that some documents and translations may be used in two different cases does not justify a transfer. Whether some of the same witnesses may be needed is speculative, but it is clear that the key witnesses, such as the named inventors and patent prosecution counsel will not overlap at all. In any event, this Court has previously noted that accessibility and location of sources of proof are only of slight significance due to the increasing ease of storage, communication, copying, and transportation of documents. *Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-CV-358, 2004 WL 1635534 at *6 (E.D. Tex. 2004).

Defendants also argue that third parties ViewSonic and Tatung will be burdened by parallel discovery in the two cases. However, Defendants do not explain why customers of **CMO's** products would be witnesses to Defendants' acts of infringement against CMO, as it is Defendants' products that are accused in this case. In any event, the parties can easily avoid unnecessary duplication to prevent any significant burden. *See id.* at *3 (holding that any discovery gathered from another case presumably will preclude the need for any duplicative discovery).

Defendants also selectively quote from *Repligen Corp. v. Bristol Myers Squibb Co.*, No 2-06-CV-4, 2006 WL 2038561, (E.D. Tex. July 20, 2006) (Reply at 5), but fail to provide the context and outcome of the case. In *Repligen*, this Court stated that "[b]ecause the plaintiff's choice of forum *is* given significant consideration, *this factor weighs against transfer*." *Repligen*, 2006 WL 2038561, at *2 (emphasis added). In the end, this Court denied the motion to transfer. *Id.* at *4. Accordingly, *Repligen* does not support Defendants' motion for transfer.

_____

CMO filed its patent infringement action against Defendants in this Court. Defendants have no operative pleading under which it can argue that the first-to-file rule applies, and even if it did, there is no substantial overlap that would require transfer. In addition, Defendants have failed to show that the interests-of-justice factors under section 1404(a) favor transfer, and they do not even deny that this is a convenient forum. This Court should deny Defendants' motion.

Date: July 30, 2007                                Respectfully submitted,

                                                   By: _____/s/ Jonathan S. Kagan_____
                                                        Jonathan S. Kagan

Melissa R. Smith
LEAD ATTORNEY
State Bar No. 24001351
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Of Counsel:*

Jonathan S. Kagan (Pro Hac Vice)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199

**ATTORNEYS FOR PLAINTIFF,
CHI MEI OPTOELECTRONICS
CORPORATION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by United States mail on this the 30th day of July, 2007.

_____/s/ Jonathan S. Kagan_____
Jonathan S. Kagan

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

CHI MEI OPTOELECTRONICS
CORPORATION, a Taiwan Corporation,

        Plaintiff,

      v.                             Civil Action No. 2:07-cv-00176-TJW

LG.PHILIPS LCD CO., LTD., a Korean
Corporation, and
LG.PHILIPS LCD AMERICA, INC., a
California Corporation,

        Defendants.

**DEFENDANTS' OPPOSED MOTION TO EXTEND  TIME TO RESPOND
TO THE COMPLAINT**

Defendants LG.Philips LCD Co., Ltd. ("LPL") and LG.Philips LCD America, Inc.

("LPLA") respectfully move the Court for an extension of time within which to respond to the

complaint filed by Plaintiff Chi Mei Optoelectronics Corporation ("CMO"), and in support

thereof state:

1.      Under the current schedule, Defendants LPL and LPLA need to respond to

CMO's complaint by August 13, 2007.

2.      Defendants request that the Court extend this period until one week after Labor

Day, or September 10, 2007.

3.      Good cause exists for this request.  Long-planned family vacations, as well as

work commitments and depositions in other cases, make the additional time necessary to respond

appropriately to CMO's complaint. Defendants would not consent to this simple extension

without imposing an array of unacceptable conditions.

WHEREFORE, Defendants LPL and LPLA respectfully request that their time to respond to CMO's complaint be enlarged until September 10, 2007.

Respectfully submitted,

JONES & JONES, INC., PC

/s/ Franklin Jones, Jr.
Franklin Jones, Jr.
Texas State Bar No. 00000055
201 West Houston Street
Marshall, Texas  75671-1249
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

Mike C. Miller
Texas State Bar No. 14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorneys for Defendants*
*LG.Philips LCD Co., Ltd. and LG.Philips LCD*
*America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

August 6, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | |
| Plaintiff, | |
| v. | Civil Action No. 2:07-cv-00176-TJW |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | |
| Defendants. | |

**<u>ORDER</u>**

Before the Court is Defendants' Opposed Motion to Extend Time to Respond to the Complaint. The Court hereby:

(1)    GRANTS the Motion; and

(2)    ORDERS that Defendants are granted an extension of time within which to respond to the complaint until and including September 10, 2007.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:07-cv-00176-TJW |
| vs. | ) ) | JURY TRIAL DEMANDED |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF CHI MEI OPTOELECTRONICS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

While Plaintiff Chi Mei Optoelectronics ("CMO") previously stipulated that Defendants could have until August 13, 2007 to respond to CMO's May 4, 2007 complaint, CMO does not believe that there is any reasonable basis or need for a further extension. CMO thus respectfully opposes Defendants attempt to extend this deadline by another 4 weeks.

On May 21, 2007, counsel for Defendants asked whether CMO would stipulate that the response date for both Defendants to answer CMO's complaint could be reset until August 13, 2007. CMO agreed, and Defendants filed the stipulation with the Court on May 30, 2007 [Docket Item No. 7]. The Court formally extended Defendants' "Answer Due" date until August 13 based on this stipulation [Docket Item No. 8].

On May 22, 2007, the day after Defendants requested their August 13, 2007 extension, Defendant LG.Philips LCD Co. Ltd. ("LPL") attempted to add declaratory relief claims based on the same patents CMO has asserted here to a case involving different parties and patents in Delaware. In Delaware, LPL asserted (through the same counsel representing Defendants here) that it did not infringe the CMO patents at issue in this case, and that it believed such patents were invalid. Thus, by the day after Defendants requested their August 13, 2007 extension, they had presumably completed the analysis necessary to respond to CMO's complaint.

Good cause does not exist for a further extension of time to respond to CMO's complaint. To the extent Defendants' counsel have "long-planned family vacations" they would have known about such vacations when they requested the August 13, 2007 response date. Moreover, given that Defendants will have had over 3 months from the filing of this action to respond, it is difficult to see how commitments from other cases could have prevented them from preparing an answer – particularly where the same counsel has filed papers in a Delaware case stating that LPL does not infringe CMO's patents, and that these patents are invalid. In short, there is no reason why Defendants' cannot submit an answer by the August 13, 2007 date they originally proposed.

Respectfully submitted,

GILLAM & SMITH, LLP

    /s/ Melissa R. Smith
Melissa R. Smith
LEAD ATTORNEY
State Bar No. 24001351
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257


IRELL & MANELLA LLP
Jonathan S. Kagan (Pro Hac Vice)
800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

**ATTORNEYS FOR PLAINTIFF,
CHI MEI OPTOELECTRONICS
CORPORATION**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 6th day of August, 2007.

                         /s/ Melissa R. Smith_____
                       Melissa R. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHI MEI OPTOELECTRONICS** | ) | |
| **CORPORATION,** a Taiwan Corporation | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:07-cv-176-TJW** |
| | ) | |
| **LG.PHILIPS LCD CO., LTD,** a Korean | ) | |
| Corporation, | ) | |
| **and** | ) | |
| **LG.PHILIPS LCD AMERICA, INC,** a | ) | |
| California Corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO EXTEND TIME**

On this date came for consideration Defendants' Opposed Motion to Extend Time to Answer Plaintiff's Complaint for Patent Infringement, and the Court being of the opinion that same should be DENIED, it is therefore,

ORDERED that Defendants LG. Philips LCD Co., LTD, and LG Philips LCD America, Inc., be and hereby are, DENIED an extension of time within which to Answer Plaintiffs Complaint for Patent Infringement in the above cause. Per the courts previous order {Docket No. 8} Defendants Answer is due August 13, 2007.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

CHI MEI OPTOELECTRONICS
CORPORATION, a Taiwan Corporation,

        Plaintiff,

        v.                                                   Civil Action No. 2:07-cv-00176-TJW

LG.PHILIPS LCD CO., LTD., a Korean
Corporation, and
LG.PHILIPS LCD AMERICA, INC., a
California Corporation,

        Defendants.

**DEFENDANTS' MOTION FOR LEAVE TO FILE RESPONSE
TO PLAINTIFF'S SUR-REPLY**

      Defendants LG.Philips LCD Co., Ltd. ("LPL") and LG.Philips LCD America, Inc.

("LPLA") respectfully move the Court for leave to file the attached two-page brief, and in

support thereof state:

      1.     On July 30, 2007, Plaintiff Chi Mei Optoelectronics Corporation ("CMO") filed a

"sur-reply" in further opposition to Defendants' motion to transfer this case to the District of

Delaware.

      2.     In the interest of justice, leave should be granted because CMO's sur-reply

violates of the rules of this Court.  First, the sur-reply is not limited to "responding to issues

raised in the reply."  E.D. Tex. R. CV-7(f).  Second, the sur-reply was due on July 23, not July

30, because LPL's reply was electronically filed and served before 5:00 pm on July 18.  *See* E.D.

Tex. R. CV-5(a)(3)(C) & 7(f).

      3.     Leave should also be granted because the attached brief is necessary to allow the

Court to resolve the transfer motion on a fully informed basis.  First, CMO's sur-reply

mischaracterizes the first-filed analysis conducted by Judge Shabaz.  Second, the sur-reply

conflicts with a pleading filed in Delaware four days earlier where CMO told Chief Judge Sleet

that it "would not oppose" a motion to amend the Delaware complaint.

WHEREFORE, Defendants LPL and LPLA respectfully request that the Court grant

them leave to file the brief attached hereto as Exhibit A.

Respectfully submitted,

JONES & JONES, INC., PC

/s/ Franklin Jones, Jr.
Franklin Jones, Jr.
Texas State Bar No. 00000055
2201 West Houston Street
Marshall, Texas  75671-1249
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

Mike C. Miller
Texas State Bar No. 14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorneys for Defendants*
*LG.Philips LCD Co., Ltd. and LG.Philips LCD*
*America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

August 7, 2007

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

CHI MEI OPTOELECTRONICS
CORPORATION, a Taiwan Corporation,

        Plaintiff,

      v.                            Civil Action No. 2:07-cv-00176-TJW

LG.PHILIPS LCD CO., LTD., a Korean
Corporation, and
LG.PHILIPS LCD AMERICA, INC., a
California Corporation,

        Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUR-REPLY REGARDING THE
MOTION TO TRANSFER THIS CASE TO DELAWARE**

    1.     In its earlier-filed opposition, CMO had every opportunity to distinguish Judge

Shabaz's decision, but spent a single sentence on it. CMO's sur-reply, by contrast, focuses on

the decision. But this is not the proper vehicle for CMO to expand its analysis. Instead, a sur-

reply should be limited to "responding to issues raised in the reply." E.D. Tex. R. CV-7(f).

Further, CMO's belated argument is not convincing. To the contrary, now more than ever, it is

apparent Judge Shabaz's decision is on all fours.

    2.     On page 2, the sur-reply states that Judge Shabaz "did not perform a 'relation

back' analysis in his order." This is wrong. We direct the Court to the decision itself where

Judge Shabaz states:

> The fact that the Delaware action became a complete mirror image
> only after amendment does not change the [first-filed] analysis. In
> *Versus Technology, Inc. v. Hillenbrand Industries, Inc.,* 2004 U.S.
> Dist. LEXIS 28331, 2004 WL 3457629 (W.D. Mich. 2004) (also
> collecting similar cases), the Court addressed a case where the first
> filed suit was subsequently amended to add the claims in the
> second filed suit. The Court held that the first-filed rule applied
> where a plaintiff amends its first filed suit to add claims raised in a

second-filed suit in another district. The Court transferred the second filed case to the first court to determine how the two cases should proceed. Similarly, in *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421 (2d Cir. 1965), the Court found it immaterial that the issues raised in the second suit were not included in the first until after a subsequent amendment was filed, holding that the first suit was the only suit where all the issues between the parties had been raised. It transferred the case to the court where the first suit was filed.

2007 U.S. Dist. LEXIS 39340, at *5-*6 (Ex. C).

      3.      Finally, CMO is not being forthright with the Court. On one hand, in its sur-reply, CMO tells this Court that "leave to amend [LPL's Delaware complaint] would likely be denied." (Sur-Reply at 2.) On the other hand, in a pleading filed four days earlier in Delaware, CMO told the Delaware court that it "would not oppose such a motion." (Ex. 1 at 2.)

                  Respectfully submitted,

                  JONES & JONES, INC., PC

                  _____

                  Franklin Jones, Jr.
                  Texas State Bar No. 00000055
                  2201 West Houston Street
                  Marshall, Texas 75671-1249
                  Phone: (903) 938-4395
                  Facsimile: (903) 938-3360

                  Mike C. Miller
                  Texas State Bar No. 14101100
                  Law Office of Mike C. Miller, P.C.
                  201 West Houston Street
                  Marshall, Texas 75670
                  Phone: (903) 938-4395
                  Facsimile: (903) 938-3360

                  *Attorneys for Defendants*
                  *LG.Philips LCD Co., Ltd. and LG.Philips LCD*
                  *America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

August 6, 2007

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,          )
                                    )
      Plaintiff,                )
                                    )
      v.                        )    Civil Action No. 06-726 (GMS)
                                    )
CHI MEI OPTOELECTRONICS             )
CORPORATION; AU OPTRONICS           )
CORPORATION, AU OPTRONICS           )
CORPORATION OF AMERICA;             )
TATUNG COMPANY; TATUNG              )
COMPANY OF AMERICA, INC.; and       )
VIEWSONIC CORPORATION,              )
                                    )
      Defendants.               )

## CHI MEI OPTOELECTRONICS CORPORATION'S MOTION AND JOINDER IN VIEWSONIC CORPORATION'S MOTION TO STRIKE PLAINTIFF'S AMENDED COMPLAINTS

Defendant Chi Mei Optoelectronics Corporation ("CMO"), hereby moves this Court for an Order substantially in the form attached hereto striking plaintiff LG. Philips LCD., Ltd.'s ("LPL") amended complaints filed on April 11, 2007 (D.I. 29) and May 22, 2007 (D.I. 54). CMO joins in and incorporates by reference defendant ViewSonic Corporation's Motion to Strike Plaintiff's Amended Complaints (D.I. 114) as if fully set forth herein.

At a minimum, LPL was not authorized to file its second "first amended complaint" without leave of court. In that pleading (D.I. 54), LPL: (1) omitted claims that had been added in the first "first amended complaint" filed on April 11; (2), added a new party, Chi Mei USA; and (3) included two additional counts for declaratory relief of invalidity and non-infringement on four new patents. CMO promptly notified LPL that its most recent complaint violated Fed. R. Civ. P. 15(a) and that, before the CMO entities (CMO and CMO, USA) would

respond, LPL was required to seek -- and obtain -- leave to amend its complaint for a second time. CMO also informed LPL that CMO would not oppose such a motion. Despite being put on notice that its pleading was defective, LPL never filed a motion to amend its complaint for a second time. Accordingly, ViewSonic Corporation's Motion to Strike Plaintiff's Amended Complaints should be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939

Dated: July 26, 2007
808876

By: _____
      Philip A. Rovner (#3215)
      Hercules Plaza
      P. O. Box 951
      Wilmington, DE 19899
      (302) 984-6000
      provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

2

N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | |
| Plaintiff, | |
| v. | Civil Action No. 2:07-cv-00176-TJW |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | |
| Defendants. | |

## <u>ORDER</u>

Before the Court is Defendants' Motion for Leave to File Response to Plaintiff's Surreply.  The Court hereby:

(1)    GRANTS the Motion; and

(2)    ORDERS that Defendants' Response to Plaintiff's Surreply Regarding Defendants' Motion to Transfer this Case shall be filed on this date.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORP., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-CV-176 (TJW) |
| | § | |
| LG. PHILIPS LCD CO., LTD., ET AL., | § | |
|     Defendants. | § | |
| | § | |
| | § | |

**<u>ORDER</u>**

Before the Court is Defendants' Motion to Extend Time to Respond to the Complaint (#20).

This motion is the defendants' second request for an extension of time to answer.  The defendants

have not shown good cause for a second extension.  Accordingly, the motion is DENIED.

 SIGNED this  7th  day of August, 2007.



_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | ) ) ) | Case No. 2:07-cv-00176-TJW |
| Plaintiff, | ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) | |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF CHI MEI OPTOELECTRONICS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE RESPONSE**

Defendants claim that CMO's sur-reply violates two of this Court's local rules, so the "interests of justice" permit it to file another brief.  Defendants arguments are not persuasive.

First, Defendants' claim that CMO's sur-reply is improper because it is not limited to issues raised in Defendants' reply.  Although Defendants do not identify any particular argument as inappropriate, it appears that they are referring to CMO's discussion of Judge Shabaz's discretionary transfer of a case filed by AU Optronics in Wisconsin to Delaware, pursuant to 28 U.S.C. § 1404(a).  CMO's sur-reply explains that because neither CMO nor any of the CMO patents were involved in the AUO case, Judge Shabaz did not – and could not – have determined whether claims relating to CMO's patents "relate back" to LPL's original Delaware complaint.

Before they filed their reply brief, Defendants had not argued that Judge Shabaz had considered – much less rejected – CMO's argument.  In reply, however, this is exactly the argument they advanced.  In Defendants' own words:

> CMO contends that the declaratory judgment counts added to the May 22 complaint (to make it mirror this action) do not "relate back" to the original filing. (Opp. at 7-12).  Judge Shabaz, however, rejected this precise argument when AUO raised it in opposition to transfer of its Wisconsin action.

Reply at 2.  In order to rebut this argument, CMO demonstrated that Judge Shabaz could not have "rejected" CMO's argument because (1) CMO was not a party to the AUO case, and never made any arguments to Judge Shabaz, and (2) CMO's patents were not at issue in the AUO case, and Judge Shabaz did not consider these patents or any factors relating to CMO when deciding to order a § 1404(a) transfer.  Both argument are a direct response to Defendants' assertion that Judge Shabaz "rejected" CMO's "relation back" argument.

Second, Defendants argue that CMO's sur-reply was not timely filed because Defendants filed their reply on July 18.  According to Defendants, CMO's sur-reply was therefore due on July 23.  Defendants just count the days wrong.  Pursuant to Federal Rule of Civil Procedure 6(a), titled "Time: Computation," intermediate weekend days are not counted because the Local Rules provide less than 11 days for CMO's sur-reply.  This would make CMO's response date July 25.  Because Defendants served electronically pursuant to Federal Rule of Civil Procedure 5(b)(D), CMO's response date is extended by 3 days to July 28, pursuant to Federal Rule of Civil Procedure 6(e).  Because July 28 was a Saturday, CMO's sur-reply was due the next Court day – July 30 – the date on which CMO filed its sur-reply.

Defendants' motion also makes a number of statements about the substance of CMO's arguments.  While CMO disagrees with Defendants' arguments, CMO does not believe it is appropriate to respond to the merits of Defendants' arguments in this brief.  To the extent the Court grants Defendants leave to file another brief, however, CMO would request leave to file a response that addresses the substantive arguments advanced by Defendants.

Respectfully submitted,

GILLAM & SMITH, LLP

\_\_/s/ Melissa R. Smith_____
Melissa R. Smith
LEAD ATTORNEY
State Bar No. 24001351
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450

Facsimile:  (903) 934-9257


IRELL & MANELLA LLP
Jonathan S. Kagan (Pro  Hac Vice)
800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:     (310) 277-1010
Facsimile:     (310) 203-7199

**ATTORNEYS FOR PLAINTIFF,
CHI MEI OPTOELECTRONICS
CORPORATION**


<u>**CERTIFICATE OF SERVICE**</u>


     The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 7th day of August, 2007.


         /s/ Melissa R. Smith
         Melissa R. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION, a Taiwan Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 2:07-cv-176-TJW |
| LG.PHILIPS LCD CO., LTD, a Korean | ) | |
| Corporation, | ) | |
| and | ) | |
| LG.PHILIPS LCD AMERICA, INC, a | ) | |
| California Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date came for consideration Defendants' Motion for Leave to File Response to

Plaintiff's Sur-Reply, and the Court being of the opinion that same should be denied, it is

therefore,

ORDERED that Defendants LG. Phillips LCD CO., LTD, and LG Phillips LCD

America, Inc. be and hereby are, DENIED Leave to File Response to Plaintiff's Sur-Reply in the

above cause.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | |
| Plaintiff, | |
| v. | Civil Action No. 2:07-cv-00176-TJW |
| | **JURY TRIAL DEMANDED** |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | |
| Defendants. | |
| LG.PHILIPS LCD CO., LTD., and LG.PHILIPS LCD AMERICA, INC., | |
| Counterclaim Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| CHI MEI OPTOELECTRONICS CORPORATION; and CHI MEI OPTOELECTRONICS USA, INC., a Delaware Corporation, | |
| Counterclaim Defendants. | |

**LG.PHILIPS LCD CO., LTD.'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFF AND ADDITIONAL PARTY CHI MEI OPTOELECTRONICS USA, INC.**

Defendant LG.Philips LCD Co., Ltd. ("LPL"), by and through its undersigned

counsel, hereby files its Answer in Response to the Complaint For Patent Infringement of

Plaintiff Chi Mei Optoelectronics Corporation ("CMO"), in the above titled action, filed

on or about May 4, 2007, asserts affirmative defenses to those claims, and asserts

counterclaims against CMO and additional party Chi Mei Optoelectronics USA, Inc.

("CMO USA").  A jury trial is demanded for all claims so triable.

**RESPONSE TO ALLEGATIONS AS TO JURISDICTION AND VENUE**

1.    LPL admits that CMO purports to assert claims arising under the patent

laws of the United States, but denies the remaining allegations in paragraph 1 of the

Complaint.

2.    LPL denies the allegations of paragraph 2 in the Complaint.

3.    LPL denies the allegations of paragraph 3 in the Complaint.

**RESPONSE TO ALLEGATIONS AS TO PARTIES**

4.    LPL admits that CMO is a Taiwanese Corporation also having its

principal place of business in Taiwan, but denies the remaining allegations in paragraph 4

of the Complaint.

5.    LPL admits that it is a Korean corporation with its principal place of

business at 20 Youido-Dong, Yongdeungpo, Seoul 150-721, the Republic of Korea and

that it designs, manufactures, and distributes TFT-LCD panels and Liquid Crystal

Display ("LCD") modules, but denies the remaining allegations in paragraph 5 of the

Complaint.

6.    LPL admits that LPLA has sales offices in California, Texas (Austin and

Houston), North Carolina, and Illinois, but denies the remaining allegations in paragraph

6 of the Complaint.

7.    LPL admits the allegations in paragraph 7 of the Complaint.

8.    LPL denies the allegations in paragraph 8 of the Complaint.

**RESPONSE TO FIRST CLAIM FOR RELIEF**

9.      LPL hereby incorporates paragraphs 1-8 above as though fully set forth herein.

10.     LPL admits that Exhibit A to the Complaint purports to be a copy of United States Patent No. 6,008,786, entitled "Method for Driving Halftone Display for a Liquid Crystal Display" ("the '786 patent"), but LPL lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 10 of the Complaint, and therefore denies them.

11.     LPL denies the allegations in paragraph 11 of the Complaint.

12.     LPL denies the allegations in paragraph 12 of the Complaint.

13.     LPL denies the allegations in paragraph 13 of the Complaint.

14.     LPL denies the allegations in paragraph 14 of the Complaint.

15.     LPL denies the allegations in paragraph 15 of the Complaint.

16.     LPL denies the allegations in paragraph 16 of the Complaint.

**RESPONSE TO SECOND CLAIM FOR RELIEF**

17.     LPL hereby incorporates paragraphs 1-16 above as though fully set forth herein.

18.     LPL admits that Exhibit B to the Complaint purports to be a copy of United States Patent No. 6,013,923 entitled "Semiconductor Switch Array with Electrostatic Discharge Protection and Method of Fabricating" ("the '923 patent"), but LPL lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 18 of the Complaint, and therefore denies them.

19.     LPL denies the allegations in paragraph 19 of the Complaint.

20.     LPL denies the allegations in paragraph 20 of the Complaint.

21.    LPL denies the allegations in paragraph 21 of the Complaint.

22.    LPL denies the allegations in paragraph 22 of the Complaint.

23.    LPL denies the allegations in paragraph 23 of the Complaint.

24.    LPL denies the allegations in paragraph 24 of the Complaint.

## RESPONSE TO THIRD CLAIM FOR RELIEF

25.    LPL hereby incorporates paragraphs 1-24 above as though fully set forth herein.

26.    LPL admits that Exhibit C to the Complaint purports to be a copy of United States Patent No. 5,619,352 entitled "LCD Splay/Twist Compensator having Varying Tilt and/or Azimuthal Angles for Improved Gray Scale Performance" ("the '352 patent"), but LPL lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 26 of the Complaint, and therefore denies them.

27.    LPL denies the allegations in paragraph 27 of the Complaint.

28.    LPL denies the allegations in paragraph 28 of the Complaint.

29.    LPL denies the allegations in paragraph 29 of the Complaint.

30.    LPL denies the allegations in paragraph 30 of the Complaint.

31.    LPL denies the allegations in paragraph 31 of the Complaint.

32.    LPL denies the allegations in paragraph 32 of the Complaint.

## RESPONSE TO FOURTH CLAIM FOR RELIEF

33.    LPL hereby incorporates paragraphs 1-32 above as though fully set forth herein.

34.    LPL admits that Exhibit D to the Complaint purports to be a copy of United States Patent No. 6,734,926 entitled "Display Apparatus with a Reduced Thickness" ("the '926 patent"), but LPL lacks knowledge or information sufficient to

admit or deny the remaining allegations in paragraph 34 of the Complaint, and therefore denies them.

35.    LPL denies the allegations in paragraph 35 of the Complaint.

36.    LPL denies the allegations in paragraph 36 of the Complaint.

37.    LPL denies the allegations in paragraph 37 of the Complaint.

38.    LPL denies the allegations in paragraph 38 of the Complaint.

39.    LPL denies the allegations in paragraph 39 of the Complaint.

40.    LPL denies the allegations in paragraph 40 of the Complaint.

## RESPONSE TO PRAYER FOR RELIEF

41.    As to paragraphs 1 through 11 of the Prayer For Relief, LPL denies that CMO is entitled to the requested relief.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following are not already at issue by virtue of the foregoing denials, and without prejudice to LPL's right to plead additional defenses as discovery into the facts of the matter warrants, LPL hereby asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

42.    CMO has failed to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

43.    One or more claims of the '786 patent, the '923 patent, the '352 patent and the '926 patent (collectively "the CMO Patents") are invalid for failing to meet one or more of the requisite conditions or requirements for patentability specified by 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD AFFIRMATIVE DEFENSE

44.    LPL's products have not and do not infringe any claim of the CMO Patents, either literally or under the doctrine of equivalents.

## FOURTH AFFIRMATIVE DEFENSE

45.    LPL has not directly or indirectly contributed to infringement of, nor induced another to infringe the CMO Patents.

## FIFTH AFFIRMATIVE DEFENSE

46.    Pursuant to 35 U.S.C. § 287(b), LPL is not liable for damages for infringement under any section of 35 U.S.C. § 271 before receiving notice of CMO's allegations of infringement in this action.

## SIXTH AFFIRMATIVE DEFENSE

47.    CMO's claims are barred, in whole or in part, because of the affirmative defense of license.

## LPL'S COUNTERCLAIMS AGAINST CMO AND ADDITIONAL PARTY CMO USA

48.    By these Counterclaims and pursuant to Rule 13, 19 and/or 20 of the Federal Rules of Civil Procedure, Defendant/Counterclaim Plaintiff LG.Philips LCD Co., Ltd. ("LPL") seeks injunctive and declaratory relief and damages, including treble or multiple damages, against Plaintiff Chi Mei Optoelectronics Corporation ("CMO") and additional party Chi Mei Optoelectronics USA, Inc. ("CMO USA").

49.    Counterclaim Plaintiff LPL is a Korean corporation having its head office at 18th Floor, West Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of Korea 150-721.

50.     Counterclaim Defendant CMO is a Taiwanese corporation, having its principal place of business at 2F, No. 1, Chi-Yeh Road, Tainan Science Based Industrial Park, Hsinshih Hsiang, Tainan Hsien 710,  TAIWAN 74147, R.O.C.

51.     Counterclaim Defendant CMO USA is a domestic subsidiary of CMO that either directly or indirectly imports into, sells, and/or offers for sale its products in Texas and elsewhere in the United States.  CMO owns 100% of the shares of Chi Mei Optoelectronics Japan Co., Ltd. ("CMO Japan"), which in turn owns 100% of the shares of CMO USA.  CMO USA is a Delaware corporation, having its principal pace of business at 101 Metro Drive Suite 510, San Jose, CA 95110.  CMO USA markets and sells CMO's products throughout the United States.

52.     LPL is the owner of United States Patent No. 5,905,274 ("the '274 Patent"), United States Patent No. 6,815,321 ("the '321 Patent"), United States Patent No. 7,176,489 ("the '489 Patent"), United States Patent No. 6,803,984 ("the '984 Patent"), and United States Patent No. 7,218,374 ("the '374 Patent") owned by LPL (collectively "the LPL Patents").

53.     CMO claims to be the owner of United States Patent No. 6,008,786 ("the '786 Patent"), United States Patent No. 6,013,923 ("the '923 Patent"), United States Patent No. 5,619,352 ("the '352 Patent"), and United States Patent No. 6,734,926 ("the '926 Patent") (collectively "the CMO Patents").

54.     These Counterclaims are based upon and arise under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*., and in particular §§ 271, 281, 283, 284 and 285, and is intended to redress infringement of the LPL Patents.

55.    Additionally, these Counterclaims are under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, based upon an actual controversy between LPL and CMO regarding the validity and infringement of the claims of the CMO Patents, and is intended to provide appropriate and necessary declaratory relief.

56.    This Court has jurisdiction over the subject matter of these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

57.    This Court has jurisdiction over the Counterclaims for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a), and under 28 U.S.C. § 1331.

58.    This Court has personal jurisdiction and venue over CMO because, *inter alia*, CMO has submitted itself to the jurisdiction of this Court.

59.    This Court has personal jurisdiction over CMO USA and venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c), and 28 U.S.C. § 1400(b), in that CMO USA is committing acts of patent infringement within the United States and within this judicial district, including the infringing acts alleged herein, both directly, through one or more intermediaries, and as intermediaries.  CMO USA regularly imports large quantities of CMO products into the United States for distribution throughout the United States, including in this judicial district.  CMO USA is involved in the distribution of infringing LCD products and are aware that their products are sold throughout the United States, including in Texas.  The established distribution networks of CMO USA consist of national distributors and resellers, and CMO USA distributes to

national retailers that have stores located in Texas.  By shipping into, offering to sell in, using, or selling products that infringe the LPL Patents in this judicial district, or by inducing or causing those acts to occur, CMO USA has transacted and transacts business and performs, works, and services in this judicial district, has contracted and contracts to supply services and things in this judicial district, has caused and causes injury and damages in this judicial district by acts and omissions in this judicial district, and has caused and causes injury and damages in this judicial district by acts or omissions outside of this judicial district while deriving substantial revenue from services or things used or consumed within this judicial district, and will continue to do so unless enjoined by this Court.

## THE LPL PATENTS

60.    On May 18, 1999, the '274 Patent, entitled "Thin-Film Transistor And Method Of Making Same," was duly and legally issued.  LPL is the owner by assignment of all rights, title, and interest in and to the '274 Patent.  A copy of the '274 Patent is attached as Exhibit A.

61.    On November 9, 2004, the '321 Patent, entitled "Thin-Film Transistor And Method Of Making Same," was duly and legally issued.  LPL is the owner by assignment of all rights, title, and interest in and to the '321 Patent.  A copy of the '321 Patent is attached as Exhibit B.

62.    On February 13, 2007, the '489 Patent, entitled "Thin-Film Transistor And Method Of Making Same," was duly and legally issued.  LPL is the owner by assignment of all rights, title, and interest in and to the '489 Patent.  A copy of the '489 Patent is attached as Exhibit C.

63.     On October 12, 2004, the '984 Patent, entitled "Method and Apparatus for Manufacturing Liquid Crystal Display Device Using Serial Production Processes," was duly and legally issued.  LPL is the owner by assignment of all rights, title, and interest in and to the '984 Patent.  A copy of the '984 Patent is attached as Exhibit D.

64.     On May 15, 2007, the '374 Patent, entitled "Liquid Crystal Display Device and Method of Manufacturing the Same," was duly and legally issued.  LPL is the owner by assignment of all rights, title, and interest in and to the '374 Patent.  A copy of the '374 Patent is attached as Exhibit E.

65.     As owner of the '274 patent, the '321 patent, the '489 patent, the '984 patent, and the '374 patent (collectively "the LPL Patents"), LPL possesses the right to sue and to recover for infringement of the LPL Patents.

66.     CMO and CMO USA (collectively the "Counterclaim Defendants") have been and are infringing and/or inducing infringement of the LPL Patents because they at least use, cause to be used, make, import, cause to be imported, offer for sale, cause to be offered for sale, sell, and/or cause to be sold in this judicial district and elsewhere in the United States products that infringe the LPL Patents.

## COUNTERCLAIM COUNT I
## INFRINGEMENT OF THE '274 PATENT

67.     LPL hereby incorporates paragraphs 48-66 above as though fully set forth herein.

68.     Counterclaim Defendants have infringed, and/or induced infringement of the '274 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported

products that infringe one or more claims of the '274 Patent in this judicial district and elsewhere in the United States.

69.     The products that are used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and/or caused to be imported by Counterclaim Defendants meet each and every limitation of at least one claim of the '274 Patent, either literally or equivalently.

70.     LPL has been and will continue to be injured by Counterclaim Defendants' past and continuing infringement of the '274 Patent and is without adequate remedy at law.

71.     Counterclaim Defendants have, upon information and belief, infringed and are infringing the '274 Patent with knowledge of LPL's patent rights and without a reasonable basis for believing their conduct is lawful.   Counterclaim Defendants' infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling LPL to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNTERCLAIM COUNT II
## INFRINGEMENT OF THE '321 PATENT

72.     LPL hereby incorporates paragraphs 48-71 above as though fully set forth herein.

73.     Counterclaim Defendants have infringed and/or induced infringement of the '321 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that are made by a method that infringes one or more claims of the '321 Patent in this judicial district and elsewhere in the United States.

74.     The products made by the infringing method that are used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and/or caused to be imported by Counterclaim Defendants meet each and every limitation of at least one claim of the '321 Patent, either literally or equivalently.

75.     LPL has been and will continue to be injured by Counterclaim Defendants' past and continuing infringement of the '321 Patent and is without adequate remedy at law.

76.     Counterclaim Defendants have, upon information and belief, infringed and are infringing the '321 Patent with knowledge of LPL's patent rights and without a reasonable basis for believing their conduct is lawful.    Counterclaim Defendants' infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling LPL to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNTERCLAIM COUNT III
## INFRINGEMENT OF THE '489 PATENT

77.     LPL hereby incorporates paragraphs 48-76 above as though fully set forth herein.

78.     Counterclaim Defendants have infringed and/or induced infringement of the '489 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that infringe one or more claims of the '489 Patent in this judicial district and elsewhere in the United States.

79.     The products that were used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and/or caused to be imported by

Counterclaim Defendants meet each and every limitation of at least one claim of the '489 Patent, either literally or equivalently.

80.     LPL has been and will continue to be injured by Counterclaim Defendants' past and continuing infringement of the '489 Patent and is without adequate remedy at law.

81.     Counterclaim Defendants, upon information and belief, infringe the '489 Patent with knowledge of LPL's patent rights and without a reasonable basis for believing their conduct is lawful.  Counterclaim Defendants' infringement is and will continue to be willful and deliberate, making this an exceptional case and entitling LPL to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNTERCLAIM COUNT IV
## INFRINGEMENT OF THE '984 PATENT

82.     LPL hereby incorporates paragraphs 48-81 above as though fully set forth herein.

83.     Counterclaim Defendants have infringed, and/or induced infringement of the '984 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that infringe one or more claims of the '984 Patent in this judicial district and elsewhere in the United States.

84.     The products that are used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and/or caused to be imported by Counterclaim Defendants meet each and every limitation of at least one claim of the '984 Patent, either literally or equivalently.

85.     LPL has been and will continue to be injured by Counterclaim Defendants's past and continuing infringement of the '984 Patent and is without adequate remedy at law.

86.     Counterclaim Defendants, upon information and belief, infringed and is infringing the '984 Patent with knowledge of LPL's patent rights and without a reasonable basis for believing its conduct is lawful.   Counterclaim Defendants's infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling LPL to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNTERCLAIM COUNT V
## INFRINGEMENT OF THE '374 PATENT

87.     LPL hereby incorporates paragraphs 48-86 above as though fully set forth herein.

88.     Counterclaim Defendants have infringed, and/or induced infringement of the '374 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that infringe one or more claims of the '374 Patent in this judicial district and elsewhere in the United States.

89.     The products that are used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and/or caused to be imported by Counterclaim Defendants meet each and every limitation of at least one claim of the '374 Patent, either literally or equivalently.

90.    LPL has been and will continue to be injured by Counterclaim Defendants's past and continuing infringement of the '374 Patent and is without adequate remedy at law.

91.    Counterclaim Defendants, upon information and belief, infringed and is infringing the '374 Patent with knowledge of LPL's patent rights and without a reasonable basis for believing its conduct is lawful.    Counterclaim Defendants's infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling LPL to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**COUNTERCLAIM COUNT VI**
**CLAIM FOR DECLARATORY JUDGMENT OF INVALIDITY OF**
**THE '786 PATENT, THE '923 PATENT, THE '352 PATENT,**
**AND THE '926 PATENT AGAINST CMO**

92.    LPL hereby incorporates paragraphs 48-91 above as though fully set forth herein.

93.    CMO has accused LPL of infringing the CMO Patents, as such, there is a substantial controversy between the parties having adverse legal interests.

94.    Claims of the '786 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

95.    Claims of the '923 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

96.    Claims of the '352 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

97.    Claims of the '926 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

98.    Because CMO has asserted the CMO Patents against LPL, thereby creating an actual controversy, declaratory relief is both appropriate and necessary to establish that one or more of the claims of the '786 Patent, the '923 Patent, the '352 Patent, and the '926 Patent are invalid.

### COUNTERCLAIM COUNT VII
### CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '786 PATENT, THE '923 PATENT, THE '352 PATENT, AND THE '926 PATENT AGAINST CMO

99.    LPL hereby incorporates paragraphs 48-98 above as though fully set forth herein.

100.    LPL's LCD modules and/or methods of driving LCD modules do not infringe any claim of the '786 Patent, either literally or under the doctrine of equivalents.

101.    LPL's LCD modules and/or methods for forming LCD modules do not infringe any claim of the '923 Patent, either literally or under the doctrine of equivalents.

102.    LPL's LCD modules and/or methods for forming LCD modules do not infringe any claim of the '352 Patent, either literally or under the doctrine of equivalents.

103.    LPL's LCD modules and/or methods for forming LCD modules do not infringe any claim of the '926 Patent, either literally or under the doctrine of equivalents.

104.    Because CMO maintains that LPL infringes the CMO Patents, thereby creating an actual controversy, a declaration of rights between LPL and CMO is both appropriate and necessary to establish that LPL has not infringed and does not infringe any claim of the '786 Patent, the '923 Patent, the '352 Patent, or the '926 Patent.

### PRAYER FOR RELIEF

**WHEREFORE**, LPL prays for judgment as follows:

A.    That the Court dismiss CMO's complaint with prejudice;

B.      That the LPL Patents are valid and enforceable;

C.      That Counterclaim Defendants have infringed the LPL Patents;

D.      That Counterclaim Defendants' infringement of the LPL Patents have been willful;

E.      That Counterclaim Defendants and their parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert or participation with any of them, are enjoined and restrained from continued infringement, including but not limited to using, making, importing, offering for sale and/or selling products that infringe, and from inducing the infringement of, the LPL Patents, prior to their expiration, including any extensions;

F.      That Counterclaim Defendants and their parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert or participation with any of them deliver to LPL all products that infringe the LPL Patents for destruction at LPL's option;

G.      That LPL be awarded monetary relief adequate to compensate LPL for Counterclaim Defendants' acts of infringement of the LPL Patents within the United States prior to the expiration of the LPL Patents, including any extensions;

H.      That any monetary relief awarded to LPL regarding the infringement of the LPL Patents be trebled due to the willful nature of Counterclaim Defendants' infringement of the LPL Patents;

I.      That any monetary relief awarded to LPL be awarded with prejudgment interest;

J.      That a post trial accounting be done as part of the monetary relief awarded to LPL;

K.      That the Court issue a declaratory judgment that LPL does not directly or indirectly infringe any of the CMO Patents under any applicable provision of 35 U.S.C. § 271;

L.      That the Court issue a declaratory judgment that the CMO Patents are invalid;

M.      That this is an exceptional case under 35 U.S.C. § 285 and that LPL be awarded the attorneys' fees, costs and expenses that it incurs prosecuting this action; and

N.      That the Court award LPL other relief as it may find appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, LG.Philips LCD Co., Ltd. respectfully demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Law Office of Mike C. Miller, P.C.

/s/ Mike C. Miller

Mike C. Miller
Texas State Bar No. 14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorneys for Defendants*
*LG.Philips LCD Co., Ltd. and*
*LG.Philips LCD America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

August 13, 2007

# EXHIBIT A



US005905274A

# United States Patent [19]

## Ahn et al.

[11] Patent Number: 5,905,274

[45] Date of Patent: May 18, 1999

[54] **THIN-FILM TRANSISTOR AND METHOD OF MAKING SAME**

[75] Inventors: **Byung-Chul Ahn**, Kumi-shi; **Hyun-Sik Seo**, Anyang-shi, both of Rep. of Korea

[73] Assignee: **L.G. Electronics, Inc.**, Youngdungpo-ku, Japan

[21] Appl. No.: **08/918,119**

[22] Filed: **Aug. 27, 1997**

[30] **Foreign Application Priority Data**

Mar. 4, 1997 [KR] Rep. of Korea ........................ 97-7010

[51] **Int. Cl.$^6$** ........................ **H01L 29/04**; H01L 31/036; H01L 31/0376

[52] **U.S. Cl.** ................................. **257/59**; 257/61; 257/72; 257/350

[58] **Field of Search** .................................. 257/57, 58, 59, 257/60, 61, 66, 72, 350

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,036,370 | 7/1991 | Miyago et al. . |
| 5,132,745 | 7/1992 | Kwasnick et al. . |
| 5,156,986 | 10/1992 | Wei et al. ................................. 437/40 |
| 5,428,250 | 6/1995 | Ikeda et al. ............................ 257/761 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0602315 | 7/1993 | European Pat. Off. . |
| 03114028 | 5/1991 | Japan . |
| 6-37311 | 2/1994 | Japan . |
| 2254187 | 9/1992 | United Kingdom . |

### OTHER PUBLICATIONS

"Low Cost, High Display Quality TFT–LCD Process", Society for Information Display, EuroDisplay 96, Proceedings of the 16th International Display Research Conference, Oct. 1, 1996, 591–594.

"Hilllock–Free A1–Gate Materials Using Stress–Absorbing Buffer Layer for Large Area AMLCDs" Society for Information Display 96 Digest, pp. 341–344, 1996.

*Primary Examiner*—Ngân V. Ngô
*Attorney, Agent, or Firm*—Graham & James LLP

[57] **ABSTRACT**

A thin-film transistor includes a substrate and a gate including a double-layered structure having first and second metal layers provided on the substrate, the first metal layer being wider than the second metal layer by about 1 to 4 $\mu m$. A method of making such a thin film transistor includes the steps of: depositing a first metal layer on a substrate, depositing a second metal layer directly on the first metal layer; forming a photoresist having a designated width on the second metal layer; patterning the second metal layer via isotropic etching using the photoresist as a mask; patterning the first metal layer by means of an anisotropic etching using the photoresist as a mask, the first metal layer being etched to have the designated width, thus forming a gate having a laminated structure of the first and second metal layers; and removing the photoresist.

**6 Claims, 6 Drawing Sheets**



# FIG. 1A



# FIG. 1B



# FIG. 1C



# FIG. 1D



# FIG. 1E



# FIG. 1F



# FIG. 2



# FIG. 3



# FIG. 4A



# FIG. 4B



# FIG. 4C



# FIG. 4D



# FIG. 4E



# FIG. 4F



5,905,274

| 1 | 2 |

**THIN-FILM TRANSISTOR AND METHOD OF MAKING SAME**

BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a thin-film transistor of a liquid crystal display and, more particularly, to a thin-film transistor having a gate including a double-layered metal structure and a method of making such a double-layered metal gate.

2. Discussion of Related Art

An LCD (Liquid Crystal Display) includes a switching device as a driving element, and a pixel-arranged matrix structure having transparent or light-reflecting pixel electrodes as its basic units. The switching device is a thin-film transistor having gate, source and drain regions.

The gate of the thin-film transistor is made of aluminum to reduce its wiring resistance, but an aluminum gate may cause defects such as hillock.

A double-layered metal gate, i.e., molybdenum-coated aluminum gate is considered as a substitute for the aluminum gate to overcome the problem of the hillock.

To fabricate a double-layered gate, metals such as aluminum and molybdenum are sequentially deposited, followed by a patterning process carried out via photolithography to form resulting metal films which have the same width. Although the double-layered gate is desirable to overcome the problem of hillock, the resulting deposited metal films forming the double-layered gate are so thick that a severe single step is created by a thickness difference between the metal films and a substrate, thereby causing a single step difference between the substrate and the double-layered gate which deteriorates the step coverage of a later formed gate oxide layer. The source and drain regions formed on the gate oxide layer may have disconnections between areas of the source and drain regions which are overlapped and non-overlapped with the gate, or electrically exhibit short circuits as a result of contact with the gate.

According to another method of forming the gate, each of the metal layers of Al and Mo form a double step difference with the substrate so as to improve the step coverage of the gate oxide layer.

FIGS. 1A through 1F are diagrams illustrating the process for fabricating a thin-film transistor of a method which is related to the invention described and claimed in the present application. The method shown in FIGS. 1A–1F is not believed to be published prior art but is merely a recently discovered method related to the invention described and claimed in the present application.

Referring to FIG. 1A, aluminum is deposited on a substrate 11 to form a first metal layer 13. A first photoresist 15 is deposited on the first metal layer 13. The first photoresist 15 is exposed and developed so as to have a certain width w1 extending along the first metal layer 13.

Referring to FIG. 1B, the first metal layer 13 is patterned via wet etching using the first photoresist 15 as a mask so that the first metal layer 13 has a certain width w1. After the first photoresist 15 is removed, a second metal layer 17 is formed by depositing Mo, Ta, or Co on the substrate 11 so as to cover the first metal layer 13. A second photoresist 19 is then deposited on the second metal layer 17. The second photoresist 19 is exposed and developed so as to have a certain width w2 extending along the second metal layer 17 and located above the first metal layer 13.

Referring to FIG. 1C, the second metal layer 17 is patterned via a wet etching process using the second pho-

toresist 19 as a mask such that the second metal layer 17 has a certain width w2 which is narrower than the width w1 of the first metal layer 13. After formation of the gate 21, the second photoresist 19 is removed.

Thus, the patterned first and second metal layers 13 and 17 form a gate 21 having a double-layered metal structure that provides a double step difference between the double-layered metal gate structure 21 and the substrate 11. The formation of the gate 21 as described above and shown in FIGS. 1–3 requires the use of two photoresists 15, 19 and two photoresist steps.

In the gate 21 shown in FIG. 3, the second metal layer 17 is preferably centrally located on the first metal layer 13. Although there is no specific information available regarding a relationship of w1 to w2 of this related method, based on their understanding of this related method resulting in the structure shown in FIG. 3, the inventors of the invention described and claimed in the present application assume that the width difference w1–w2 between the first and second metal layers 13 and 17 is larger than or equal to 4 $\mu m$, that is, w1–w2$\geqq$4 $\mu m$.

Referring to FIG. 1D, a first insulating layer 23 is formed by depositing silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ as a single-layered or double-layered structure on the gate 21 and substrate 11. Semiconductor and ohmic contact layers 25 and 27 are formed by sequentially depositing undoped polycrystalline silicon and heavily doped silicon on the first insulating layer 23. The semiconductor and ohmic contact layers 25 and 27 are patterned to expose the first insulating layer 23 by photolithography.

Referring to FIG. 1E, conductive metal such as aluminum is laminated on the insulating and ohmic contact layers 23 and 27. The conductive metal is patterned by photolithography so as to form a source electrode 29 and a drain electrode 31. A portion of the ohmic contact layer 27 exposed between the source and drain electrodes 29 and 31 is etched by using the source and drain electrodes 29 and 31 as masks.

Referring to FIG. 1F, silicon oxide or silicon nitride is deposited on the entire surface of the structure to form a second insulating layer 33. The second insulating layer 33 is etched to expose a designated portion of the drain electrode 31, thus forming a contact hole 35. By depositing transparent and conductive material on the second insulating layer 33 and patterning it via photolithography, a pixel electrode 37 is formed so as to be electrically connected to the drain electrode 31 through the contact hole 35.

According to the method of fabricating a thin-film transistor as described above and shown in FIGS. 1A–1F, respective first and second metal layers are formed through photolithography using different masks so as to form the gate with a double-layered metal structure, resulting in double step differences between the gate and substrate.

As a result of the double step difference between the gate 21 and the substrate 11 shown in FIG. 1C, a hillock often occurs on both side portions of the first metal layer 13 which have no portion of the second metal layer 17 deposited thereon when the first metal layer 13 is wider than the second metal layer 17 as in FIG. 1C. Another problem with this related method is that the process for forming a gate is complex and requires two photoresists 15, 19 and two steps of deposition and photolithography. As a result, the contact resistance between the first and second metal layers may be increased.

Another method of forming a double metal layer gate structure is described in "Low Cost, High Quality TFT-LCD

5,905,274

**3**

Process", SOCIETY FOR INFORMATION DISPLAY EURO DISPLAY 96, Proceedings of the 16th International Display Research Conference, Birmingham, England, Oct. 1, 1996, pages 591–594. On page 592 of this publication, a method of forming a double metal gate structure includes the process of depositing two metal layers first and then patterning the two metal layers to thereby eliminate an additional photoresist step. However, with this method, process difficulties during the one step photoresist process for forming the double metal gate resulted in the top layer being wider than the bottom layer causing an overhang condition in which the top layer overhangs the bottom layer. This difficulty may result in poor step coverage and disconnection. This problem was solved by using a three-step etching process in which the photoresist had to be baked before each of the three etching steps to avoid lift-off or removal of the photoresist during etching. This three-step etching process and required baking of the photoresist significantly increases the complexity and steps of the gate forming method.

## SUMMARY OF THE INVENTION

To overcome the problems discussed above, the preferred embodiments of the present invention provide a thin-film transistor which prevents a hillock and deterioration of step coverage of a later formed gate oxide layer on a double metal layer gate.

The preferred embodiments of the present invention also provide a method of fabricating a thin-film transistor that simplifies the process for forming a double metal layer gate.

The preferred embodiments of the present invention further provide a method of fabricating a thin-film transistor that reduces the contact resistance between the first and second metal layers constituting a gate.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention. The objectives and other advantages of the invention will be realized and attained by the structure particularly pointed out in the written description and claims hereof, as well as, the appended drawings.

To achieve these and other advantages and in accordance with the purpose of the preferred embodiments of the present invention, as embodied and broadly described, a thin-film transistor preferably comprises a substrate, and a gate including a double-layered structure of first and second metal layers disposed on the substrate, the first metal layer being wider than the second metal layer by about 1 to 4 μm, and a method of making such a thin-film transistor preferably comprises the steps of: depositing a first metal layer on a substrate, depositing a second metal layer directly on the first metal layer; forming a photoresist having a desired width on the second metal layer; patterning the second metal layer via an isotropic etching using the photoresist as a mask; patterning the first metal layer via an anisotropic etching using the photoresist as a mask, the first metal layer being etched to have a desired width, thus forming a gate having a laminated structure of the first and second metal layers; and removing the photoresist.

These and other elements, features, and advantages of the preferred embodiments of the present invention will be apparent from the following detailed description of the preferred embodiments of the present invention, as illustrated in the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to provide a further understanding of the invention and are incor-

**4**

porated in and constitute a part of this specification, illustrate preferred embodiments of the invention and together with the description serve to explain the principles of the invention, in which:

FIGS. 1A through 1F are diagrams illustrating a process for fabricating a thin-film transistor according to a method which is related to the preferred embodiments of the present invention;

FIG. 2 is a top view of a thin-film transistor according to a preferred embodiment of the present invention;

FIG. 3 is a cross-sectional view taken along line X—X of FIG. 2; and

FIGS. 4A through 4F are diagrams illustrating a process for fabricating a thin-film transistor of preferred embodiments of the present invention.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

Reference will now be made in detail to preferred embodiments of the present invention, examples of which are illustrated in the accompanying drawings.

FIG. 2 is a top view of a thin-film transistor according to a preferred embodiment of the present invention. FIG. 3 is a cross-sectional view taken along line x—x of FIG. 2.

The thin-film transistor comprises a gate 49 having a double-layered structure of a first metal layer 43, a second metal layer 45 disposed on a substrate 41, a first insulating layer 51, a second insulating layer 61, a semiconductor layer 53, an ohmic contact layer 55, a source electrode 57, a drain electrode 59, and a pixel electrode 65.

The gate 49 has a double-layered structure including the first and second metal layers 43 and 45 disposed on the substrate 41. The first metal layer 43 is preferably formed from a conductive metal such as Al, Cu, or Au deposited to have a certain width w1. The second metal layer 45 is preferably formed from a refractory metal such as Mo, Ta, or Co deposited to have a certain width w2.

The present inventors have discovered that a relationship between the width of the first metal layer and the width of the second metal layer of a double metal layer gate electrode is critical to preventing deterioration of step coverage of a later formed gate oxide layer in such a structure having a double step difference between the substrate and the gate. More specifically, the present inventors determined that a structure wherein the first metal layer 43 is wider than the second metal layer 45 by about 1 to 4 μm, for example, 1 μm<w1−w2<4 μm, provides maximum prevention of deterioration of step coverage of a later formed gate oxide layer in such a structure having a double step difference between the substrate and the gate.

To achieve the best results, the second metal layer 45 is preferably positioned substantially in the middle of the first metal layer 45, so that both side portions of the first metal layer 43 which have no portion of the second metal layer 45 disposed thereon have substantially the same width as each other. The width of each of the side portions is preferably larger than about 0.5 μm but less than about 2 μm.

The first insulating layer 51 is preferably formed by depositing single layer of silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ on the substrate including the gate 49.

The semiconductor and ohmic contact layers 53 and 55 are formed on the portion of the first insulating layer 51 corresponding to the gate 49 by sequentially depositing undoped amorphous silicon and heavily doped amorphous silicon and patterning the two silicon layers. The semicon-

5,905,274

5

ductor layer 53 is used as the active region of an element, thus forming a channel by means of a voltage applied to the gate 49. The ohmic contact layer 55 provides an ohmic contact between the semiconductor layer 53 and the source and drain electrodes 57 and 59. The ohmic contact layer 55 is not formed in the portion that becomes the channel of the semiconductor layer 53.

The source and drain electrodes 57 and 59 are in contact with the ohmic contact layer 55, and each electrode 57, 59 extends to a designated portion on the first insulating layer 51.

The second insulating layer 61 is formed by depositing insulating material such as silicon oxide $SiO_2$ silicon nitride $Si_3N_4$ to cover the source and drain electrodes 57 and 59 and the first insulating layer 51. The second insulating layer 61 on the drain electrode 59 is removed to form a contact hole 63. The pixel electrode 65 is formed from transparent and conductive material such as ITO (Indium Tin Oxide) or Tin oxide $SnO_2$, so that it is connected to the drain electrode 59 through the contact hole 63.

In the first and second metal layers 43 and 45 constituting the gate 49, each side portion of the first metal layer 43 having no portion of the second metal layer 45 thereon has a width that is preferably larger than about 0.5 $\mu m$ and less than about 2 $\mu m$. Because the first metal layer 43 is wider than the second metal layer 45 by about 1.0 $\mu m$ to 4.0 $\mu m$, double step differences determined according to the relationship between the width of the first metal layer and the width of the second metal layer are formed between the gate 49 and substrate 41. The double step differences determined according to the novel features of the preferred embodiments of the present invention prevent deterioration of the coverage of the first insulating layer 51 which deterioration occurs in prior art devices. The hillock in the first metal layer 43 is also avoidable because the width difference between the first and second metal layers 43 and 45 is between about 1 $\mu m$ to 4 $\mu m$.

FIGS. 4A through 4F are diagrams illustrating the process for fabricating the thin-film transistor of the preferred embodiments of the present invention.

Referring to FIG. 4A, metal such as Al, Cu, or Au is deposited on a substrate so as to form a first metal layer 43. A second metal layer 45 is formed from Mo, Ta, or Co and deposited on the first metal layer 43 without performing a masking step between the step of depositing the first metal layer and the step of depositing the second metal layer. The first and second metal layers 43 and 45 are sequentially deposited so as to preferably have a thickness as large as about 500–4000Å and 500–2000Å, respectively, by means of sputtering or chemical vapor deposition (hereinafter, referred to as CVD) without breaking a vacuum state. As a result, the contact resistance between the first and second metal layers 43 and 45 is reduced.

According to the preferred embodiments of the present invention, a single photoresist step is used to pattern both the first metal layer 43 and the second metal layer 45 simultaneously. In the single photoresist step, a photoresist 47 is deposited on the second metal layer 45 and then the photoresist 47 is patterned through exposure and development to have the width w1 on a designated portion of the second metal layer 45.

Referring to FIG. 4B, the second metal layer 45 is patterned with an etching solution preferably prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$, by means of a wet etching using the photoresist 47 as a mask. Because the portion of the second

6

metal layer 45 covered with the photoresist 47, as well as, exposed side portions of the second metal layer 45 are isotopically etched, the second metal layer 45 is preferably patterned to have the width w2 which is narrower than the width w1 of the photoresist 47 which is the same as the width w1 of the first metal layer 43, that is, about 1 $\mu m < w1 - w2 < 4$ $\mu m$. Each side portion of the second metal layer 45 preferably has a width larger than about 0.5 $\mu m$ and less than about 2 $\mu m$. That is, the two side portions of the second metal layer 45 covered with the photoresist 47 are preferably etched to have substantially the same width as each other. The lateral surfaces of the second metal layer 45 are preferably etched to have a substantially rectangular or inclined shape.

Referring to FIG. 4C, the first metal layer 43 is patterned via a wet etching having anisotropic etching characteristic such as reactive ion etching (hereinafter, referred to as RIE) by using the photoresist 47 as a mask. When etching the first metal layer 43 other than the portion of the layer 43 covered with the photoresist 47, the first metal layer 43 preferably has the same width w1 of the photoresist 47. Thus, patterning of the first and second metal layers 43, 45, respectively, only requires two etching steps and does not require baking of the photoresist before each step of etching. Also, the relation between the first and second metal layers 43 and 45 also may be represented by about 1 $\mu m < w1 - w2 < 4$ $\mu m$.

The first and second metal layers 43 and 45 resulting from the single photoresist step process described above form a gate 49 having a double-layered metal structure. The gate 49 has the second metal layer 45 positioned substantially in the middle of the first metal layer 43 so that the each side portion of the first metal layer 43 having no second metal layer 45 thereon is wider than about 0.5 $\mu m$ but narrower than about 2 $\mu m$. The photoresist 47 remaining on the second metal layer 45 is removed after the two etching steps are completed.

Referring to FIG. 4D, a first insulating layer 51 is formed by depositing a single layer or double layers of silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ on the gate 49 and substrate 41 by CVD. Because each side portion of the first metal layer 43 having no second metal layer 45 thereon is wider than about 0.5 $\mu m$, double step differences formed between the substrate and gate can prevent the coverage of the first insulating layer 51 from being deteriorated as in prior art devices. The hillock in the first metal layer 43 is also avoidable because a width of a portion of the first metal layer 43 which is exposed is less than about 2 $\mu m$.

Amorphous silicon which is undoped and heavily doped amorphous silicon are sequentially deposited on the first insulating layer 41 by CVD, thus forming semiconductor and ohmic contact layers 53 and 55. The ohmic contact and semiconductor layers 55 and 53 are patterned by means of photolithography to expose the first insulating layer 51.

Referring to FIG. 4E, conductive metal such as Al or Cr is laminated on the insulating and ohmic contact layers 51 and 55 and patterned by photolithography to form source and drain electrodes 57 and 59. The ohmic contact layer 55 exposed between the source and drain electrodes 57 and 59 is etched by using the source drain electrodes 57 and 59 as masks.

Referring to FIG. 4F, a second insulating layer 61 is formed by depositing insulating material such as silicon oxide or silicon nitride by CVD on the entire surface of the above structure. The second insulating layer is removed by photolithography to expose a designated portion of the drain electrode 59 and thus form a contact hole 63. Once trans-

5,905,274

**7**

parent and conductive material such as ITO (Indium Tin Oxide) or Tin oxide $SnO_2$ is deposited on the second insulating layer **61** via sputtering and patterned by photolithography, a pixel electrode **65** is formed so that it is electrically connected to the drain electrode **59** through the contact hole **63**.

In another preferred embodiment of the present invention, the first and second metal layers **43** and **45** are first etched by means of a dry etching having anisotropic etching characteristic such as RIE by using the photoresist **47** as a mask. The gate **49** is formed by etching the second metal layer **45** under the photoresist **47** with an etching solution prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$.

In still another preferred embodiment of the present invention, the gate **49** is formed through a single etching step process for etching the first and second metal layers **43** and **45** simultaneously and via a single etching step, where the second metal layer **45** is etched more quickly than the first metal layer **43** with an etching solution prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$. Because of the etching material and metals used for the first and second metal layers of the gate, only a single etching step is required. Despite the fact that a single etching step is used, it is still possible to obtain the relationship between the widths w1 and w2 of the first and second metal layers described above. In this process, the first and second metal layers forming the gate **49** are formed and patterned with a single photo resist step as described above and a single etching step.

As described above, in the preferred embodiments of the present invention, the first and second metal layers are sequentially deposited on the substrate without performing a masking step between the step of depositing the first metal layer and the second metal layer, followed by forming a photoresist that covers a designated portion of the second metal layer. In one preferred embodiment, the second metal layer is wet etched by using the photoresist as a mask but the first metal layer is dry etched. As a result, the double-metal gate is formed. In another preferred embodiment, a single etching step is used to form the double-metal gate wherein both the first metal layer and the second metal layer are wet etched, but the different in etching rates of the first and second metal layers produces different etching affects which result in the desired double-step structure.

While the invention has been particularly shown and described with reference to preferred embodiments thereof, it will be understood by those skilled in the art that the foregoing and other changes in form and details may be made therein without departing from the spirit and scope of the invention.

**8**

What is claimed is:

1. A thin film transistor comprising:

a substrate; and

a gate including a double-layered structure having a first metal layer which is a bottom layer disposed on the substrate and a second metal layer disposed on the first metal layer, the first metal layer including aluminum, the second metal layer being arranged on the first metal layer to prevent hillock at the sides of the aluminum first metal layer, the first metal layer being wider than the second metal layer by about 1 to 4 $\mu m$.

2. The thin-film transistor as claimed in claim **1**, wherein the second metal layer is located in a middle portion of the first metal layer so that two side portions of the first metal layer having no second metal layer disposed thereon have the same width as each other.

3. The thin-film transistor as claimed in claim **1**, wherein the second metal layer includes at least one of Mo, Ta, and Co.

4. A thin film transistor comprising:

a substrate;

a gate including a double-layered structure having a first metal layer which is a bottom layer disposed on the substrate and a second metal layer disposed on the first metal layer, the first metal layer including aluminum, the second metal layer being arranged on the first metal layer to prevent hillock at the sides of the aluminum first metal layer, the first metal layer being wider than the second metal layer by about 1 to 4 $\mu m$;

a first insulating layer disposed on the substrate including the gate;

a semiconductor layer disposed on a portion of the first insulating layer at a location corresponding to the gate;

an ohmic contact layer disposed on two sides of the semiconductor layer;

a source electrode and a drain electrode disposed on the ohmic contact layer and extending onto the first insulating layer; and

a second insulating layer covering the semiconductor layer, the source and drain electrodes and the first insulating layer.

5. The thin-film transistor as claimed in claim **4**, wherein the second metal layer is located in a middle portion of the first metal layer so that two side portions of the first metal layer having no second layer thereon have the same width as each other.

6. The thin-film transistor as claimed in claim **4**, wherein the second metal layer includes at least one of Mo, Ta, and Co.

\* \* \* \* \*

# EXHIBIT B



US006815321B2

(12) **United States Patent** (10) Patent No.: **US 6,815,321 B2**

Ahn et al. (45) Date of Patent: **Nov. 9, 2004**

---

(54) **THIN-FILM TRANSISTOR AND METHOD OF MAKING SAME**

(75) Inventors: **Byung-Chul Ahn**, Kumi-shi (KR); **Hyun-Sik Seo**, Anyang-shi (KR)

(73) Assignee: **LG. Philips LCD Co., Ltd.**, Seoul (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/377,732**

(22) Filed: **Mar. 4, 2003**

(65) **Prior Publication Data**

US 2003/0164520 A1 Sep. 4, 2003

**Related U.S. Application Data**

(62) Division of application No. 10/154,955, filed on May 28, 2002, now Pat. No. 6,548,829, which is a continuation of application No. 09/940,504, filed on Aug. 29, 2001, now abandoned, which is a division of application No. 09/243, 556, filed on Feb. 2, 1999, now Pat. No. 6,340,610, which is a division of application No. 08/918,119, filed on Aug. 27, 1997, now Pat. No. 5,905,274.

(30) **Foreign Application Priority Data**

Mar. 4, 1997 (KR) .......................................... 1997-7010

(51) **Int. Cl.⁷** ........................................... **H01L 21/3205**

(52) **U.S. Cl.** ...................... **438/592**; 438/155; 438/481; 438/482; 438/483; 438/588

(58) **Field of Search** ................................ 257/149, 158, 257/482, 588, 592

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,220,706 A | 9/1980 | Spak | |
| 5,036,370 A | 7/1991 | Miyago et al. | |
| 5,132,745 A | * 7/1992 | Kwasnick et al. | ........... 257/412 |
| 5,156,986 A | 10/1992 | Wei et al. | |
| 5,162,933 A | 11/1992 | Kakuda et al. | |

| | | | |
|---|---|---|---|
| 5,428,250 A | 6/1995 | Ikeda et al. | |
| 5,464,500 A | 11/1995 | Tsujimura et al. | |
| 5,821,159 A | * 10/1998 | Ukita | ......................... 438/592 |
| 6,340,610 B1 | * 1/2002 | Ahn et al. | .................. 438/158 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0301571 | 2/1989 |
| EP | 9206497 | 4/1992 |
| EP | 0602315 | 7/1993 |
| EP | 0812012 | 12/1997 |

(List continued on next page.)

OTHER PUBLICATIONS

"Low Cost, High Display Quality TFT–LCD Process", Society for Information Display, EuroDisplay 96, Proceedings of the 16th International Display Research Conference, Oct. 1, 1996, 591–594.

"Hillock–Free Al–Gate Materials Using Stress–Absorbing Buffer Layer for Large Area AMLCDs" Society for information Display 96 Digest, pp. 341–344, 1996.

(List continued on next page.)

*Primary Examiner*—Long Pham
*Assistant Examiner*—Wai-Sing Louie
(74) *Attorney, Agent, or Firm*—Birch, Stewart, Kolasch & Birch, LLP

(57) **ABSTRACT**

A thin-film transistor includes a substrate, and a gate including a double-layered structure having first and second metal layers provided on the substrate, the first metal layer being wider than the second metal layer by 1 to 4 μm. A method of making such a thin-film transistor includes the steps of: depositing a first metal layer on a substrate, depositing a second metal layers directly on the first metal layer; forming a photoresist having a designated width on the second metal layer; patterning the second metal layer via isotropic etching using the photoresist as a mask; patterning the first metal layer by means of an anisotropic etching using the photoresist as a mask, the first metal layer being etched to have the designated width, thus forming a gate having a laminated structure of the first and second metal layers; and removing the photoresist.

**22 Claims, 6 Drawing Sheets**



**US 6,815,321 B2**

Page 2

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 2253742 | 9/1992 |
| GB | 2254187 | 9/1992 |
| GB | 2307597 | 5/1997 |
| JP | 4097531 | 3/1982 |
| JP | 1120068 | 5/1989 |
| JP | 1222448 | 9/1989 |
| JP | 3114028 | 5/1991 |
| JP | 5315615 | 11/1993 |
| JP | 5343683 | 12/1993 |
| JP | 637311 | 2/1994 |
| JP | 6104241 | 4/1994 |
| JP | 06281954 | 10/1994 |
| JP | 7077695 | 3/1995 |
| JP | 8254680 | 10/1996 |
| KR | 954593 | 2/1995 |
| WO | 9206504 | 4/1992 |

OTHER PUBLICATIONS

"Wet Etchant for Molybdenum Having High Selectivity Against Aluminum", IBM Technical Disclosure Bulletin, vol. 35, No. 3, Aug. 1, 1992, pp. 205–206, XP 000326238.

AT Patent Abstracts of Japan, vol. 9, No. 315 [E–365] and Japan 60–149173 (Hitachi).

AU Patent Abstracts of Japan, vol. 5, No. 197 [E–86] and Japan 56–118370 (Cho Lsi Gijutsu).

"Pure Al and Al–Alloy Gate–Line Processes in TFT–L-CDs", Samsung Electronics Co., Ltd., Kiheung, Korea, C.W. Kim et al., SID 96 Digest, pp. 337–340.

* cited by examiner

## FIG.1A



## FIG.1B



## FIG.1C



# FIG.1D



# FIG.1E



# FIG.1F





FIG.2

U.S. Patent    Nov. 9, 2004    Sheet 4 of 6    US 6,815,321 B2

# FIG.3



# FIG.4A



# FIG.4B



# FIG.4C



## FIG.4D



## FIG.4E



## FIG.4F



US 6,815,321 B2

1

**THIN-FILM TRANSISTOR AND METHOD OF MAKING SAME**

This application is a divisional of application Ser. No. 10/154,955, filed on May 28, 2002, now U.S. Pat. No. 6,548,829 which is a continuation of abandoned application Ser. No. 09/940,504, filed on Aug. 29, 2001, which is a divisional application under 37 C.F.R. §1.53(b) of patented prior application Ser. No. 09/243,556 (U.S. Pat. No. 6,340, 610 B1) filed on Feb. 2, 1999 (Issued on Jan. 22, 2002);, which is divisional application under 37 C.F.R. §1.53(b) of patented prior application Ser. No. 08/918,119 (U.S. Pat. No. 5,905,274) filed on Aug. 27, 1997 (Issued on May 18, 1999) the entire contents of which are hereby incorporated by reference and for which priority is claimed under 35 U.S.C. §120; and this application claims priority of Application No. 97-07010 filed in Korea on Mar. 4, 1997 under 35 U.S.C. §119.

BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a thin-film transistor of a liquid crystal display and, more particularly, to a thin-film transistor having a gate including a double-layered metal structure and a method of making such a double-layered metal gate.

2. Discussion of Related Art

An LCD (Liquid Crystal Display) includes a switching device as a driving element, and a pixel-arranged matrix structure having transparent or light-reflecting pixel electrodes as its basic units. The switching device is a thin-film transistor having gate, source and drain regions.

The gate of the thin-film transistor is made of aluminum to reduce its wiring resistance, but an aluminum gate may cause defects such as hillock.

A double-layered metal gate, i.e., molybdenum-coated aluminum gate is considered as a substitute for the aluminum gate to overcome the problem of the hillock.

To fabricate a double-layered gate, metals such as aluminum and molybdenum are sequentially deposited, followed by a patterning process carried out via photolithography to form resulting metal films which have the same width. Although the double-layered gate is desirable to overcome the problem of hillock, the resulting deposited metal films forming the double-layered gate are so thick that a severe single step is created by a thickness difference between the metal films and a substrate, thereby causing a single step difference between the substrate and the double-layered gate which deteriorates the step coverage of a later formed gate oxide layer. The source and drain regions formed on the gate oxide layer may have disconnections between areas of the source and drain regions which are overlapped and non-overlapped with the gate, or electrically exhibit short circuits as a result of contact with the gate.

According to another method of forming the gate, each of the metal layers of Al and Mo form a double step difference with the substrate so as to improve the step coverage of the gate oxide layer.

FIGS. 1A through 1F are diagrams illustrating the process for fabricating a thin-film transistor of a method which is related to the invention described and claimed in the present application. The method shown in FIGS. 1A–1F is not believed to be published prior art but is merely a recently discovered method related to the invention described and claimed in the present application.

2

Referring to FIG. 1A, aluminum is deposited on a substrate 11 to form a first metal layer 13. A first photoresist 15 is deposited on the first metal layer 13. The first photoresist 15 is exposed and developed so as to have a certain width w1 extending along the first metal layer 13.

Referring to FIG. 1B, the first metal layer 13 is patterned via wet etching using the first photoresist 15 as a mask so that the first metal layer 13 has a certain width w1. After the first photoresist 15 is removed, a second metal layer 17 is formed by depositing Mo, Ta, or Co on the substrate 11 so as to cover the first metal layer 13. A second photoresist 19 is then deposited on the second metal layer 17. The second photoresist 19 is exposed and developed so as to have a certain width w2 extending along the second metal layer 17 and located above the first metal layer 13.

Referring to FIG. 1C, the second metal layer 17 is patterned via a wet etching process using the second photoresist 19 as a mask such that the second metal layer 17 has a certain width w2 which is narrower than the width w1 of the first metal layer 13. After formation of the gate 21, the second photoresist 19 is removed.

Thus, the patterned first and second metal layers 13 and 17 form a gate 21 having a double-layered metal structure that provides double step difference between the double-layered metal gate structure 21 and the substrate 11. The formation of the gate 21 as described above and shown in FIGS. 1A–1F requires the use of two photoresists 15, 19 and two photoresist steps.

In the gate 21, shown in FIG. 1C, the second metal layer 17 is preferably centrally located on the first metal layer 13. Although there is no specific information available regarding a relationship of w1 to w2 of this related art method, based on their understanding of this related method resulting in the structure shown in FIG. 1C, the inventors of the invention described and claimed in the present application assume that the width difference w1−w2 between the first and second metal layers 13 and 17 is larger than or equal to 4 μm, that is, w1−w2 ≧ 4 μm.

Referring to FIG. 1D, a first insulating layer 23 is formed by depositing silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ as a single-layered or double-layered structure on the gate 21 and substrate 11. Semiconductor and ohmic contact layers 25 and 27 are formed by sequentially depositing undoped polycrystalline silicon and heavily doped silicon on the first insulating layer 23. The semiconductor and ohmic contact layers 25 and 27 are patterned to expose the first insulating layer 23 by photolithography.

Referring to FIG. 1E, conductive metal such as aluminum is laminated on the insulating and ohmic contact layers 23 and 27. The conductive metal is patterned by photolithography so as to form source electrode 29 and a drain electrode 31. A portion of the ohmic contact layer 27 exposed between the source and drain electrodes 29 and 31 is etched by using the source and drain electrodes 29 and 31 as masks.

Referring to FIG. 1F, silicon oxide or silicon nitride is deposited on the entire surface of the structure to form a second insulating layer 33. The second insulating layer 33 is etched to expose a designated portion of the drain electrode 31, thus forming a contact hole 35. By depositing transparent and conductive material on the second insulating layer 33 and patterning it via photolithography, a pixel electrode 37 is formed so as to be electrically connected to the drain electrode 31 through the contact hole 35.

According to the method of fabricating a thin-film transistor as described above and shown in FIGS. 1A–1F, respective first and second metal layers are formed through

US 6,815,321 B2

3

photolithography using different masks so as to form the gate with a double-layered metal structure, resulting in double step differences between the gate and substrate.

As a result of the double step difference between the gate **21** and the substrate **11** shown in FIG. **1C**, a hillock often occurs on both side portions of the first metal layer **13** which have no portion of the second metal layer **17** deposited thereon when the first metal layer **13** is wider than the second metal layer **17** as in FIG. **1C**. Another problem with this related art method is that the process for forming a gate is complex and requires two photoresists **15**, **19** and two steps of deposition and photolithography. As a result, the contact resistance between the first and second metal layers may be increased.

Another related art method of forming a double metal layer gate structure is described in "Low Cost, High Quality TFT-LCD Process", SOCIETY FOR INFORMATION DIS-PLAY EURO DISPLAY 96, Proceedings of the 16th Inter-national Display Research Conference, Birmingham, England, Oct. 1, 1996, pages 591–594. One page 592 of this publication, a method of forming a double metal gate structure includes the process of depositing two metal layers first and then patterning the two metal layer to thereby eliminate an additional photoresist step. However, with this method, process difficulties during the one step photoresist process for forming the double metal layer gate resulted in the top layer being wider than the bottom layer causing an overhang condition in which the top layer overhangs the bottom layer. This difficulty may result in poor step coverage and disconnection. This problem was solved by using a three-step etching process in which the photoresist had to be baked before each of the three etching steps to avoid lift-off or removal of the photoresist during etching. This three-step etching process and required baking of the photoresist significantly increases the complexity and steps of the gate forming method.

### SUMMARY OF THE INVENTION

To overcome the problems discussed above, the preferred embodiments of the present invention provide a thin-film transistor which prevents a hillock and deterioration of step coverage of a later formed gate oxide layer on a double metal layer gate.

The preferred embodiments of the present invention also provide a method of fabricating a thin-film transistor that simplifies the process for forming a double metal layer gate.

The preferred embodiments of the present invention fur-ther provide a method of fabricating a thin-film transistor that reduces the contact resistance between the first and second metal layers constituting a gate.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention. The objectives and other advan-tages of the invention will be realized and attained by the structure particularly pointed out in the written description and claims hereof, as well as, the appended drawings.

To achieve these and other advantages and in accordance with the purpose of the preferred embodiments of the present invention, as embodied and broadly described, a thin-film transistor preferably comprises a substrate, and a gate including a double-layered structure of first and second metal layers disposed on the substrate, the first metal layer being wider than the second metal layer by about 1 to 4 $\mu m$, and a method of making such a thin-film transistor prefer-ably comprises the steps of: depositing a first metal layer on

4

a substrate, depositing a second metal layer directly on the first metal layer; forming a photoresist having a desired width on the second metal layer; patterning the second metal layer via an isotropic etching using the photoresist as a mask; patterning the first metal layer via an anisotropic etching using the photoresist as a mask, the first metal layer being etched to have a desired width, thus forming a gate having a laminated structure of the first and second layers; and removing the photoresist.

These and other elements, features, and advantages of the preferred embodiments of the present invention will be apparent from the following detailed description of the preferred embodiments of the present invention, as illus-trated in the accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to pro-vide a further understanding of the invention and are incor-porated in and constitute a part of this specification, illustrate preferred embodiments of the invention and together with the description serve to explain the principles of the invention, in which:

FIGS. **1A** through **1F** are diagrams illustrating a process for fabricating a thin-film transistor according to a method of the related art;

FIG. **2** is a top view of a thin-film transistor according to a preferred embodiment of the present invention;

FIG. **3** is a cross-sectional view taken along line III—III of FIG. **2**; and

FIGS. **4A** through **4F** are diagrams illustrating a process for fabricating a thin-film transistor of preferred embodi-ments of the present invention.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

Reference will now be made in detail to preferred embodiments of the present invention, examples of which are illustrated in the accompanying drawings.

FIG. **2** is a top view of a thin-film transistor according to a preferred embodiment of the present invention. FIG. **3** is a cross-sectional view taken along line III—III of FIG. **2**.

The thin-film transistor comprises a gate **49** having a double-layered structure of a first metal layer **43**, a second metal layer **45** disposed on a substrate **41**, a first insulating layer **51**, a second insulating layers **61**, a semiconductor layer **53**, an ohmic contact layer **55**, a source electrode **57**, a drain electrode **59**, and a pixel electrode **65**.

The gate **49** has a double-layered structure including the first and second metal layers **43** and **45** disposed on the substrate **41**. The first metal layer **43** is preferably formed from a conductive metal such as Al, Cu, or Au deposited to have a certain width w1. The second metal layer **45** is preferably formed from a refractory metal such as Mo, Ta, or Cu deposited to have a certain width w2.

The present inventors have discovered that a relationship between the width of the first metal layer and the width of the second metal layer of a double metal layer gate electrode is critical to preventing deterioration of step coverage of a later formed gate oxide layer in such a structure having a double step difference between the substrate and the gate. More specifically, the present inventors determined that a structure wherein the first metal layer **43** is wider than the second metal layer **45** by about 1 to 4 $\mu m$, for example, 1 $\mu m<w1−w2<4 \mu m$, provides maximum prevention of dete-rioration of step coverage of a later formed gate oxide layer

US 6,815,321 B2

5                                                          6

in such a structure having a double step difference between the substrate and the gate.

To achieve the best results, the second metal layer 45 is preferably positioned substantially in the middle of the first metal layer 45, so that both side portions of the first metal layer 43 which have no portion of the second metal layer 45 disposed thereon have substantially the same width as each other. The width of each of the side portions is preferably larger than about 0.5 $\mu$m but less than about 2 $\mu$m.

The first insulating layer 51 is preferably formed by depositing single layer of silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ on the substrate including the gate 49.

The semiconductor and ohmic contact layers 53 and 55 are formed on the portion of the first insulating layer 51 corresponding to the gate 49 by sequentially depositing undoped amorphous silicon and heavily doped amorphous silicon and patterning the two silicon layers. The semiconductor layer 53 is used as the active region of an element, thus forming a channel by means of a voltage applied to the gate 49. The ohmic contact layer 55 provides an ohmic contact between the semiconductor layer 53 and the source and drain electrodes 57 and 59. The ohmic contact layer 55 is not formed in the portion that becomes the channel of the semiconductor layer 53.

The source and drain electrodes 57 and 59 are in contact with the ohmic contact layer 55, and each electrode 57, 59 extends to a designated portion on the first insulating layer 51.

The second insulating layer 61 is formed by depositing insulating material such as silicon oxide $SiO_2$ silicon nitride $Si_3N_4$ to cover the source and drain electrodes 57 and 59 and the first insulating layer 51. The second insulating layer 61 on the drain electrode 59 is removed to form a contact hole 63. The pixel electrode 65 is formed from transparent and conductive material such as ITO (Indium Tin Oxide) or Tin oxide $SnO_2$, so that it is connected to the drain electrode 59 through the contact hole 63.

In the first and second metal layers 43 and 45 constituting the gate 49, each side portion of the first metal layer 43 having no portion of the second metal layer 45 thereon has a width that is preferably larger than about 0.5 $\mu$m and less than about 2 $\mu$m. Because the first metal layer 43 is wider than the second metal layer 45 by about 1.0 $\mu$m to 4.0 $\mu$m, double step differences determined according to the relationship between the width of the first metal layer and the width of the second metal layer are formed between the gate 49 and substrate 41. The double step differences determined according to the novel features of the preferred embodiments of the present invention prevent deterioration of the coverage of the first insulating layer 51 which deterioration occurs in prior art devices. The hillock in the first metal layer 43 is also avoidable because the width difference between the first and second metal layers 43 and 45 is between about 1 $\mu$m to 4 $\mu$m.

FIGS. 4A through 4F are diagrams illustrating the process for fabricating the thin-film transistor of the preferred embodiments of the present invention.

Referring to FIG. 4A, metal such as Al, Cu, or Au is deposited on a substrate so as to form a first metal layer 43. A second metal layer 45 is formed from Mo, Ta, or Co and deposited on the first metal layer 43 without performing a masking step between the step of depositing the first metal layer and the step of depositing the second metal layer. The first and second metal layers 43 and 45 are sequentially deposited so as to preferably have a thickness as large as about 500–4000 Angstroms and 500–2000 Angstroms,

respectively, by means of sputtering or chemical vapor deposition (hereinafter, referred to as CVD) without breaking a vacuum state. As a result, the contact resistance between the first and second metal layers 43 and 45 is reduced.

According to the preferred embodiments of the present invention, a single photoresist step is used to pattern both the first metal layer 43 and the second metal layer 45 simultaneously. In the single photoresist step, a photoresist 47 is deposited on the second metal layer 45 and then the photoresist 47 is patterned through exposure and development to have the width w1 on a designated portion of the second metal layer 45.

Referring to FIG. 4B, the second metal layer 45 is patterned with an etching solution preferably prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$, by means of a wet etching using the photoresist 47 as a mask. Because the portion of the second metal layer 45 covered with the photoresist 47, as well as, exposed side portions of the second metal layer 45 are isotropically etched, the second metal layer 45 is preferably patterned to have the width w2 which is narrower than the width w1 of the photoresist 47 which is the same as the width w1 of the first metal layer 43, that is, about 1 $\mu$m<w1−w2<4 $\mu$m. Each side portion of the second metal layer 45 preferably has a width larger than about 0.5 $\mu$m and less than about 2 $\mu$m. That is, the two side portions of the second metal layer 45 covered with the photoresist 47 are preferably etched to have substantially the same width as each other. The lateral surfaces of the second metal layer 45 are preferably etched to have a substantially rectangular or inclined shape.

Referring to FIG. 4C, the first metal layer 43 is patterned via dry etching having anisotropic etching characteristic such as reactive ion etching (hereinafter, referred to as RIE) by using the photoresist 47 as a mask. When etching the first metal layer 43 other than the portion of the layer 43 covered with the photoresist 47, the first metal layer 43 preferably has the same width w1 of the photoresist 47. Thus, patterning of the first and second metal layers 43, 45, respectively, only requires two etching steps and does not require baking of the photoresist before each step of etching. Also, the relation between the first and second metal layers 43 and 45 also may be represented by about 1 $\mu$m<w1−w2<4 $\mu$m.

The first and second metal layers 43 and 45 resulting form the single photoresist step process described above form a gate 49 having a double-layered metal structure. The gate 49 has the second metal layer 45 positioned substantially in the middle of the first metal layer 43 so that the each side portion of the first metal layer 43 having no second metal layer 45 thereon is wider than about 0.5 $\mu$m but narrower than about 2 $\mu$m. The photoresist 47 remaining on the second metal layer 45 is removed after the two etching steps are completed.

Referring to FIG. 4D, a first insulating layer 51 is formed by depositing a single layer or double layers of silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ on the gate 49 and substrate 41 by CVD. Because each side portion of the first metal layer 43 having no second metal layer 45 thereon is wider than 0.5 $\mu$m, double step differences formed between the substrate and gate can prevent the coverage of the first insulating layer 51 from being deteriorated as in prior art devices. The hillock in the first metal layer 43 is also avoidable because a width of a portion of the first metal layer 43 which is exposed is less than about 2 $\mu$m.

Amorphous silicon which is undoped and heavily doped amorphous silicon are sequentially deposited on the first

US 6,815,321 B2

7

insulating layer **41** by CVD, thus forming semiconductor and ohmic contact layers **53** and **55**. The ohmic contact and semiconductor layers **55** and **53** are patterned by means of photolithography to expose the first insulating layer **51**.

Referring to FIG. 4E, conductive metal such as Al or Cr is laminated on the insulating and ohmic contact layers **51** and **55** and patterned by photolithography to form source and drain electrodes **57** and **59**. The ohmic contact layer **55** exposed between the source and drain electrodes **57** and **59** is etched by using the source drain electrodes **57** and **59** as masks.

Referring to FIG. 4F, a second insulating layer **61** is formed by depositing insulating material such as silicon oxide or silicon nitride by CVD on the entire surface of the above structure. The second insulating layer is removed by photolithography to expose a designated portion of the drain electrode **59** and thus form a contact hole **63**. Once transparent and conductive material such as ITO (Indium Tin Oxide) or Tin oxide $SnO_2$ is deposited on the second insulating layer **61** via sputtering and patterned by photolithography, a pixel electrode **65** is formed so that it is electrically connected to the drain electrode **59** through the contact hole **63**.

In another preferred embodiment of the present invention, the first and second metal layers **43** and **45** are first etched by means of a dry etching having anisotropic etching characteristic such as RIE by using the photoresist **47** as a mask. The gate **49** is formed by etching the second metal layer **45** under the photoresist **47** with an etching solution prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$.

In still another preferred embodiment of the present invention, the gate **49** is formed through a single etching step process for etching the first and second metal layers **43** and **45** simultaneously and via a single etching step, where the second metal layer **45** is etched more quickly than the first metal layer **43** with an etching solution prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$. Because of the etching material and metals used for the first and second metal layers of the gate, only a single etching step is required. Despite the fact that a single etching step is used, it is still possible to obtain the relationship between the widths w1 and w2 of the first and second metal layers described above. In this process, the first and second metal layers forming the gate **49** are formed and patterned with a single photo resist step as described above and a single etching step.

As described above, in the preferred embodiments of the present invention, the first and second metal layers are sequentially deposited on the substrate without performing a masking step between the step of depositing the first metal layer and the second metal layer, followed by forming a photoresist that covers a designated portion of the second metal layer. In one preferred embodiment, the second metal layer is wet etched by using the photoresist as a mask but the first metal layer is dry etched. As a result, the double-metal gate is formed. In another preferred embodiment, a single etching step is used to form the double-metal gate wherein both the first metal layer and the second metal layer are wet etched, but the difference in etching rates of the first and second metal layers produces different etching affects which result in the desired double-step structure.

While the invention has been particularly shown and described with reference to preferred embodiments thereof, it will be understood by those skilled in the art that the foregoing and other changes in form and details may be made therein without departing from the spirit and scope of the invention.

8

What is claimed is:

1. A method of making a thin-film transistor, comprising the steps of:

depositing a first metal layer on a substrate;

depositing a second metal layer on the first metal layer without forming a photoresist on the first metal layer beforehand;

forming a photoresist having a predetermined width on the second metal layer;

anisotropically etching the first and second metal layers so such that the first metal layer and the second metal layer have the same width of the photoresist by using the photoresist as a mask,

isotropically etching the second metal layer such that the second metal layer is narrower than the first metal layer by about 1 $\mu$m to about 4 $\mu$m by using the photoresist as a mask, thus forming a gate having a double-layered structure including the first and second metal layers; and removing the photoresist.

2. The method of making a thin-film transistor as claimed in claim **1**, further comprising the steps of:

forming a first insulating layer on the substrate including the gate;

forming a semiconductor layer and an ohmic contact layer on a portion of the first insulating layer at a location corresponding to the gate;

forming a source electrode and drain electrode extending onto the first insulating layer on two sides of the ohmic contact layer, and removing a portion of the ohmic contact layer exposed between the source and drain electrodes; and

forming an insulating layer covering the semiconductor layer, the source electrode, the drain electrode and the first insulating layer.

3. The method of making a thin-film transistor as claimed in claim **1**, wherein the first metal layer includes Al, Cu, or Au.

4. The method of making a thin-film transistor as claimed in claim **1**, wherein the second metal layer includes Mo, Ta, or Co.

5. The method of making a thin-film transistor as claimed in claim **1**, wherein the first and second metal layers are removed via a dry etching method.

6. The method of making a thin-film transistor as claimed in claim **1**, wherein the second metal layer is etched with an etching solution prepared with a mixture of phosphoric acid, acetic acid and nitric acid.

7. A method of forming a thin film transistor comprising:

forming a first metal layer on a substrate,

forming a second metal layer on the first metal layer;

simultaneously patterning the first and second metal layers to form a double-layered metal gate, so that a total width of the first metal layer is greater than a total width of the second metal layer by about 1 to 4 $\mu$m.

8. The method of claim **7**, wherein the first and second metal layers are patterned so that the first metal layer has a first and a second side portion being exposed from the second metal layer, each side portion being at least about 0.5 $\mu$m in width.

9. The method of claim **8**, wherein each side portion of the first metal layer is exposed so that each side portion is less than about 2 $\mu$m in width.

10. The method of claim **7**, wherein the patterning step is such that the second metal layer is etched faster than the first etching layer.

US 6,815,321 B2

9

10

**11**. The method of claim **10**, wherein the second metal layer is wet etched, and the first metal layer is dry etched.

**12**. The method of claim **10**, wherein both the first and second metal layers are wet etched.

**13**. The method of claim **7**, wherein the patterning step comprises:

isotropically etching the second metal layer; and

anisotropically etching the first metal layer.

**14**. The method of claim **7**, wherein no masking step is required between the formation of the first and second metal layers.

**15**. The method of claim **7**, wherein the patterning step does not require processing of a photoresist before etching.

**16**. A method of waking a thin-film transistor, comprising the steps of:

depositing a first metal layer on a substrate, the first metal layer including aluminum;

depositing a second metal layer on the first metal layer without forming a photoresist on the first metal layer beforehand;

forming a single photoresist having predetermined width on the second metal layer;

patterning the first and second metal layers simultaneously in a single etching step using the single photoresist as a mask, the first metal layer being etched to have a width greater than a width of the second metal layer by about 1 to 4 $\mu$m; and

removing the photoresist.

**17**. The method of making a thin film transistor as claimed in claim **16**, further comprising the steps of:

forming a first insulating layer on the substrate including the gate;

forming a semiconductor layer and an ohmic contact layer on a portion of the first insulating layer at a location corresponding to the gate;

forming a source electrode and a drain electrode extending onto the first insulating layer on two sides of the ohmic contact layer, and removing a portion of the ohmic contact layer exposed between the source and the drain electrodes; and

forming a second insulating layer covering the semiconductor layer, the source electrode, the drain electrode and the first insulating layer.

**18**. The method of making a thin film transistor as claimed in claim **16**, wherein the first and second metal layers are sequentially deposited via sputtering or a chemical vapor deposition method without breaking a vacuum state.

**19**. The method of making a thin film transistor as claimed in claim **16**, wherein the first metal layer has thickness of about 500 Å to about 4000 Å.

**20**. The method of making a thin film transistor as claimed in claim **16**, wherein the second metal layer includes Mo, Ta or Co.

**21**. The method of making a thin film transistor as claimed in claim **16**, wherein the first metal layer has a thickness of about 500 Å to about 2000 Å.

**22**. The method of making a thin film transistor as claimed in claim **16**, wherein two side portions of the first metal layer having no second metal layer deposited thereon have substantially the same width as each other.

*  *  *  *  *

# EXHIBIT C



US007176489B2

(12) **United States Patent**
   Ahn et al.

(10) Patent No.: **US 7,176,489 B2**
(45) Date of Patent: ***Feb. 13, 2007**

(54) **THIN-FILM TRANSISTOR AND METHOD OF MAKING SAME**

(75) Inventors: **Byung-Chul Ahn**, Kumi-shi (KR); **Hyun-Sik Seo**, Anyang-shi (KR)

(73) Assignee: **LG. Philips LCD. Co., Ltd.**, Seoul (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/872,527**

(22) Filed: **Jun. 22, 2004**

(65) **Prior Publication Data**

US 2004/0229413 A1     Nov. 18, 2004

**Related U.S. Application Data**

(60) Division of application No. 10/377,732, filed on Mar. 4, 2003, now Pat. No. 6,815,321, which is a division of application No. 10/154,955, filed on May 28, 2002, now Pat. No. 6,548,829, which is a continuation of application No. 09/940,504, filed on Aug. 29, 2001, now abandoned, which is a division of application No. 09/243,556, filed on Feb. 2, 1999, now Pat. No. 6,340,610, which is a division of application No. 08/918,119, filed on Aug. 27, 1997, now Pat. No. 5,905,274.

(30) **Foreign Application Priority Data**

Mar. 4, 1997     (KR)     ................................. 97-07010

(51) **Int. Cl.**
   *H01L 29/04*     (2006.01)
   *H01L 29/10*     (2006.01)
   *H01L 31/036*     (2006.01)
   *H01L 31/0376*     (2006.01)
   *H01L 31/20*     (2006.01)

(52) **U.S. Cl.** ............................ **257/59**; 257/57; 257/66; 257/72; 257/73; 257/291; 257/359

(58) **Field of Classification Search** .................. 257/57, 257/59, 66, 73, 359, 72, 291
   See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,220,706 A    9/1980    Spak ........................... 430/318

(Continued)

FOREIGN PATENT DOCUMENTS

EP        0301571    2/1989

(Continued)

OTHER PUBLICATIONS

"Low Cost, High Display Quality TFT-LCD Process", Society for Information Display, EuroDisplay 96, Proceedings of the 16th International Display Research Conference, Oct. 1, 1996, 591-594.

(Continued)

*Primary Examiner*—Ida M. Soward
(74) *Attorney, Agent, or Firm*—Birch, Stewart, Kolasch and Birch, LLP

(57) **ABSTRACT**

A thin-film transistor includes a substrate, and a gate including a double-layered structure having first and second metal layers provided on the substrate, the first metal layer being wider than the second metal layer by 1 to 4 μm. A method of making such a thin-film transistor includes the steps of: depositing a first metal layer on a substrate, depositing a second metal layers directly on the first metal layer; forming a photoresist having a designated width on the second metal layer; patterning the second metal layer via isotropic etching using the photoresist as a mask; patterning the first metal layer by means of an anisotropic etching using the photoresist as a mask, the first metal layer being etched to have the designated width, thus forming a gate having a laminated structure of the first and second metal layers; and removing the photoresist.

**3 Claims, 6 Drawing Sheets**



**US 7,176,489 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,036,370 A | | 7/1991 | Miyago et al. ................ 257/72 |
| 5,132,745 A | | 7/1992 | Kwasnick et al. ........... 257/412 |
| 5,156,986 A | | 10/1992 | Wei et al. ................... 438/159 |
| 5,162,933 A | | 11/1992 | Kakuda et al. ............... 349/46 |
| 5,191,453 A | * | 3/1993 | Okumura ...................... 349/47 |
| 5,349,205 A | * | 9/1994 | Kobayashi et al. .......... 257/59 |
| 5,428,250 A | | 6/1995 | Ikeda et al. ................ 349/147 |
| 5,464,500 A | | 11/1995 | Tsujimura et al. .......... 216/34 |
| 5,644,146 A | * | 7/1997 | Arai et al. .................. 257/66 |
| 5,686,749 A | * | 11/1997 | Matsuo ...................... 257/316 |
| 5,721,164 A | * | 2/1998 | Wu ............................ 438/159 |
| 5,731,216 A | * | 3/1998 | Holmberg et al. ........... 438/30 |
| 5,808,336 A | * | 9/1998 | Miyawaki ................... 257/315 |
| 5,808,595 A | * | 9/1998 | Kubota et al. ............... 345/92 |
| 5,889,573 A | * | 3/1999 | Yamamoto et al. ........ 349/152 |
| 5,903,326 A | * | 5/1999 | Lee ............................ 349/42 |
| 5,982,004 A | * | 11/1999 | Sin et al. ................... 257/347 |
| 6,063,686 A | * | 5/2000 | Masuda et al. ............ 438/406 |
| 6,201,281 B1 | * | 3/2001 | Miyazaki et al. .......... 257/347 |
| 6,333,518 B1 | * | 12/2001 | Seo ........................... 257/72 |
| 2002/0048861 A1 | * | 4/2002 | Seo ........................... 438/149 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 9206497 | 4/1992 |
| EP | 0602315 | 7/1993 |
| EP | 0812012 | 12/1997 |
| GB | 2253742 | 9/1992 |
| GB | 2254187 | 9/1992 |
| GB | 2307597 | 5/1997 |
| JP | 4097531 | 3/1982 |
| JP | 1120068 | 5/1989 |
| JP | 1222448 | 9/1989 |
| JP | 3114028 | 5/1991 |
| JP | 5315615 | 11/1993 |
| JP | 5343683 | 12/1993 |
| JP | 637311 | 2/1994 |
| JP | 6104241 | 4/1994 |
| JP | 06281954 | 10/1994 |
| JP | 7077695 | 3/1995 |
| JP | 08095083 A | * | 4/1996 |
| JP | 8254680 | 10/1996 |
| KR | 954593 | 2/1995 |
| WO | 9206504 | 4/1992 |

### OTHER PUBLICATIONS

"Hillock-Free Al-Gate Materials Using Stress-Absorbing Buffer Layer for Large Area AMLCDs" Society for information Display 96 Digest, pp. 341-344, 1996.

"Wet Etchant for Molybdenum Having High Selectivity Against Aluminum", IBM Technical Disclosure Bulletin, vol. 35, No. 3, Aug. 1, 1992, pp. 205-206, XP 000326238.

AT Patent Abstracts of Japan, vol. 9, No. 315 [E-365] and Japan 60-149173 (Hitachi).

AU Patent Abstracts of Japan, vol. 5, No. 197 [E-86] and Japan 56-118370 (Cho Lsi Gijutsu).

"Pure Al and Al-Alloy Gate-Line Processes in TFT-LCDs", Samsung Electronics Co., Ltd., Kiheung, Korea, C.W. Kim et al., SID 96 Digest, pp. 337-340.

* cited by examiner

# FIG.1A



# FIG.1B



# FIG.1C



Case 1:08-cv-00355-JJF    Document 76-18    Filed 06/12/2008    Page 5 of 13

# FIG.1D



# FIG.1E



# FIG.1F





FIG.2

# FIG.3



## FIG.4A



## FIG.4B



## FIG.4C



# FIG.4D



# FIG.4E



# FIG.4F



US 7,176,489 B2

1

**THIN-FILM TRANSISTOR AND METHOD OF MAKING SAME**

This application is a divisional of application Ser. No. 10/377,732 filed on Mar. 4, 2003 now U.S. Pat. No. 6,815, 321, which is a divisional of application Ser. No. 10/154,955 filed on May 28, 2002 now U.S. Pat. No. 6,548,829, which is a continuation of abandoned application Ser. No. 09/940, 504, filed on Aug. 29, 2001, which is a divisional application under 37 C.F.R. § 1.53(b) of patented prior application Ser. No. 09/243,556 (U.S. Pat. No. 6,340,610 B1) filed on Feb. 2, 1999 (Issued on Jan. 22, 2002), which is a divisional application under 37 C.F.R. § 1.53(b) of patented prior application Ser. No. 08/918,119 (U.S. Pat. No. 5,905,274) filed on Aug. 27, 1997 (Issued on May 18, 1999), the entire contents of which are hereby incorporated by reference and for which priority is claimed under 35 U.S.C. § 120; and this application claims priority of Application No. 97-07010 filed in Korea on Mar. 4, 1997 under 35 U.S.C. § 119.

BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a thin-film transistor of a liquid crystal display and, more particularly, to a thin-film transistor having a gate including a double-layered metal structure and a method of making such a double-layered metal gate.

2. Discussion of Related Art

An LCD (Liquid Crystal Display) includes a switching device as a driving element, and a pixel-arranged matrix structure having transparent or light-reflecting pixel electrodes as its basic units. The switching device is a thin-film transistor having gate, source and drain regions.

The gate of the thin-film transistor is made of aluminum to reduce its wiring resistance, but an aluminum gate may cause defects such as hillock.

A double-layered metal gate, i.e., molybdenum-coated aluminum gate is considered as a substitute for the aluminum gate to overcome the problem of the hillock.

To fabricate a double-layered gate, metals such as aluminum and molybdenum are sequentially deposited, followed by a patterning process carried out via photolithography to form resulting metal films which have the same width. Although the double-layered gate is desirable to overcome the problem of hillock, the resulting deposited metal films forming the double-layered gate are so thick that a severe single step is created by a thickness difference between the metal films and a substrate, thereby causing a single step difference between the substrate and the double-layered gate which deteriorates the step coverage of a later formed gate oxide layer. The source and drain regions formed on the gate oxide layer may have disconnections between areas of the source and drain regions which are overlapped and non-overlapped with the gate, or electrically exhibit short circuits as a result of contact with the gate.

According to another method of forming the gate, each of the metal layers of Al and Mo form a double step difference with the substrate so as to improve the step coverage of the gate oxide layer.

FIGS. 1A through 1F are diagrams illustrating the process for fabricating a thin-film transistor of a method which is related to the invention described and claimed in the present application. The method shown in FIGS. 1A–1F is not believed to be published prior art but is merely a recently discovered method related to the invention described and claimed in the present application.

2

Referring to FIG. 1A, aluminum is deposited on a substrate 11 to form a first metal layer 13. A first photoresist 15 is deposited on the first metal layer 13. The first photoresist 15 is exposed and developed so as to have a certain width w1 extending along the first metal layer 13.

Referring to FIG. 1B, the first metal layer 13 is patterned via wet etching using the first photoresist 15 as a mask so that the first metal layer 13 has a certain width w1. After the first photoresist 15 is removed, a second metal layer 17 is formed by depositing Mo, Ta, or Co on the substrate 11 so as to cover the first metal layer 13. A second photoresist 19 is then deposited on the second metal layer 17. The second photoresist 19 is exposed and developed so as to have a certain width w2 extending along the second metal layer 17 and located above the first metal layer 13.

Referring to FIG. 1C, the second metal layer 17 is patterned via a wet etching process using the second photoresist 19 as a mask such that the second metal layer 17 has a certain width w2 which is narrower than the width w1 of the first metal layer 13. After formation of the gate 21, the second photoresist 19 is removed.

Thus, the patterned first and second metal layers 13 and 17 form a gate 21 having a double-layered metal structure that provides double step difference between the double-layered metal gate structure 21 and the substrate 11. The formation of the gate 21 as described above and shown in FIGS. 1A–1F requires the use of two photoresists 15, 19 and two photoresist steps.

In the gate 21, shown in FIG. 1C, the second metal layer 17 is preferably centrally located on the first metal layer 13. Although there is no specific information available regarding a relationship of w1 to w2 of this related art method, based on their understanding of this related method resulting in the structure shown in FIG. 1C, the inventors of the invention described and claimed in the present application assume that the width difference w1–w2 between the first and second metal layers 13 and 17 is larger than or equal to 4 μm, that is, w1–w2 $\geq$ 4 μm.

Referring to FIG. 1D, a first insulating layer 23 is formed by depositing silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ as a single-layered or double-layered structure on the gate 21 and substrate 11. Semiconductor and ohmic contact layers 25 and 27 are formed by sequentially depositing undoped polycrystalline silicon and heavily doped silicon on the first insulating layer 23. The semiconductor and ohmic contact layers 25 and 27 are patterned to expose the first insulating layer 23 by photolithography.

Referring to FIG. 1E, conductive metal such as aluminum is laminated on the insulating and ohmic contact layers 23 and 27. The conductive metal is patterned by photolithography so as to form source electrode 29 and a drain electrode 31. A portion of the ohmic contact layer 27 exposed between the source and drain electrodes 29 and 31 is etched by using the source and drain electrodes 29 and 31 as masks.

Referring to FIG. 1F, silicon oxide or silicon nitride is deposited on the entire surface of the structure to form a second insulating layer 33. The second insulating layer 33 is etched to expose a designated portion of the drain electrode 31, thus forming a contact hole 35. By depositing transparent and conductive material on the second insulating layer 33 and patterning it via photolithography, a pixel electrode 37 is formed so as to be electrically connected to the drain electrode 31 through the contact hole 35.

According to the method of fabricating a thin-film transistor as described above and shown in FIGS. 1A–1F, respective first and second metal layers are formed through photolithography using different masks so as to form the

US 7,176,489 B2

3

gate with a double-layered metal structure, resulting in double step differences between the gate and substrate.

As a result of the double step difference between the gate 21 and the substrate 11 shown in FIG. 1C, a hillock often occurs on both side portions of the first metal layer 13 which have no portion of the second metal layer 17 deposited thereon when the first metal layer 13 is wider than the second metal layer 17 as in FIG. 1C. Another problem with this related art method is that the process for forming a gate is complex and requires two photoresists 15, 19 and two steps of deposition and photolithography. As a result, the contact resistance between the first and second metal layers may be increased.

Another related art method of forming a double metal layer gate structure is described in "Low Cost, High Quality TFT-LCD Process", SOCIETY FOR INFORMATION DISPLAY EURO DISPLAY 96, Proceedings of the 16th International Display Research Conference, Birmingham, England, Oct. 1, 1996, pages 591–594. One page 592 of this publication, a method of forming a double metal gate structure includes the process of depositing two metal layers first and then patterning the two metal layer to thereby eliminate an additional photoresist step. However, with this method, process difficulties during the one step photoresist process for forming the double metal layer gate resulted in the top layer being wider than the bottom layer causing an overhang condition in which the top layer overhangs the bottom layer. This difficulty may result in poor step coverage and disconnection. This problem was solved by using a three-step etching process in which the photoresist had to be baked before each of the three etching steps to avoid lift-off or removal of the photoresist during etching. This three-step etching process and required baking of the photoresist significantly increases the complexity and steps of the gate forming method.

SUMMARY OF THE INVENTION

To overcome the problems discussed above, the preferred embodiments of the present invention provide a thin-film transistor which prevents a hillock and deterioration of step coverage of a later formed gate oxide layer on a double metal layer gate.

The preferred embodiments of the present invention also provide a method of fabricating a thin-film transistor that simplifies the process for forming a double metal layer gate.

The preferred embodiments of the present invention further provide a method of fabricating a thin-film transistor that reduces the contact resistance between the first and second metal layers constituting a gate.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention. The objectives and other advantages of the invention will be realized and attained by the structure particularly pointed out in the written description and claims hereof, as well as, the appended drawings.

To achieve these and other advantages and in accordance with the purpose of the preferred embodiments of the present invention, as embodied and broadly described, a thin-film transistor preferably comprises a substrate, and a gate including a double-layered structure of first and second metal layers disposed on the substrate, the first metal layer being wider than the second metal layer by about 1 to 4 μm, and a method of making such a thin-film transistor preferably comprises the steps of: depositing a first metal layer on a substrate, depositing a second metal layer directly on the

4

first metal layer; forming a photoresist having a desired width on the second metal layer; patterning the second metal layer via an isotropic etching using the photoresist as a mask; patterning the first metal layer via an anisotropic etching using the photoresist as a mask, the first metal layer being etched to have a desired width, thus forming a gate having a laminated structure of the first and second layers; and removing the photoresist.

These and other elements, features, and advantages of the preferred embodiments of the present invention will be apparent from the following detailed description of the preferred embodiments of the present invention, as illustrated in the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to provide a further understanding of the invention and are incorporated in and constitute a part of this specification, illustrate preferred embodiments of the invention and together with the description serve to explain the principles of the invention, in which:

FIGS. 1A through 1F are diagrams illustrating a process for fabricating a thin-film transistor according to a method of the related art;

FIG. 2 is a top view of a thin-film transistor according to a preferred embodiment of the present invention;

FIG. 3 is a cross-sectional view taken along line III—III of FIG. 2; and

FIGS. 4A through 4F are diagrams illustrating a process for fabricating a thin-film transistor of preferred embodiments of the present invention.

DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

Reference will now be made in detail to preferred embodiments of the present invention, examples of which are illustrated in the accompanying drawings.

FIG. 2 is a top view of a thin-film transistor according to a preferred embodiment of the present invention. FIG. 3 is a cross-sectional view taken along line III—III of FIG. 2.

The thin-film transistor comprises a gate 49 having a double-layered structure of a first metal layer 43, a second metal layer 45 disposed on a substrate 41, a first insulating layer 51, a second insulating layers 61, a semiconductor layer 53, an ohmic contact layer 55, a source electrode 57, a drain electrode 59, and a pixel electrode 65.

The gate 49 has a double-layered structure including the first and second metal layers 43 and 45 disposed on the substrate 41. The first metal layer 43 is preferably formed from a conductive metal such as Al, Cu, or Au deposited to have a certain width w1. The second metal layer 45 is preferably formed from a refractory metal such as Mo, Ta, or Co deposited to have a certain width w2.

The present inventors have discovered that a relationship between the width of the first metal layer and the width of the second metal layer of a double metal layer gate electrode is critical to preventing deterioration of step coverage of a later formed gate oxide layer in such a structure having a double step difference between the substrate and the gate. More specifically, the present inventors determined that a structure wherein the first metal layer 43 is wider than the second metal layer 45 by about 1 to 4 μm, for example, 1 μm<w1−w2<4 μm, provides maximum prevention of dete-

US 7,176,489 B2

5

rioration of step coverage of a later formed gate oxide layer in such a structure having a double step difference between the substrate and the gate.

To achieve the best results, the second metal layer 45 is preferably positioned substantially in the middle of the first metal layer 45, so that both side portions of the first metal layer 43 which have no portion of the second metal layer 45 disposed thereon have substantially the same width as each other. The width of each of the side portions is preferably larger than about 0.5 μm but less than about 2 μm.

The first insulating layer 51 is preferably formed by depositing single layer of silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ on the substrate including the gate 49.

The semiconductor and ohmic contact layers 53 and 55 are formed on the portion of the first insulating layer 51 corresponding to the gate 49 by sequentially depositing undoped amorphous silicon and heavily doped amorphous silicon and patterning the two silicon layers. The semiconductor layer 53 is used as the active region of an element, thus forming a channel by means of a voltage applied to the gate 49. The ohmic contact layer 55 provides an ohmic contact between the semiconductor layer 53 and the source and drain electrodes 57 and 59. The ohmic contact layer 55 is not formed in the portion that becomes the channel of the semiconductor layer 53.

The source and drain electrodes 57 and 59 are in contact with the ohmic contact layer 55, and each electrode 57, 59 extends to a designated portion on the first insulating layer 51.

The second insulating layer 61 is formed by depositing insulating material such as silicon oxide $SiO_2$ silicon nitride $Si_3N_4$ to cover the source and drain electrodes 57 and 59 and the first insulating layer 51. The second insulating layer 61 on the drain electrode 59 is removed to form a contact hole 63. The pixel electrode 65 is formed from transparent and conductive material such as ITO (Indium Tin Oxide) or Tin oxide $SnO_2$, so that it is connected to the drain electrode 59 through the contact hole 63.

In the first and second metal layers 43 and 45 constituting the gate 49, each side portion of the first metal layer 43 having no portion of the second metal layer 45 thereon has a width that is preferably larger than about 0.5 μm and less than about 2 μm. Because the first metal layer 43 is wider than the second metal layer 45 by about 1.0 μm to 4.0 μm, double step differences determined according to the relationship between the width of the first metal layer and the width of the second metal layer are formed between the gate 49 and substrate 41. The double step differences determined according to the novel features of the preferred embodiments of the present invention prevent deterioration of the coverage of the first insulating layer 51 which deterioration occurs in prior art devices. The hillock in the first metal layer 43 is also avoidable because the width difference between the first and second metal layers 43 and 45 is between about 1 μm to 4 μm.

FIGS. 4A through 4F are diagrams illustrating the process for fabricating the thin-film transistor of the preferred embodiments of the present invention.

Referring to FIG. 4A, metal such as Al, Cu, or Au is deposited on a substrate so as to form a first metal layer 43. A second metal layer 45 is formed from Mo, Ta, or Co and deposited on the first metal layer 43 without performing a masking step between the step of depositing the first metal layer and the step of depositing the second metal layer. The first and second metal layers 43 and 45 are sequentially deposited so as to preferably have a thickness as large as about 500–4000 Angstroms and 500–2000 Angstroms,

6

respectively, by means of sputtering or chemical vapor deposition (hereinafter, referred to as CVD) without breaking a vacuum state. As a result, the contact resistance between the first and second metal layers 43 and 45 is reduced.

According to the preferred embodiments of the present invention, a single photoresist step is used to pattern both the first metal layer 43 and the second metal layer 45 simultaneously. In the single photoresist step, a photoresist 47 is deposited on the second metal layer 45 and then the photoresist 47 is patterned through exposure and development to have the width w1 on a designated portion of the second metal layer 45.

Referring to FIG. 4B, the second metal layer 45 is patterned with an etching solution preferably prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$, by means of a wet etching using the photoresist 47 as a mask. Because the portion of the second metal layer 45 covered with the photoresist 47, as well as, exposed side portions of the second metal layer 45 are isotropically etched, the second metal layer 45 is preferably patterned to have the width w2 which is narrower than the width w1 of the photoresist 47 which is the same as the width w1 of the first metal layer 43, that is, about 1 μm<w1−w2<4 μm. Each side portion of the second metal layer 45 preferably has a width larger than about 0.5 μm and less than about 2 μm. That is, the two side portions of the second metal layer 45 covered with the photoresist 47 are preferably etched to have substantially the same width as each other. The lateral surfaces of the second metal layer 45 are preferably etched to have a substantially rectangular or inclined shape.

Referring to FIG. 4C, the first metal layer 43 is patterned via dry etching having anisotropic etching characteristic such as reactive ion etching (hereinafter, referred to as RIE) by using the photoresist 47 as a mask. When etching the first metal layer 43 other than the portion of the layer 43 covered with the photoresist 47, the first metal layer 43 preferably has the same width w1 of the photoresist 47. Thus, patterning of the first and second metal layers 43, 45, respectively, only requires two etching steps and does not require deposition of the photoresist before each step of etching. Also, the relation between the first and second metal layers 43 and 45 also may be represented by about 1 μm<w1−w2<4 μm.

The first and second metal layers 43 and 45 resulting form the single photoresist step process described above form a gate 49 having a double-layered metal structure. The gate 49 has the second metal layer 45 positioned substantially in the middle of the first metal layer 43 so that the each side portion of the first metal layer 43 having no second metal layer 45 thereon is wider than about 0.5 μm but narrower than about 2 μm. The photoresist 47 remaining on the second metal layer 45 is removed after the two etching steps are completed.

Referring to FIG. 4D, a first insulating layer 51 is formed by depositing a single layer or double layers of silicon oxide $SiO_2$ or silicon nitride $Si_3N_4$ on the gate 49 and substrate 41 by CVD. Because each side portion of the first metal layer 43 having no second metal layer 45 thereon is wider than 0.5 μm, double step differences formed between the substrate and gate can prevent the coverage of the first insulating layer 51 from being deteriorated as in prior art devices. The hillock in the first metal layer 43 is also avoidable because a width of a portion of the first metal layer 43 which is exposed is less than about 2 μm.

Amorphous silicon which is undoped and heavily doped amorphous silicon are sequentially deposited on the first

US 7,176,489 B2

7

8

insulating layer **41** by CVD, thus forming semiconductor and ohmic contact layers **53** and **55**. The ohmic contact and semiconductor layers **55** and **53** are patterned by means of photolithography to expose the first insulating layer **51**.

Referring to FIG. **4**E, conductive metal such as Al or Cr is laminated on the insulating and ohmic contact layers **51** and **55** and patterned by photolithography to form source and drain electrodes **57** and **59**. The ohmic contact layer **55** exposed between the source and drain electrodes **57** and **59** is etched by using the source drain electrodes **57** and **59** as masks.

Referring to FIG. **4**F, a second insulating layer **61** is formed by depositing insulating material such as silicon oxide or silicon nitride by CVD on the entire surface of the above structure. The second insulating layer is removed by photolithography to expose a designated portion of the drain electrode **59** and thus form a contact hole **63**. Once transparent and conductive material such as ITO (Indium Tin Oxide) or Tin oxide $SnO_2$ is deposited on the second insulating layer **61** via sputtering and patterned by photolithography, a pixel electrode **65** is formed so that it is electrically connected to the drain electrode **59** through the contact hole **63**.

In another preferred embodiment of the present invention, the first and second metal layers **43** and **45** are first etched by means of a dry etching having anisotropic etching characteristic such as RIE by using the photoresist **47** as a mask. The gate **49** is formed by etching the second metal layer **45** under the photoresist **47** with an etching solution prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$.

In still another preferred embodiment of the present invention, the gate **49** is formed through a single etching step process for etching the first and second metal layers **43** and **45** simultaneously and via a single etching step, where the second metal layer **45** is etched more quickly than the first metal layer **43** with an etching solution prepared with a mixture of phosphoric acid $H_3PO_4$, acetic acid $CH_3COOH$ and nitric acid $HNO_3$. Because of the etching material and metals used for the first and second metal layers of the gate, only a single etching step is required. Despite the fact that a single etching step is used, it is still possible to obtain the relationship between the widths w**1** and w**2** of the first and second metal layers described above. In this process, the first and second metal layers forming the gate **49** are formed and patterned with a single photo resist step as described above and a single etching step.

As described above, in the preferred embodiments of the present invention, the first and second metal layers are sequentially deposited on the substrate without performing a masking step between the step of depositing the first metal layer and the second metal layer, followed by forming a photoresist that covers a designated portion of the second metal layer. In one preferred embodiment, the second metal layer is wet etched by using the photoresist as a mask but the first metal layer is dry etched. As a result, the double-metal gate is formed. In another preferred embodiment, a single etching step is used to form the double-metal gate wherein both the first metal layer and the second metal layer are wet etched, but the difference in etching rates of the first and second metal layers produces different etching affects which result in the desired double-step structure.

While the invention has been particularly shown and described with reference to preferred embodiments thereof, it will be understood by those skilled in the art that the foregoing and other changes in form and details may be made therein without departing from the spirit and scope of the invention.

What is claimed is:

1. A thin film transistor comprising:

a substrate; and

a double-layered metal gate having a first metal layer and a second metal layer thereon, a total width of the first metal layer being greater than a total width of the second metal layer by about 1 to 4 μm.

2. The transistor of claim **1**, wherein the first metal layer has a first and second side portion being exposed from the second metal layer, each side portion being at least about 0.5 μm in width.

3. The transistor of claim **2**, wherein each side portion of the first metal layer is less than about 2 μm in width.

* * * * *

# EXHIBIT D



US006803984B2

(12) **United States Patent**   (10) **Patent No.:**     **US 6,803,984 B2**
Park et al.                          (45) **Date of Patent:**         **Oct. 12, 2004**

(54) **METHOD AND APPARATUS FOR MANUFACTURING LIQUID CRYSTAL DISPLAY DEVICE USING SERIAL PRODUCTION PROCESSES**

(75) Inventors: **Sang Ho Park**, Pusan-kwangyokshi (KR); **Sang Seok Lee**, Taegu-kwangyokshi (KR)

(73) Assignee: **LG.Philips LCD Co., Ltd.**, Seoul (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/128,452**

(22) Filed: **Apr. 24, 2002**

(65) **Prior Publication Data**

US 2003/0160934 A1 Aug. 28, 2003

(30) **Foreign Application Priority Data**

Feb. 25, 2002 (KR) ...................................... P 2002-9961

(51) **Int. Cl.**[7] ........................ G02F 1/13; G02F 1/1339; G02F 1/1341

(52) **U.S. Cl.** ...................... 349/187; 349/153; 349/189; 349/190

(58) **Field of Search** ................................. 349/153, 189, 349/190, 187

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,978,580 A | 9/1976 | Leupp et al. | .................. 29/886 |
| 4,094,058 A | 6/1978 | Yasutake et al. | .......... 29/592 R |
| 4,653,864 A | 3/1987 | Baron et al. | .................. 349/156 |
| 4,691,995 A | 9/1987 | Yamazaki et al. | ...... 350/331 R |
| 4,775,225 A | 10/1988 | Tsuboyama et al. | ........ 349/155 |
| 5,247,377 A | 9/1993 | Omeis et al. | .................. 359/76 |
| 5,263,888 A | 11/1993 | Ishihara et al. | ............... 445/25 |
| 5,379,139 A | 1/1995 | Sato et al. | ................. 349/155 |

| | | | |
|---|---|---|---|
| 5,406,989 A | 4/1995 | Abe | ................................. 141/7 |
| 5,499,128 A | 3/1996 | Hasegawa et al. | ........... 349/155 |
| 5,507,323 A | 4/1996 | Abe | ............................... 141/31 |
| 5,511,591 A | 4/1996 | Abe | ................................. 141/7 |
| 5,539,545 A | 7/1996 | Shimizu et al. | ................ 349/86 |
| 5,548,429 A | 8/1996 | Tsujita | ...................... 349/187 |
| 5,642,214 A | 6/1997 | Ishii et al. | ..................... 349/96 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1 003 066 A1 | 5/2000 |
| JP | 51-065656 | 6/1976 |
| JP | 57-38414 | 3/1982 |
| JP | 57-88428 | 6/1982 |
| JP | 58-27126 | 2/1983 |

(List continued on next page.)

*Primary Examiner*—Tarifur R. Chowdhury

(74) *Attorney, Agent, or Firm*—Morgan, Lewis & Bockius, LLP

(57)                **ABSTRACT**

A method and apparatus are provided for manufacturing a liquid crystal display device. The method includes the steps of providing at least a first substrate and a second substrate on a single production process line, passing the first and second substrates through a sealing material coating portion of the single production process line in serial order such that a sealing material is coated on the second substrate with the first substrate being passed through the sealing material coating portion without forming a sealing material thereon, passing the first and the second substrates through a liquid crystal dispensing portion of the single production process line in serial order such that liquid crystal is dispensed onto a pixel region of one of the first and second substrates with the other one of the first and second substrates being passed through the liquid crystal dispensing portion without dispensing liquid crystal thereon, and assembling the first substrate with the second substrate to form a liquid crystal panel of at least one liquid crystal display device.

**21 Claims, 4 Drawing Sheets**



## US 6,803,984 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,680,189 A | 10/1997 | Shimizu et al. | 349/123 |
| 5,742,370 A | 4/1998 | Kim et al. | 349/124 |
| 5,757,451 A | 5/1998 | Miyazaki et al. | 349/106 |
| 5,852,484 A | 12/1998 | Inoue et al. | 349/86 |
| 5,854,664 A | 12/1998 | Inoue et al. | 349/92 |
| 5,861,932 A | 1/1999 | Inata et al. | 349/156 |
| 5,875,922 A | 3/1999 | Chastine et al. | 222/1 |
| 5,943,113 A * | 8/1999 | Ichihashi | 349/187 |
| 5,952,676 A | 9/1999 | Sato et al. | 257/59 |
| 5,956,112 A | 9/1999 | Fujimori et al. | 346/156 |
| 6,001,203 A | 12/1999 | Yamada et al. | 156/106 |
| 6,011,609 A | 1/2000 | Kato et al. | 349/190 |
| 6,016,178 A | 1/2000 | Kataoka et al. | 349/117 |
| 6,016,181 A | 1/2000 | Shimada | 349/156 |
| 6,055,035 A | 4/2000 | Von Gutfeld et al. | 349/187 |
| 6,163,357 A | 12/2000 | Nakamura | 349/155 |
| 6,219,126 B1 | 4/2001 | Von Gutfeld | 349/153 |
| 6,226,067 B1 | 5/2001 | Nishiguchi et al. | 349/155 |
| 6,236,445 B1 | 5/2001 | Foschaar et al. | 349/156 |
| 6,304,306 B1 | 10/2001 | Shiomi et al. | 349/88 |
| 6,304,311 B1 | 10/2001 | Egami et al. | 349/189 |
| 6,337,730 B1 | 1/2002 | Ozaki et al. | 349/156 |
| 6,414,733 B1 | 7/2002 | Ishikawa et al. | 349/110 |
| 2001/0002858 A1 * | 6/2001 | Kageyama et al. | 349/158 |
| 2001/0021000 A1 | 9/2001 | Egami | 349/187 |
| 2002/0063845 A1 * | 5/2002 | Lim | 349/189 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 59-057221 | 4/1984 |
| JP | 59-195222 | 11/1984 |
| JP | 60-111221 | 6/1985 |
| JP | 60-164723 | 8/1985 |
| JP | 60-217343 | 10/1985 |
| JP | 61-7822 | 1/1986 |
| JP | 61-55625 | 3/1986 |
| JP | 62-89025 | 4/1987 |
| JP | 62-90622 | 4/1987 |
| JP | 62-205319 | 9/1987 |
| JP | 63-109413 | 5/1988 |
| JP | 63-110425 | 5/1988 |
| JP | 63-128315 | 5/1988 |
| JP | 63-311233 | 12/1988 |
| JP | 5-127179 | 5/1993 |
| JP | 5-154923 A | 6/1993 |
| JP | 5-265011 | 10/1993 |
| JP | 5-281557 | 10/1993 |
| JP | 5-281562 | 10/1993 |
| JP | 6-51256 | 2/1994 |
| JP | 6-148657 | 5/1994 |
| JP | 6-160871 | 6/1994 |
| JP | 6-235925 A | 8/1994 |
| JP | 6-265915 | 9/1994 |
| JP | 6-313870 A | 11/1994 |
| JP | 7-84268 A | 3/1995 |
| JP | 7-128674 | 5/1995 |
| JP | 7-181507 | 7/1995 |
| JP | 8-95066 | 4/1996 |
| JP | 8-101395 A | 4/1996 |
| JP | 8-406101 | 4/1996 |
| JP | 08-171076 A * | 7/1996 |
| JP | 8-171094 | 7/1996 |
| JP | 8-190099 | 7/1996 |
| JP | 8-240807 | 9/1996 |
| JP | 9-5762 | 1/1997 |
| JP | 9-26578 | 1/1997 |
| JP | 9-61829 A | 3/1997 |
| JP | 9-73096 | 3/1997 |
| JP | 9-127528 | 5/1997 |
| JP | 9-73075 | 8/1997 |

| | | |
|---|---|---|
| JP | 9-230357 | 9/1997 |
| JP | 9-281511 | 10/1997 |
| JP | 9-311340 | 12/1997 |
| JP | 10-123537 | 5/1998 |
| JP | 10-123538 | 5/1998 |
| JP | 10-142616 | 5/1998 |
| JP | 10-177178 A | 6/1998 |
| JP | 10-221700 | 8/1998 |
| JP | 10-282512 | 10/1998 |
| JP | 10-333157 A | 12/1998 |
| JP | 10-333159 A | 12/1998 |
| JP | 11-14953 | 1/1999 |
| JP | 11-38424 | 2/1999 |
| JP | 11-64811 | 3/1999 |
| JP | 11-109888 | 4/1999 |
| JP | 11-133438 A | 5/1999 |
| JP | 11-142864 A | 5/1999 |
| JP | 11-174477 | 7/1999 |
| JP | 11-212045 | 8/1999 |
| JP | 11-248930 A | 9/1999 |
| JP | 11-326922 A | 11/1999 |
| JP | 11-344714 | 12/1999 |
| JP | 2000-2879 A | 1/2000 |
| JP | 2000-29035 | 1/2000 |
| JP | 2000-56311 A | 2/2000 |
| JP | 2000-66165 A | 3/2000 |
| JP | 2000-137235 A | 5/2000 |
| JP | 2000-147528 A | 5/2000 |
| JP | 2000-193988 A | 7/2000 |
| JP | 2000-241824 A | 9/2000 |
| JP | 2000-284295 A | 10/2000 |
| JP | 2000-292799 A | 10/2000 |
| JP | 2000-310759 A | 11/2000 |
| JP | 2000-310784 A | 11/2000 |
| JP | 2000-338501 A | 12/2000 |
| JP | 2001-5401 A | 1/2001 |
| JP | 2001-5405 A | 1/2001 |
| JP | 2001-13506 A | 1/2001 |
| JP | 2001-33793 A | 2/2001 |
| JP | 2001-42341 A | 2/2001 |
| JP | 2001-51284 A | 2/2001 |
| JP | 2001-66615 A | 3/2001 |
| JP | 2001-91727 A | 4/2001 |
| JP | 2001-117105 | 4/2001 |
| JP | 2001-117109 A | 4/2001 |
| JP | 2001-133745 A | 5/2001 |
| JP | 2001-133794 | 5/2001 |
| JP | 2001-133799 A | 5/2001 |
| JP | 2001-142074 | 5/2001 |
| JP | 2001-147437 | 5/2001 |
| JP | 2001-154211 | 6/2001 |
| JP | 2001-166272 A | 6/2001 |
| JP | 2001-183683 A | 6/2001 |
| JP | 2001-166310 A | 7/2001 |
| JP | 2001-201750 A | 7/2001 |
| JP | 2001-209052 A | 8/2001 |
| JP | 2001-209060 A | 8/2001 |
| JP | 2001-215459 A | 8/2001 |
| JP | 2001-222017 A | 8/2001 |
| JP | 2001-235758 A | 8/2001 |
| JP | 2001-255542 | 9/2001 |
| JP | 2001-264782 | 9/2001 |
| JP | 2001-272640 A | 10/2001 |
| JP | 2001-281675 A | 10/2001 |
| JP | 2001-281678 A | 10/2001 |
| JP | 2001-282126 A | 10/2001 |
| JP | 2001-305563 A | 10/2001 |
| JP | 2001-330837 A | 11/2001 |
| JP | 2001-330840 | 11/2001 |
| JP | 2001-356353 A | 12/2001 |
| JP | 2001-356354 | 12/2001 |

**US 6,803,984 B2**

Page 3

| | | | | | | |
|----|-------------|--------|----|----------------|---|--------|
| JP | 2002-14360  | 1/2002 | JP | 2002-122873    |   | 4/2002 |
| JP | 2002-23176  | 1/2002 | JP | 2002-139734    |   | 5/2002 |
| JP | 2002-49045  | 2/2002 | JP | 2002-202512    |   | 7/2002 |
| JP | 2002-82340  | 3/2002 | JP | 2002-202514    |   | 7/2002 |
| JP | 2002-90759  | 3/2002 | JP | 2002-214626    |   | 7/2002 |
| JP | 2002-90760  | 3/2002 | KR | 2000-0035302   | A | 6/2000 |
| JP | 2002-107740 | 4/2002 |    |                |   |        |
| JP | 2002-122872 | 4/2002 |    | * cited by examiner | | |

FIG.1
Related Art



# FIG.2



second substrate
first substrate

| | |
|---|---|
| cleaning | 20S |
| printing an orientation film | 21S |
| baking | 22S |
| inspection | 23S |
| rubbing | 24S |
| cleaning | 25S |
| coating a sealing material | 26S |
| forming silver dots | 27S |
| dropping liquid crystal | 28S |
| assembling,curing | 29S |
| cutting | 30S |
| final inspection | 31S |

# FIG.3



second substrate
first substrate

| | |
|---|---|
| cleaning | 20S |
| printing an orientation film | 21S |
| baking | 22S |
| inspection | 23S |
| rubbing | 24S |
| cleaning | 25S |
| forming silver dots | 40S |
| coating a sealing material | 41S |
| dropping liquid crystal | 42S |
| assembling,curing | 29S |
| cutting | 30S |
| final inspection | 31S |

# FIG. 4



US 6,803,984 B2

1

## METHOD AND APPARATUS FOR MANUFACTURING LIQUID CRYSTAL DISPLAY DEVICE USING SERIAL PRODUCTION PROCESSES

This application claims the benefit of the Korean Application No. P2002-9961 filed in Korea on Feb. 25, 2002, which is hereby incorporated by reference.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to a method and apparatus for manufacturing a liquid crystal display device, and more particularly, to a method and apparatus for manufacturing a liquid crystal display device by using a liquid crystal dropping method.

### 2. Discussion of the Related Art

With rapid development of an information-oriented society, a need for an information display device having characteristics such as good image quality, light weight, small thickness, and low power consumption has correspondingly been increased. To meet this need, there has been much research directed toward various flat panel display device technologies, such as liquid crystal display device (LCD) technology, plasma display panel (PDP) technology, electro luminescent display (ELD) technology, vacuum fluorescent display (VFD) technology. Some of these display device technologies have already been applied in various applications as the information display device.

Of above various flat panel display devices, the LCD is currently the most widely used due to its ability to meet the above need. In fact, in portable devices such as notebook PC computers, LCD technology has replaced cathode ray tube (CRT) technology. Moreover, even in desktop type displays such as PC monitors and TV monitors, LCD technology has been developed and employed.

A liquid crystal cell includes two opposing substrates and a liquid crystal material filled between the substrates. Liquid crystal is a phase of material having intermediate properties between the liquid and the solid such as fluidity of liquids but long-range order of solids. The liquid crystal material, in an intermediate state between the liquid and the solid, has an optical anisotropy due to its long-range orientational order as well as mechanical fluidity. An LCD is manufactured through a number of processes such as an array process, a color filter process, a liquid crystal cell process, and a module process.

An array process is a process repeating a deposition, a photolithography, and an etching to form a thin film transistor (TFT) array on a first substrate (TFT substrate). A color filter process is a process for forming an ITO (Indium Tin Oxide) film for a common electrode, after red, green, and blue color filters (CF) of dyes or pigments are formed on a second substrate (CF substrate) having a black matrix formed thereon.

A liquid crystal cell process is a process of assembling the TFT substrate and the CF substrate prepared by the array process and the color filter process, respectively. Generally, an empty liquid crystal cell is formed with a fixed and thin gap between the first substrate and the second substrate. Then, the liquid crystal is filled through an opening around the gap to form a liquid crystal panel. A module process is a process for assembling a driving circuit part for processing input and output signals, connecting the liquid crystal panel to a signal processor, and assembling some frames, thereby completing the liquid crystal module.

2

The step of filling liquid crystal into the liquid crystal cell in the liquid crystal cell process step can be explained as follows.

In the liquid crystal filling step, a liquid crystal material is contained in a container disposed in a chamber. The chamber is maintained in a vacuum state for removing moisture and air dissolved in the liquid crystal material or contained inside the container. While maintaining the vacuum state of the chamber, a liquid crystal filling hole in the empty liquid crystal cell is dipped in the container, and brought into contact with the liquid crystal material. Then, the chamber is vented from a higher vacuum state to a lower vacuum state, and eventually to the atmospheric pressure state. Accordingly, the liquid crystal material is filled into the empty liquid crystal cell through the liquid crystal filling hole by a pressure difference between a pressure in the liquid crystal cell and a pressure in the chamber.

However, the above described liquid crystal filling method has poor productivity because the method needs long time for the liquid crystal filling. That is, before the liquid crystal material is filled into the liquid crystal cell, the large assembled panel must be cut into unit panels, a portion of the unit panel must be dipped into the container, and the liquid crystal filling hole must be brought into contact with the liquid crystal material while the chamber is kept at a vacuum state. Moreover, a large sized LCD is likely to have some defects coming from imperfect filling of the liquid crystal material into the cell.

With regard to this, a liquid crystal dropping method has been developed in which a fixed amount of the liquid crystal is dropped onto an inner surface of the TFT substrate in a corresponding area on the TFT substrate inside a main sealing area formed around the CF substrate (or, alternatively, TFT substrate). Then, the TFT substrate and the CF substrate are assembled into a large liquid crystal panel in a vacuum chamber. The liquid crystal cell process using the liquid crystal dropping method can be explained as follows.

Referring to FIG. 1, an orientation step (1S) in which an orientation material is coated on the TFT substrate and the CF substrate, and mechanical rubbing is carried out on the both substrates for having molecules of the liquid crystal material oriented, carried out. Then, the TFT substrate and the color filter substrate are cleaned (2S).

The TFT substrate includes a plurality of gate lines running in one direction at fixed intervals, and a plurality of data lines running in a direction perpendicular to the gate lines at fixed intervals. A plurality of thin film transistors and pixel electrodes are formed in a matrix pixel region defined by the gate lines and the data lines. The CF substrate includes a black matrix layer, a color filter, and a common electrode. Hence, the black matrix layer shields a light leakage of parts except the pixel region.

Then, the cleaned CF substrate is loaded onto a stage of a seal dispenser, and a sealing material is coated on a periphery of the panel (3S). The sealing material may be a photo-sensitive resin, or thermo-curing resin. Meanwhile, no filling hole or sealing structure for filling the cell with liquid crystal is required.

At the same time, the cleaned TFT substrate is loaded onto a stage of a silver (Ag) dispenser, and a silver paste material is dotted (i.e., dispensed) into a common voltage supply line of the TFT substrate (5S). Then, the TFT substrate is transferred to an LC dispenser, and liquid crystal material is dropped (i.e., dispensed) onto an active array region of each unit panel areas (6S). The liquid crystal dropping process is carried out as follows.

US 6,803,984 B2

3

After a liquid crystal material is filled into an LC syringe before the LC syringe is assembled and set in the production line, moisture and air dissolved in the liquid crystal material is removed under a vacuum state (7S). Then, the liquid crystal syringe is assembled and set (8S), and mounted on the liquid crystal dispenser (9S). When the TFT substrate is loaded onto a stage of the liquid crystal dispenser, the liquid crystal material is dropped therefrom using the liquid crystal syringe (6S) by dotting a fixed amount of the liquid crystal material onto the TFT substrate at a predetermined pitch inside a coating area of the sealing material (i.e., the pixel region).

After the TFT substrate and the CF substrate are loaded into a vacuum assembling chamber, the TFT substrate and the CF substrate are assembled such that the dropped liquid crystal is uniformly spread over unit panel areas (10S). Then, the sealing material is cured (10S). The assembled TFT substrate and color filter substrate, that is, a large panel, is cut into individual unit panels (11S). Each unit panel is ground and inspected (12S), thereby completing the LCD unit panel.

However, the above method for manufacturing a liquid crystal display having the liquid crystal dropping method applied thereto has the following problems. In the above the liquid crystal cell process, after the orientation steps and the cleaning step, the formation step of silver dots, and the dispensing step of the liquid crystal material on the TFT substrate process, and the sealing material coating step on the CF substrate are carried out using two separate and parallel production lines until the vacuum assembling and curing step (10S). That is, two production lines are used so that the TFT substrate and the CF substrate respectively pass through the orientation step (1S), the cleaning step (2S), the sealing material coating step (3S), the silver dotting step (5S), and the liquid crystal dropping step (6S) in parallel production lines. The use of two production lines results in poor spatial efficiency, higher costs caused by two sets of expensive equipment, and efficiency losses due to different processing times between the two production lines (i.e., line unbalance). Moreover, an inoperative state of one production line caused by failure of the other line reduces productivity substantially.

## SUMMARY OF THE INVENTION

Accordingly, the present invention is directed to a method and apparatus for manufacturing a liquid crystal display that substantially obviate one or more of the above problems due to limitations and disadvantages of the related art.

An object of the present invention is to provide a method and apparatus for manufacturing a liquid crystal display, which can maximize spatial efficiency, and improve productivity.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention. The objectives and other advantages of the invention will be realized and attained by the structure particularly pointed out in the written description and claims hereof as well as the appended drawings.

To achieve these and other advantages in accordance with the purpose of the present invention, as embodied and broadly described, a method for manufacturing a liquid crystal display device comprises the steps of providing at least a first substrate and a second substrate on a single production process line; passing the first and second substrates through a sealing material coating portion of the

4

single production process line in serial order, a sealing material being coated on the second substrate with the first substrate being passed through the sealing material coating portion without forming a sealing material thereon; passing the first and second substrates through a liquid crystal dispensing portion of the single production process line in serial order, liquid crystal being dispensed onto a pixel region of one of the first and second substrates with the other one of the first and second substrates being passed through the liquid crystal dispensing portion without dispensing liquid crystal thereon; and assembling the first substrate with the second substrate to form a liquid crystal panel of at least one liquid crystal display device.

In another aspect, an apparatus for manufacturing a liquid crystal display device having first and second substrates comprises a sealing coating portion disposed to receive the first and second substrates in serial order, the sealing coating portion forming a sealing material on the second substrate and passing the first substrate without forming a sealing material thereon; a liquid crystal dispensing portion in series with the sealing coating portion to receive the first and second substrates in serial order, the liquid crystal dispensing portion dispensing liquid crystal onto one of the first and second substrates and passing the other one of the first and second substrates without dispensing liquid crystal thereon; and an assembler operatively disposed after the sealing coating portion and the liquid crystal dispensing portion, the assembler receiving the first and second substrate and assembling the first substrate with the second substrate to form a liquid crystal panel of a liquid crystal display device.

In another aspect, an apparatus for manufacturing a liquid crystal display device comprises means for providing at least a first substrate and a second substrate on a single production process line; means for passing the first and second substrates through a sealing material coating portion of the single production process line in serial order, a sealing material being coated on the second substrate with the first substrate being passed through the sealing material coating portion without forming a sealing material thereon; means for passing the first and second substrates through a liquid crystal dispensing portion of the single production process line in serial order, liquid crystal being dispensed onto a pixel region of one of the first and second substrates with the other one of the first and second substrates being passed through the liquid crystal dispensing portion without dispensing liquid crystal thereon; and means for assembling the first substrate with the second substrate to form a liquid crystal panel of a liquid crystal display device.

It is to be understood that both the foregoing general description and the following detailed description are exemplary and explanatory and are intended to provide further explanation of the invention as claimed.

## BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to provide a further understanding of the invention and are incorporated in and constitute a part of this specification, illustrate embodiments of the invention and together with the description serve to explain the principles of the invention. In the drawings:

FIG. 1 is a flow chart illustrating the steps of a method for manufacturing a liquid crystal display device using a related art liquid crystal dropping method;

FIGS. 2–4 are flow charts each illustrating the steps of a method for manufacturing a liquid crystal display device in accordance with exemplary embodiments of the present invention.

US 6,803,984 B2

5

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Reference will now be made in detail to the preferred embodiments of the present invention, examples of which are illustrated in the accompanying drawings.

FIGS. 2–4 illustrate flow charts each showing the steps of a method for manufacturing a liquid crystal display in accordance with first, second, and third embodiments of the present invention.

Referring to FIG. 2, a first substrate and a second substrate are provided. The first substrate (hereafter referred to as a "TFT substrate") includes a plurality of gate lines running in one direction at fixed intervals, a plurality of data lines running in a direction perpendicular to the gate lines at fixed intervals, a plurality of thin film transistors, and pixel electrodes in a matrix pixel region defined by the gate lines and the data lines, formed thereon. The second substrate (hereafter referred to as a "color filter substrate") includes a black matrix layer for shielding a light incident to parts except the pixel region, a color filter layer, and a common electrode.

The TFT substrate and the color filter substrate are alternately provided into a production line having a single line structure for progressing the liquid crystal cell process. Processing equipment can be considered as equipment for the TFT substrate, equipment for the color filter substrate or both. The respective substrates are preferably provided to and processed by the corresponding equipment automatically in accordance with information on the substrates.

The liquid crystal cell process will now be explained in detail as follows.

An orientation step is carried out for both of the TFT substrate and the color filter substrate. The orientation step is progressed in an order of cleaning (20S) before coating the orientation film, printing of the orientation film (21S), baking of the orientation film (22S), inspecting of the orientation film (23S), and rubbing (24S).

After the TFT substrate and the color filter substrate that have passed through the orientation step are cleaned (25S), a sealing material is coated onto the color filter substrate, without providing an hole structure for liquid crystal injection so that the color filter substrate can later be assembled with the TFT substrate on a periphery of a pixel region with a fixed gap between the TFT substrate and the color filter substrate (26S). In contrast, the TFT substrate passes through the sealing material coating step (26S) without coating the sealing material and is provided into the next step.

Silver is coated on the TFT substrate in forms of dots for electrical connection with a common electrode on the color filter substrate (27S). However, the color filter substrate passes through the silver coating step (27S) without the silver coating and is provided into the next step.

Next, a step for dropping the liquid crystal onto the TFT substrate in a region corresponding to an area inside the sealing material coated on the color filter substrate is carried out (28S). Here, the color filter substrate passes through the liquid crystal dropping step (28S) without having the liquid crystal dropped thereon, and is provided into the next step.

Of course, it should be recognized that the present invention is not limited to this arrangement. For example, the coating of the sealing material, and the dropping of the liquid crystal material may carried out on either of the TFT substrate or the color filter substrate. The silver dot coating step may be omitted for the production of an IPS (In-Plane

6

Switching) mode LCD in which both the pixel electrode and the common electrode are formed on a single TFT substrate.

Then, the TFT substrate and the color filter substrate are loaded into a vacuum chamber and assembled into a large panel (i.e., a panel having a plurality of LCD unit panels) such that the dropped liquid crystal is spread over the panels uniformly and the sealing material is cured (29S).

The large panel, having a TFT substrate and a color filter substrate with liquid crystal therebetween, is cut into individual unit panels (30S). Each individual unit panel is ground, and finally inspected (31S), thereby completing the manufacturing of an LCD device.

FIGS. 3 and 4 illustrate flow charts showing the steps of a method for manufacturing of a liquid crystal display in accordance with a second and third embodiments of the present invention, respectively, where the order of steps from the sealing material coating step (26S) to the liquid crystal dropping step (28S) in FIG. 2 are varied.

That is, referring to FIG. 3, after both the TFT substrate and the color filter substrate passed through the cleaning step (25S) of the orientation process, silver is coated on the TFT substrate in form of dots for electrical connection with a common electrode on the color filter substrate (40S). However, the color filter substrate passes through the silver coating step (40S) without the silver coating and is provided into the next step.

Next, a sealing material is coated on the color filter substrate without providing the liquid crystal filling hole so that the color filter substrate may later be assembled with the TFT substrate on a periphery of a pixel region with a fixed gap between the TFT substrate and the color filter substrate (41S). Here, the TFT substrate passes through the sealing material coating step (41S) without coating the sealing material thereon and is provided into the next step.

Next, a step for dropping the liquid crystal onto the TFT substrate in a region corresponding to an area inside the sealing material coated on the color filter substrate is carried out (42S). However, the color filter substrate passes through the dropping step without having the liquid crystal dropped thereon, and is provided into the next step.

Again, it should be recognized that the present invention is not limited to this arrangement. For example, the coating of the sealing material and the dropping of the liquid crystal may be carried out on either of the TFT substrate or the color filter substrate. The silver dot coating step may be omitted for the production of an IPS mode LCD in which the pixel electrode and the common electrode are formed on a single TFT substrate.

The remaining liquid crystal cell process is finished through the vacuum assembling step of the TFT substrate with the color filter substrate, the curing step of the sealing material (29S), cutting (30S), and final inspection (31S).

Referring to FIG. 4, after both the TFT substrate and the color filter substrate passed through the cleaning step (25S) of the orientation process, silver is coated on the TFT substrate in form of dots for electrical connection with a common electrode on the color filter substrate (50S). Here, the color filter substrate passes through the silver coating step without the silver coating and is provided into the next step.

Next, a step for dropping the liquid crystal onto the TFT substrate in a region corresponding to an area inside the sealing material coated on the color filter substrate is carried out (51S). Here, the color filter substrate passes through the liquid crystal dropping step without having the liquid crystal dropped thereon, and is provided into the next step.

US 6,803,984 B2

7

Next, a sealing material is coated on the color filter substrate without providing a liquid crystal filling hole so that the color filter substrate may later be assembled with the TFT substrate on a periphery of a pixel region with a fixed gap between the TFT substrate and the color filter substrate (52S). However, the TFT substrate passes through the sealing material coating step (52S) without coating the sealing material thereon and is provided into the next step.

Again, it should be recognized that the present invention is not limited to the above arrangement. For example, the coating of the sealing material and the dropping of the liquid crystal may be carried out on either of the TFT substrate or the color filter substrate. The silver dot coating step may be omitted for the production of an IPS mode LCD in which the pixel electrode and the common electrode are formed on a single TFT substrate.

The remaining liquid crystal cell process is finished through the vacuum assembling step of the TFT substrate with the color filter substrate, the curing step of the sealing material (29S), cutting (30S), and final inspection (31S).

Also, it should be recognized that a particular step may be performed on one substrate at the same time that a different step is performed on the other substrate. That is, the production process line receives many thin film transistor substrates and color filter substrates in serial order. Each pair of substrates will pass through each component of the production process line. However, both substrates of each pair need not be disposed in the same component of the production process line at the same time. Thus, one substrate of the pair may be operated on by one component of the production process line at the same time that the other substrate of the pair is being operated on by another component.

As has been explained, the method for manufacturing a liquid crystal display in accordance with the present invention can improve spatial efficiency by adopting a single production line for the liquid crystal cell process, increase the productivity by providing an effective and simple liquid crystal cell process, and can overcome problems caused by a process time difference between the TFT substrate process line and the color filter substrate line. Here, management of respectively providing the TFT substrate and the color filter is simple. Meanwhile, though not shown, the silver dot forming (50S) in the third embodiment may be carried out at a step between the liquid crystal dropping (51S) and the sealing material coating (52S), or after the liquid crystal dropping (51S) and the sealing material coating (52S).

It will be apparent to those skilled in the art that various modifications and variations can be made in the method and apparatus for manufacturing a liquid crystal display of the present invention without departing from the spirit or scope of the invention. Thus, it is intended that the present invention cover the modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

1. A method for manufacturing a liquid crystal display device, comprising the steps of:

providing at least a first substrate and a second substrate on a single production process line;

passing the first and second substrates through a sealing material coating portion of the single production process line in serial order, a sealing material being coated on the second substrate with the first substrate being passed through the sealing material coating portion without forming a sealing material thereon;

8

passing the first and the second substrates through a liquid crystal dispensing portion of the single production process line in serial order, liquid crystal being dispensed onto a pixel region of one of the first and second substrates with the other one of the first and second substrates being passed through the liquid crystal dispensing portion without dispensing liquid crystal thereon; and

assembling the first substrate with the second substrate to form a liquid crystal panel of at least one liquid crystal display device.

2. The method according to claim 1, wherein the sealing material coating portion is provided before the liquid crystal dispensing portion in the single production process line.

3. The method according to claim 1, wherein the liquid crystal dispensing portion is provided before the sealing material coating portion in the single production process line.

4. The method according to claim 1, wherein the liquid crystal is dispensed onto the first substrate.

5. The method according to claim 4, wherein the first substrate is disposed in the liquid crystal dispensing portion and the liquid crystal is dispensed onto the first substrate at the same time that the second substrate is disposed in the sealing material coating portion.

6. The method according to claim 5, wherein the first substrate is a thin film transistor substrate and the second substrate is a color filter substrate.

7. The method according to claim 6, wherein the thin film transistor substrate includes:

a plurality of gate lines running in a first direction at substantially fixed intervals,

a plurality of data lines running in a second direction substantially perpendicular to the gate lines at substantially fixed intervals,

a plurality of thin film transistors and pixel electrodes in a matrix pixel region defined by the gate lines and the data lines, and

an orientation film on the thin film transistors and the pixel electrodes.

8. The method according to claim 6, wherein the color filter substrate includes:

a black matrix layer,

a color filter layer between the black matrix layer for displaying three colors of red, green, and blue,

a common electrode to apply an electric field to the liquid crystal together with the pixel electrodes, and

an orientation film on the common electrode.

9. The method according to claim 1, wherein the liquid crystal is dispensed onto the first substrate, and wherein first substrate is a color filter substrate and the second substrate is a thin film transistor substrate.

10. The method according to claim 1, further comprising the step of cleaning the first substrate and the second substrate in serial order in a same cleaning unit.

11. The method according to claim 1, further comprising the step of cutting the liquid crystal panel into a plurality of unit liquid crystal panels to form a plurality of liquid crystal display devices.

12. The method according to claim 11, further comprising the step of inspecting defects of the unit liquid crystal panels.

13. The method according to claim 1, further comprising a step of passing the first and second substrates through a silver dot forming portion of the single production process line in serial order, silver dots being formed on the first

US 6,803,984 B2

9

substrate with the second substrate being passed without forming silver dots thereon.

**14.** An apparatus for manufacturing a liquid crystal display device having first and second substrates, comprising:

a sealing coating portion disposed to receive the first and second substrates in serial order, the sealing coating portion forming a sealing material on the second substrate and passing the first substrate without forming a sealing material thereon;

a liquid crystal dispensing portion in series with the sealing coating portion to receive the first and second substrates in serial order, the liquid crystal dispensing portion dispensing liquid crystal onto one of the first and second substrates and passing the other one of the first and second substrates without dispensing liquid crystal thereon; and

an assembler operatively disposed after the sealing coating portion and the liquid crystal dispensing portion, the assembler receiving the first and second substrate and assembling the first substrate with the second substrate to form a liquid crystal panel of a liquid crystal display device.

**15.** The apparatus according to claim **14**, wherein the sealing coating portion is operatively disposed before the liquid crystal dispensing portion.

**16.** The apparatus according to claim **14**, wherein the liquid crystal dispensing portion is operatively disposed before the sealing coating portion.

**17.** The apparatus according to claim **14**, wherein the liquid crystal dispensing portion dispenses liquid crystal onto the first substrate, and wherein the first substrate is a thin film transistor substrate and the second substrate is a color filter substrate.

**18.** The apparatus according to claim **17**, wherein the first substrate is disposed in the liquid crystal dispensing portion

10

at the same time that the second substrate is disposed in the sealing coating portion.

**19.** The apparatus according to claim **14**, further comprising:

a rubbing unit to mechanically rub, in serial order, the first and second substrates to provide an orientation layer; and

a cleaning unit to clean, in serial order, both the first and second substrates.

**20.** The apparatus according to claim **14**, further comprising a cutting unit to cut the assembled first and second substrates into a plurality of unit liquid crystal panels.

**21.** An apparatus for manufacturing a liquid crystal display device, comprising:

means for providing at least a first substrate and a second substrate on a single production process line;

means for passing the first and second substrates through a sealing material coating portion of the single production process line in serial order, a sealing material being coated on the second substrate with the first substrate being passed through the sealing material coating portion without forming a sealing material thereon;

means for passing the first and the second substrates through a liquid crystal dispensing portion of the single production process line in serial order, liquid crystal being dispensed onto a pixel region of one of the first and second substrates with the other one of the first and second substrates being passed through the liquid crystal dispensing portion without dispensing liquid crystal thereon; and

means for assembling the first substrate with the second substrate to form a liquid crystal panel of a liquid crystal display device.

*    *    *    *    *

# EXHIBIT E

US007218374B2

## (12) United States Patent
### Park et al.

(10) Patent No.: **US 7,218,374 B2**
(45) Date of Patent: **May 15, 2007**

---

(54) **LIQUID CRYSTAL DISPLAY DEVICE AND METHOD OF MANUFACTURING THE SAME**

(75) Inventors: **Moo Yeol Park**, Taegu-Kwangyokshi (KR); **Sung Su Jung**, Taegu-Kwangyokshi (KR); **Young Sang Byun**, Kumi-shi (KR)

(73) Assignee: **LG.Philips LCD Co., Ltd.**, Seoul (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 9 days.

(21) Appl. No.: **10/184,118**

(22) Filed: **Jun. 28, 2002**

(65) **Prior Publication Data**
US 2003/0156246 A1    Aug. 21, 2003

(30) **Foreign Application Priority Data**
Feb. 20, 2002    (KR) ................................. 2002-8900

(51) **Int. Cl.**
*G02F 1/1339*    (2006.01)
(52) **U.S. Cl.** ...................... 349/190; 349/187; 349/189
(58) **Field of Classification Search** ................ 349/187, 349/189, 190, 191, 153, 154, 155, 156
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,978,580 A | 9/1976 | Leupp et al. | |
| 4,094,058 A | 6/1978 | Yasutake et al. | |
| 4,653,864 A | 3/1987 | Baron et al. | |
| 4,691,995 A | 9/1987 | Yamazaki et al. | |
| 4,775,225 A | 10/1988 | Tsuboyama et al. | |
| 5,089,358 A * | 2/1992 | Taki et al. .......... | 428/694 DE |
| 5,247,377 A | 9/1993 | Omeis et al. | |
| 5,263,888 A | 11/1993 | Ishihara et al. | |
| 5,307,190 A * | 4/1994 | Wakita et al. .............. | 349/158 |
| 5,379,139 A | 1/1995 | Sato et al. | |
| 5,406,989 A | 4/1995 | Abe | |
| 5,410,423 A * | 4/1995 | Furushima et al. ......... | 349/190 |
| 5,499,128 A | 3/1996 | Hasegawa et al. | |
| 5,507,323 A | 4/1996 | Abe | |
| 5,511,591 A | 4/1996 | Abe | |
| 5,517,344 A * | 5/1996 | Hu et al. .................... | 349/153 |
| 5,539,545 A | 7/1996 | Shimizu et al. | |
| 5,548,429 A | 8/1996 | Tsujita | |

(Continued)

FOREIGN PATENT DOCUMENTS

EP    1 003 066 A1    5/2000

(Continued)

*Primary Examiner*—Steven S Paik
(74) *Attorney, Agent, or Firm*—McKenna Long & Aldridge LLP

(57) **ABSTRACT**

An LCD device and a method of manufacturing the same are disclosed, in which a sealant concentrated upon the end of a dispensing device is formed in a dummy region on a substrate, so that a liquid crystal layer is not contaminated when both substrates are attached to each other and a cell cutting process can easily be performed. The method of manufacturing an LCD device includes preparing a lower substrate and an upper substrate, forming an auxiliary UV sealant in a dummy region on one of the lower and upper substrate and forming a main UV sealant, applying a liquid crystal on one of the lower and upper substrates, attaching the lower and upper substrates, and irradiating UV light onto the attached substrates.

**22 Claims, 9 Drawing Sheets**



## US 7,218,374 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,642,214 | A | 6/1997 | Ishii et al. | |
| 5,677,749 | A * | 10/1997 | Tsubota et al. | 349/160 |
| 5,680,189 | A | 10/1997 | Shimizu et al. | |
| 5,724,110 | A * | 3/1998 | Majima | 349/86 |
| 5,742,370 | A | 4/1998 | Kim et al. | |
| 5,757,451 | A | 5/1998 | Miyazaki et al. | |
| 5,852,484 | A | 12/1998 | Inoue et al. | |
| 5,854,664 | A | 12/1998 | Inoue et al. | |
| 5,861,932 | A | 1/1999 | Inata et al. | |
| 5,875,922 | A | 3/1999 | Chastine et al. | |
| 5,898,041 | A | 4/1999 | Yamada et al. | |
| 5,946,070 | A * | 8/1999 | Kohama et al. | 349/156 |
| 5,952,676 | A | 9/1999 | Sato | |
| 5,952,678 | A | 9/1999 | Ashida | |
| 5,956,112 | A | 9/1999 | Fujimori et al. | |
| 6,001,203 | A | 12/1999 | Yamada et al. | |
| 6,011,609 | A | 1/2000 | Kato et al. | |
| 6,016,178 | A | 1/2000 | Kataoka et al. | |
| 6,016,181 | A | 1/2000 | Shimada | |
| 6,055,035 | A | 4/2000 | von Gutfeld et al. | |
| 6,163,357 | A | 12/2000 | Nakamura | |
| 6,177,976 | B1 * | 1/2001 | Murai et al. | 349/191 |
| 6,219,126 | B1 * | 4/2001 | Von Gutfeld | 349/153 |
| 6,226,067 | B1 | 5/2001 | Nishiguchi et al. | |
| 6,236,445 | B1 | 5/2001 | Foschaar et al. | |
| 6,239,855 | B1 * | 5/2001 | Nakahara et al. | 349/153 |
| 6,304,306 | B1 | 10/2001 | Shiomi et al. | |
| 6,304,311 | B1 * | 10/2001 | Egami et al. | 349/189 |
| 6,337,730 | B1 | 1/2002 | Ozaki et al. | |
| 6,373,544 | B1 * | 4/2002 | Hirabayashi et al. | 349/149 |
| 6,414,733 | B1 | 7/2002 | Ishikawa et al. | |
| 6,573,968 | B2 * | 6/2003 | Jeong | 349/153 |
| 6,628,365 | B1 * | 9/2003 | Park et al. | 349/153 |
| 2001/0021000 | A1 | 9/2001 | Egami | |
| 2001/0026348 | A1 | 10/2001 | Murata et al. | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1003066 A1 | 5/2000 |
| JP | 51-65656 | 6/1976 |
| JP | 51-065656- | 6/1976 |
| JP | 57-038414 | 3/1982 |
| JP | 57038414- | 3/1982 |
| JP | 57-088428 | 6/1982 |
| JP | 57088428- | 6/1982 |
| JP | 58-027126 | 2/1983 |
| JP | 58027126- | 2/1983 |
| JP | 59-057221 | 4/1984 |
| JP | 59-057221- | 4/1984 |
| JP | 59-195222 | 11/1984 |
| JP | 59-195222- | 11/1984 |
| JP | 60-111221 | 6/1985 |
| JP | 60-111221- | 6/1985 |
| JP | 60-164723 | 8/1985 |
| JP | 60164723- | 8/1985 |
| JP | 60-217343 | 10/1985 |
| JP | 60217343- | 10/1985 |
| JP | 61-007822 | 1/1986 |
| JP | 61007822- | 1/1986 |
| JP | 61-055625 | 3/1986 |
| JP | 61055625- | 3/1986 |
| JP | S62-054225 | 3/1987 |
| JP | S62-054228 | 3/1987 |
| JP | 62-089025 | 4/1987 |
| JP | 62-090622 | 4/1987 |
| JP | 62089025- | 4/1987 |
| JP | 62090622- | 4/1987 |
| JP | 62-205319 | 9/1987 |
| JP | 62205319- | 9/1987 |
| JP | 63-109413 | 5/1988 |
| JP | 63-110425 | 5/1988 |
| JP | 63-128315 | 5/1988 |
| JP | 63109413- | 5/1988 |
| JP | 63110425- | 5/1988 |
| JP | 63128315- | 5/1988 |
| JP | 63-311233 | 12/1988 |
| JP | 63311233- | 12/1988 |
| JP | H03-009549 | 1/1991 |
| JP | H05-036425 | 2/1993 |
| JP | H05-036426 | 2/1993 |
| JP | H05-107533 | 4/1993 |
| JP | 05-127179 | 5/1993 |
| JP | 05127179- | 5/1993 |
| JP | 05-154923 | 6/1993 |
| JP | 05-154923- | 6/1993 |
| JP | 05-265011 | 10/1993 |
| JP | 05-281557 | 10/1993 |
| JP | 05-281562 | 10/1993 |
| JP | 05265011- | 10/1993 |
| JP | 05281557- | 10/1993 |
| JP | 05281562- | 10/1993 |
| JP | H06-018829 | 1/1994 |
| JP | 06-051256 | 2/1994 |
| JP | 06051256- | 2/1994 |
| JP | H06-064229 | 3/1994 |
| JP | 06-148657 | 5/1994 |
| JP | 06148657- | 5/1994 |
| JP | 06-160871 | 6/1994 |
| JP | 6160871- | 6/1994 |
| JP | H06-194637 | 7/1994 |
| JP | 06-235925 | 8/1994 |
| JP | 06-235925- | 8/1994 |
| JP | 06-265915 | 9/1994 |
| JP | 06265915- | 9/1994 |
| JP | 06-313870 | 11/1994 |
| JP | 06-313870- | 11/1994 |
| JP | 07-084268 | 3/1995 |
| JP | 07-084268- | 3/1995 |
| JP | 07-128674 | 5/1995 |
| JP | 07128674- | 5/1995 |
| JP | 07-181507 | 7/1995 |
| JP | 07181507- | 7/1995 |
| JP | H07-275770 | 10/1995 |
| JP | H07-275771 | 10/1995 |
| JP | H08-076133 | 3/1996 |
| JP | 08-095066 | 4/1996 |
| JP | 08-101395 | 4/1996 |
| JP | 08-101395- | 4/1996 |
| JP | 08-106101 | 4/1996 |
| JP | 08095066- | 4/1996 |
| JP | 08106101- | 4/1996 |
| JP | H08-110504 | 4/1996 |
| JP | H08-136937 | 5/1996 |
| JP | 08-171094 | 7/1996 |
| JP | 08-190099 | 7/1996 |
| JP | 08171094- | 7/1996 |
| JP | 08190099- | 7/1996 |
| JP | H08-173874 | 7/1996 |
| JP | 08-240807 | 9/1996 |
| JP | 08240807- | 9/1996 |
| JP | 09-005762 | 1/1997 |
| JP | 9-15614 | 1/1997 |
| JP | 09-026578 | 1/1997 |
| JP | 09005762- | 1/1997 |
| JP | 09026578- | 1/1997 |
| JP | H09-001026 | 1/1997 |
| JP | 09-311340 | 2/1997 |
| JP | 09-61829 | 3/1997 |
| JP | 09-061829- | 3/1997 |
| JP | 09-073075 | 3/1997 |
| JP | 09-073096 | 3/1997 |
| JP | 09073075- | 3/1997 |
| JP | 09073096- | 3/1997 |
| JP | H09-094500 | 4/1997 |

**US 7,218,374 B2**

Page 3

| | | | | | | |
|---|---|---|---|---|---|---|
| JP | 09-127528 | 5/1997 | JP | 2000-310759- | 11/2000 |
| JP | 09127528- | 5/1997 | JP | 2000-310784 | 11/2000 |
| JP | 9197416 | 7/1997 | JP | 2000-310784- | 11/2000 |
| JP | 09-230357 | 9/1997 | JP | 2000-338501 | 12/2000 |
| JP | 09230357- | 9/1997 | JP | 2000-338501- | 12/2000 |
| JP | 09-281511 | 10/1997 | JP | 2001-005401 | 1/2001 |
| JP | 09281511- | 10/1997 | JP | 2001-005401- | 1/2001 |
| JP | 09311340- | 12/1997 | JP | 2001-005405 | 1/2001 |
| JP | 10-123537 | 5/1998 | JP | 2001-005405- | 1/2001 |
| JP | 10-123538 | 5/1998 | JP | 2001-013506 | 1/2001 |
| JP | 10-142616 | 5/1998 | JP | 2001-013506- | 1/2001 |
| JP | 10123537- | 5/1998 | JP | 2001-033793 | 2/2001 |
| JP | 10123538 | 5/1998 | JP | 2001-033793- | 2/2001 |
| JP | 10123538- | 5/1998 | JP | 2001-042341 | 2/2001 |
| JP | 10142616- | 5/1998 | JP | 2001-042341- | 2/2001 |
| JP | 10-177178 | 6/1998 | JP | 2001-051284 | 2/2001 |
| JP | 10-177178- | 6/1998 | JP | 2001-051284- | 2/2001 |
| JP | H10-174924 | 6/1998 | JP | 2001-066615 | 3/2001 |
| JP | 10-221700 | 8/1998 | JP | 2001-066615- | 3/2001 |
| JP | 10221700- | 8/1998 | JP | 2001-091727 | 4/2001 |
| JP | 10-282512 | 10/1998 | JP | 2001-091727- | 4/2001 |
| JP | 10282512- | 10/1998 | JP | 2001-117105 | 4/2001 |
| JP | 10-333157 | 12/1998 | JP | 2001-117109 | 4/2001 |
| JP | 10-333157- | 12/1998 | JP | 2001-117109- | 4/2001 |
| JP | 10-333159 | 12/1998 | JP | 2001117105- | 4/2001 |
| JP | 10-333159- | 12/1998 | JP | 2001-133745 | 5/2001 |
| JP | 11-014953 | 1/1999 | JP | 2001-133745- | 5/2001 |
| JP | 11014953- | 1/1999 | JP | 2001-133794 | 5/2001 |
| JP | 11-038424 | 2/1999 | JP | 2001-133799 | 5/2001 |
| JP | 11038424- | 2/1999 | JP | 2001-133799- | 5/2001 |
| JP | 11-064811 | 3/1999 | JP | 2001-142074 | 5/2001 |
| JP | 11064811- | 3/1999 | JP | 2001-147437 | 5/2001 |
| JP | 11-109388 | 4/1999 | JP | 2001133794 | 5/2001 |
| JP | 11109388- | 4/1999 | JP | 2001142074 | 5/2001 |
| JP | 11-133438 | 5/1999 | JP | 2001147437- | 5/2001 |
| JP | 11-133438- | 5/1999 | JP | 2001-154211 | 6/2001 |
| JP | 11-142864 | 5/1999 | JP | 2001-166272 | 6/2001 |
| JP | 11-142864- | 5/1999 | JP | 2001-166272- | 6/2001 |
| JP | 11142864 | 5/1999 | JP | 2001-166310 | 6/2001 |
| JP | 11-174477 | 7/1999 | JP | 2001-166310- | 6/2001 |
| JP | 11174477- | 7/1999 | JP | 2001154211- | 6/2001 |
| JP | 11-212045 | 8/1999 | JP | 2001-183683 | 7/2001 |
| JP | 11212045- | 8/1999 | JP | 2001-183683- | 7/2001 |
| JP | 11-248930 | 9/1999 | JP | 2001-201750 | 7/2001 |
| JP | H11-262712 | 9/1999 | JP | 201183675 | 7/2001 |
| JP | H11-264991 | 9/1999 | JP | 2001-209052 | 8/2001 |
| JP | 11-326922 | 11/1999 | JP | 2001-209052- | 8/2001 |
| JP | 11-326922- | 11/1999 | JP | 2001-209056 | 8/2001 |
| JP | 11-344714 | 12/1999 | JP | 2001-209057 | 8/2001 |
| JP | 11344714- | 12/1999 | JP | 2001-209058 | 8/2001 |
| JP | 2000-002879 | 1/2000 | JP | 2001-209060 | 8/2001 |
| JP | 2000-002879- | 1/2000 | JP | 2001-209060- | 8/2001 |
| JP | 2000-029035 | 1/2000 | JP | 2001-215459 | 8/2001 |
| JP | 2000029035- | 1/2000 | JP | 2001-222017 | 8/2001 |
| JP | 2000-056311 | 2/2000 | JP | 2001-222017- | 8/2001 |
| JP | 2000-056311- | 2/2000 | JP | 2001-235758 | 8/2001 |
| JP | 2000-066165 | 3/2000 | JP | 2001-235758- | 8/2001 |
| JP | 2000-066165- | 3/2000 | JP | 2001-215459- | 9/2001 |
| JP | 2000-066218 | 3/2000 | JP | 2001-255542 | 9/2001 |
| JP | 2000-093866 | 4/2000 | JP | 2001-264782 | 9/2001 |
| JP | 2000-137235 | 5/2000 | JP | 2001255542- | 9/2001 |
| JP | 2000-147528 | 5/2000 | JP | 2001264782- | 9/2001 |
| JP | 3000-147528- | 5/2000 | JP | 2001-201750- | 10/2001 |
| JP | 2000-137235- | 6/2000 | JP | 2001-272640 | 10/2001 |
| JP | 2000-193988 | 7/2000 | JP | 2001-272640- | 10/2001 |
| JP | 2000-193988- | 7/2000 | JP | 2001-281675 | 10/2001 |
| JP | 2000-241824 | 9/2000 | JP | 2001-281675- | 10/2001 |
| JP | 2000-241824- | 9/2000 | JP | 2001-281678 | 10/2001 |
| JP | 2000-284295 | 10/2000 | JP | 2001-281678- | 10/2001 |
| JP | 2000-284295- | 10/2000 | JP | 2001-282126 | 10/2001 |
| JP | 2000-292799 | 10/2000 | JP | 2001-282126- | 10/2001 |
| JP | 2000-292799- | 10/2000 | JP | 2001-305563 | 10/2001 |
| JP | 2000-310759 | 11/2000 | JP | 2001-305563- | 10/2001 |

US 7,218,374 B2

Page 4

| | | | | | | |
|---|---|---|---|---|---|
| JP | 2001-330837 | 11/2001 | JP | 2002-202512 | 7/2002 |
| JP | 2001-330837- | 11/2001 | JP | 2002-202514 | 7/2002 |
| JP | 2001-330840 | 11/2001 | JP | 2002-214626 | 7/2002 |
| JP | 2001330840- | 11/2001 | JP | 2002202512- | 7/2002 |
| JP | 2001-356353 | 12/2001 | JP | 2002202514- | 7/2002 |
| JP | 2001-356353- | 12/2001 | JP | 2002214626- | 7/2002 |
| JP | 2001-356354 | 12/2001 | JP | 2002-229042 | 8/2002 |
| JP | 2001356354- | 12/2001 | JP | 2002-236276 | 8/2002 |
| JP | 2002-014360 | 1/2002 | JP | 2002-258299 | 8/2002 |
| JP | 2002-023176 | 1/2002 | JP | 2002-236292 | 9/2002 |
| JP | 2002014360- | 1/2002 | JP | 2002-277865 | 9/2002 |
| JP | 2002023176- | 1/2002 | JP | 2002-277866 | 9/2002 |
| JP | 2002-049045 | 2/2002 | JP | 2002-277881 | 9/2002 |
| JP | 2002049045- | 2/2002 | JP | 2002-287156 | 10/2002 |
| JP | 2002-079160 | 3/2002 | JP | 2002-296605 | 10/2002 |
| JP | 2002-080321 | 3/2002 | JP | 2002-311438 | 10/2002 |
| JP | 2002-082340 | 3/2002 | JP | 2002-311440 | 10/2002 |
| JP | 2002-090759 | 3/2002 | JP | 2002-311442 | 10/2002 |
| JP | 2002-090760 | 3/2002 | JP | 2002-323687 | 11/2002 |
| JP | 2002082340- | 3/2002 | JP | 2002-323694 | 11/2002 |
| JP | 2002090759- | 3/2002 | JP | 2002-333628 | 11/2002 |
| JP | 2002090760- | 3/2002 | JP | 2002-333635 | 11/2002 |
| JP | 2002-107740 | 4/2002 | JP | 2002-333843 | 11/2002 |
| JP | 2002-122870 | 4/2002 | JP | 2002-341329 | 11/2002 |
| JP | 2002-122872 | 4/2002 | JP | 2002-341355 | 11/2002 |
| JP | 2002-122873 | 4/2002 | JP | 2002-341356 | 11/2002 |
| JP | 2002107740- | 4/2002 | JP | 2002-341357 | 11/2002 |
| JP | 2002122870 | 4/2002 | JP | 2002-341358 | 11/2002 |
| JP | 2002122872- | 4/2002 | JP | 2002-341359 | 11/2002 |
| JP | 2002122873- | 4/2002 | JP | 2002-341362 | 11/2002 |
| JP | 2002-131762 | 5/2002 | JP | 2003222883 | 8/2003 |
| JP | 2002-139734 | 5/2002 | KR | 10-0211010 | 7/1996 |
| JP | 2002-156518 | 5/2002 | KR | 10-0232905 | 10/1996 |
| JP | 2002-169166 | 6/2002 | KR | 2000-0035302 | 6/2000 |
| JP | 2002-169167 | 6/2002 | KR | 2000-0035302 A1 | 6/2000 |
| JP | 2002-182222 | 6/2002 | | | |
| JP | 2002080321- | 6/2002 | | * cited by examiner | |

## FIG. 1A
## Related Art



## FIG. 1B
## Related Art



# FIG. 1C
## Related Art



# FIG. 1D
## Related Art



# FIG. 2A
## Related Art



# FIG. 2B
## Related Art



# FIG. 2C
## Related Art



## FIG. 3A



## FIG. 3B



# FIG. 3C



# FIG. 3D



## FIG. 4A



## FIG. 4B



## FIG. 4C



## FIG. 4D



## FIG. 5A



## FIG. 5B



## FIG. 6



## FIG. 7A



## FIG. 7B



US 7,218,374 B2

1

## LIQUID CRYSTAL DISPLAY DEVICE AND METHOD OF MANUFACTURING THE SAME

This application claims the benefit of the Korean Application No. P2002-8900 filed on Feb. 20, 2002, which is hereby incorporated by reference for all purposes as if fully set forth herein.

This application incorporates by reference two applications, Ser. No. 10/184,096, filed on Jun. 28, 2002, entitled "SYSTEM AND METHOD FOR MANUFACTURING LIQUID CRYSTAL DISPLAY DEVICES"and Ser. No. 10/184,088, filed on Jun. 28, 2002, entitled "SYSTEM FOR FABRICATING LIQUID CRYSTAL DISPLAY AND METHOD OF FABRICATING LIQUID CRYSTAL DISPLAY USING THE SAME", as if fully set forth herein.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to a liquid crystal display (LCD) device, and more particularly, to a sealant pattern of an LCD device manufactured by applying a liquid crystal to the surface of a substrate.

### 2. Discussion of the Related Art

Generally, ultra thin flat panel displays have a display screen with a thickness of several centimeters or less. In particular, flat panel LCD devices are widely used in monitors for notebook computers, spacecraft, and aircraft because such LCD devices have low power consumption and are easy to carry.

Such an LCD device includes a lower substrate, an upper substrate, and a liquid crystal layer. A thin film transistor (TFT) and a pixel electrode are formed on the lower substrate. The upper substrate is formed to oppose the lower substrate. A light-shielding layer, a color filter layer, and a common electrode are formed on the upper substrate. The liquid crystal layer is formed between the lower and upper substrates. In operation an electric field is formed between the lower and upper substrates by the pixel electrode and the common electrode so that the electric field "drives" the alignment of molecules in the liquid crystal layer. Light transmittivity is controlled by driving the liquid crystal layer so that a picture image is displayed.

In the aforementioned LCD device, to form the liquid crystal layer between lower and upper substrates, a vacuum injection method based on capillary phenomenon and pressure difference has been conventionally used. However, such a vacuum injection method has a problem in that it takes long time to inject the liquid crystal into a large display panel, thereby reducing manufacturing productivity.

To solve such a problem, a method of applying liquid crystal on the substrate has been developed and is generally described with reference to FIGS. 1A to 1D. Although the drawings illustrate only one unit cell, a plurality of unit cells may be formed depending upon the size of the substrate.

As shown in FIG. 1A, a lower substrate 1 and an upper substrate 3 are prepared. A plurality of gate and data lines (not shown) are formed on the lower substrate 1. The gate lines cross the data lines to define a pixel region. A thin film transistor (not shown) is formed at each crossing point between the gate and data lines. A pixel electrode (not shown) connected with the thin film transistor is formed in the pixel region.

A light-shielding layer (not shown) is formed on the upper substrate 3 to prevent light from leaking out from the gate and data lines and the thin film transistor. Color filter layers of red(R), green(G), and blue(B) are formed on the light-

2

shielding layer, and a common electrode is formed on the color filter layers. An alignment film (not shown) is formed on at least one of the lower substrate 1 and the upper substrate 3 to initially align the liquid crystal molecules.

As shown in FIG. 1B, a sealant 7 is formed on the lower substrate 1 and a liquid crystal 5 is applied thereon, so that a liquid crystal layer is formed. A spacer (not shown) is spread or sprayed onto the upper substrate 3 to maintain a cell gap between the upper and lower substrates.

In the method of manufacturing the LCD device based on the liquid crystal application method, a liquid crystal layer is formed on attached substrates before the sealant 7 is hardened. Therefore, if a thermo-hardening sealant is used as the sealant 7, the liquid crystal heats and expands so that it flows out of the substrate when it is heated. For this reason, a problem arises in that the liquid crystal 5 is contaminated. Therefore, in the method of manufacturing the LCD based on the liquid crystal application method, a sealant that is at least partially curable by ultraviolet (UV) light is used as the sealant 7.

The UV sealant is formed by a screen printing method or a dispensing method. In the screen printing method, since a screen comes into contact with the substrate, the alignment film formed on the substrate may be damaged. Also, if the substrate has a large sized area, loss of the sealant increases. In these respects, the dispensing method is preferably used.

As shown in FIG. 1C, the lower substrate 1 is attached to the upper substrate 3.

As shown in FIG. 1D, UV light is irradiated through a UV irradiating device 9 so that the sealant 7 is hardened.

Thereafter, although not shown, a cell cutting process and a final test process are performed, thereby completing a liquid crystal cell.

Meanwhile, FIGS. 2A and 2B are perspective views illustrating a process of forming a UV sealant using a dispensing method. In the method of applying liquid crystal to one of the substrates before attaching the substrates, since no liquid crystal injection hole is required, a sealant 7 having no injection hole is formed on a lower substrate 1 using a dispensing device 8.

However, since the sealant 7 has high viscosity, it is concentrated upon the end of a nozzle of the dispensing device 8 before the sealant 7 is dispensed. For this reason, a blob "A" of the sealant 7 is excessively deposited at the point where deposition of the sealant 7 on the substrate is started.

As shown in FIG. 2C, the excessively distributed sealant spreads into an active region (central part of the substrate) and a dummy region (outer part of the substrate) when the lower substrate 1 is attached to the upper substrate 3. In this case, a problem arises in that the sealant spreads into the active region and contaminates the liquid crystal while the sealant spread out to the dummy region makes the cell cutting process difficult, especially after the sealant is cured.

## SUMMARY OF THE INVENTION

Accordingly, the present invention is directed to an LCD device and a method of manufacturing the same that substantially obviates one or more problems due to limitations and disadvantages of the related art.

An advantage of the present invention is to provide an LCD device and a method of manufacturing the same in which a sealant is formed so that a liquid crystal is not contaminated when both substrates are attached to each other and so that a cell cutting process can be easily performed.

US 7,218,374 B2

3

Additional advantages and features of the invention will be set forth in part in the description which follows and in part will become apparent to those having ordinary skill in the art upon examination of the following or may be learned from practice of the invention. These and other advantages of the invention may be realized and attained by the structure particularly pointed out in the written description and claims hereof as well as the appended drawings.

To achieve these and other advantages and in accordance with the purpose of the invention, as embodied and broadly described herein, a method of manufacturing an LCD device according to the present invention includes preparing a lower substrate and an upper substrate; forming an auxiliary sealant and subsequently forming a main sealant on one of the lower and upper substrates, wherein the auxiliary sealant is formed in a dummy region and connect to the main sealant; applying a liquid crystal on one of the lower and upper substrates; attaching the lower and upper substrates; and curing at least the main sealant.

In one embodiment of the present invention, the supplementary UV sealant does not perform the ordinary the function of a sealant, that is, it does not prevent the liquid crystal from leaking out. While the main UV sealant acts as a sealant to confine the liquid crystal.

In another aspect of the present invention, a method of manufacturing a liquid crystal display (LCD) device includes preparing a lower substrate and an upper substrate; forming an auxiliary UV sealant and a main UV sealant on one of the lower and upper substrates, wherein the auxiliary UV sealant is formed in a dummy region and extends from the main UV sealant; applying a liquid crystal on one of the lower and upper substrates; attaching the lower and upper substrates; and irradiating UV light on the attached substrates.

In one aspect of the present invention, the supplementary UV sealant is formed in a dummy region on the substrate and then the closed type main UV sealant is formed, so that the sealant concentrated upon the end of a nozzle of a dispensing device is formed in the dummy region on the substrate.

It is to be understood that both the foregoing general description and the following detailed description of the present invention are exemplary and explanatory and are intended to provide further explanation of the invention as claimed.

BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to provide a further understanding of the invention and are incorporated in and constitute a part of this application, illustrate embodiment(s) of the invention and together with the description serve to explain the principle of the invention.

In the drawings:

FIGS. 1A to 1D are perspective views illustrating a method of manufacturing an LCD device according to a related art liquid crystal application method;

FIGS. 2A and 2B are perspective views illustrating a process of forming a UV sealant using a related art dispensing method;

FIG. 2C is a perspective view illustrating a sealant formed by a related art dispensing method after attaching substrates to each other;

FIGS. 3A to 3D are perspective views illustrating a method of manufacturing an LCD device according to a first embodiment of the present invention;

4

FIGS. 4A to 4D are perspective views illustrating a process of forming a UV sealant in manufacturing an LCD device according to a second embodiment of the present invention of the present invention;

FIGS. 5A and 5B are perspective views illustrating a process of forming a UV sealant in a method of manufacturing an LCD device according to a third embodiment of the present invention of the present invention;

FIG. 6 is a perspective view illustrating an LCD device according to a fourth embodiment of the present invention; and

FIGS. 7A and 7B are sectional views taken along lines I—I and II—II of FIG. 6.

DETAILED DESCRIPTION OF THE ILLUSTRATED EMBODIMENTS

Reference will now be made in detail to the illustrated embodiments of the present invention, examples of which are illustrated in the accompanying drawings. Wherever possible, the same reference numbers will be used throughout the drawings to refer to the same or like parts.

FIGS. 3A to 3D are perspective views illustrating a method of manufacturing an LCD device according to the first embodiment of the present invention;

Although the drawings illustrate only one unit cell, a plurality of unit cells may be formed depending upon the size of the substrate.

As shown in FIG. 3A, a lower substrate 10 and an upper substrate 30 are prepared for the process. A plurality of gate and data lines (not shown) are formed on the lower substrate 10. The gate lines cross the data lines to define a pixel region. A thin film transistor (not shown) having a gate electrode, a gate insulating layer, a semiconductor layer, an ohmic contact layer, source/drain electrodes, and a protection layer is formed at each crossing point of the gate lines and the data lines. A pixel electrode (not shown) connected with the thin film transistor is formed in the pixel region.

An alignment film (not shown) is formed on the pixel electrode to initially align the molecules of liquid crystal. The alignment film may be formed of polyamide or polyimide based compound, polyvinylalcohol (PVA), and polyamic acid by rubbing. Alternatively, the alignment film may be formed of a photosensitive material, such as polyvinvylcinnamate (PVCN), polysilioxanecinnamate (PSCN) or cellulosecinnamate (CelCN) based compound, by using a photo-alignment method.

A light-shielding layer (not shown) is formed on the upper substrate 30 to shield light leakage from the gate lines, the data lines, and the thin film transistor regions. A color filter layer (not shown) of R, G, and B is formed on the light-shielding layer. A common electrode (not shown) is formed on the color filter layer. Additionally, an overcoat layer (not shown) may be formed between the color filter layer and the common electrode. The alignment film is formed on the common electrode.

Silver (Ag) dots are formed outside the lower substrate 10 to apply a voltage to the common electrode on the upper substrate 30 after the lower and upper substrates 10 and 30 are attached to each other. Alternatively, the silver dots may be formed on the upper substrate 30.

For an in plane switching (IPS) mode LCD, the common electrode is formed on the lower substrate like the pixel electrode, and so that an electric field can be horizontally induced between the common electrode and the pixel electrode. The silver dots are not formed on the substrate.

US 7,218,374 B2

5                                                                6

As shown in FIG. 3B, a liquid crystal 50 is applied onto the lower substrate 10 to form a liquid crystal layer.

An auxiliary UV curable sealant 70a is formed in a dummy area at a corner region of the upper substrate 30, subsequently, a main UV curable sealant 70b having no injection hole is formed, using a dispensing method.

The auxiliary UV sealant 70a is prevents any problem that may occur due to a sealant concentrated upon the end of a nozzle of a dispensing device. Therefore, it does not matter where the auxiliary UV sealant 70a is formed in the dummy area of the substrate, i.e., any blob of-sealant will be formed away from the active region of the liquid crystal display device and away from a region where the liquid crystal panel will be cut away from the mother substrate assembly. Formation of the main UV sealant 70b is preceded by the formation of the auxiliary UV sealant 70a. The auxiliary UV sealant 70a may be formed in a straight line as shown. Alternatively, the auxiliary UV sealant 70a may be formed in a curved line or other shape as long as it is formed in a dummy region.

Monomers or oligomers each having both ends coupled to the acrylic group, mixed with an initiator are used as the UV sealants 70a and 70b. Alternatively, monomers or oligomers each having one end coupled to the acrylic group and the other end coupled to the epoxy group, mixed with an initiator are used as the UV sealants 70a and 70b.

Also, the liquid crystal 50 may be contaminated if it comes into contact with the main UV sealant 70b before the main UV sealant 70b is hardened. Accordingly, the liquid crystal 50 may preferably be applied on the central part of the lower substrate 10. In this case, the liquid crystal 50 is gradually spread even after the main UV sealant 70b is hardened. Thus, the liquid crystal 50 is uniformly distributed on the substrate.

The liquid crystal 50 may be formed on the upper substrate 30 while the UV sealants 70a and 70b may be formed on the lower substrate 10. Alternatively, the liquid crystal 50 and the UV sealants 70a and 70b may be formed on one substrate. In this case, there is an imbalance between the processing times of the substrate with the liquid crystal and the sealants and the substrate without the liquid crystal and the sealants in the manufacturing process. For this reason, the total manufacturing process time increases. Also, when the liquid crystal and the sealants are formed on one substrate, the substrate may not be cleaned even if the sealant contaminates the panel before the substrates are attached to each other.

Accordingly, a cleaning process for cleaning the upper substrate 30 may additionally be provided before the attaching process after the UV sealants 70a and 70b are formed on the upper substrate 30.

Meanwhile, spacers may be formed on either of the two substrates 10 and 30 to maintain a cell gap. Preferably, the spacers may be formed on the upper substrate 30.

Ball spacers or column spacers may be used as the spacers. The ball spacers may be formed in such a manner that they are mixed with a solution having an appropriate concentration and then spread at a high pressure onto the substrate from a spray nozzle. The column spacers may be formed on portions of the substrate corresponding to the gate lines or data lines. Preferably, column spacers may be used for the large sized substrate since the ball spacers may cause an uneven cell gap for the large sized substrate. The column spacers may be formed of a photosensitive organic resin.

As shown in FIG. 3C, the lower substrate 10 and the upper substrate 30 are attached to each other by the following processes. First, one of the substrates having the liquid crystal dropped thereon is placed at the lower side. The other substrate is placed at the upper side by turning by 180 degrees so that its portion having layers faces into the substrate at the lower side. Thereafter, the substrate at the upper side is pressed, so that both substrates are attached to each other. Alternatively, the space between the substrates may be maintained under the vacuum state so that both substrates are attached to each other by releasing the vacuum state.

Then, as shown in FIG. 3D, UV light is irradiated upon the attached substrates through a UV irradiating device 90.

Upon irradiating the UV light, monomers or oligomers activated by an initiator constituting the UV sealants are polymerized and hardened, thereby bonding the lower substrate 10 to the upper substrate 30.

If monomers or oligomers each having one end coupled to the acrylic group and the other end coupled to the epoxy group, mixed with an initiator are used as the UV sealants, the epoxy group is not completely polymerized by the application of UV light. Therefore, the sealants may have to be additionally heated at about 120° C. for one hour after the UV irradiation, thereby hardening the sealants completely.

Afterwards, although not shown, the bonded substrates are cut into a unit cells and final test processes are performed.

In the cutting process, a scribing process is performed by forming a cutting line on surfaces of the substrates with a pen or wheel of a material having hardness greater than that of glass, such as diamond, and then the substrates are cut along the cutting line by mechanical impact (breaking process). Alternatively, the scribing process and the breaking process may simultaneously be performed using a pen or wheel of a diamond or other hard material.

The cutting line of the cutting process is formed between the start point of the auxiliary sealant, which may be a blob A of sealant, and a main UV sealant across the initially formed auxiliary UV sealant 70a. Consequently, a substantial portion of the excessively distributed auxiliary UV sealant 70a is removed.

FIGS. 4A to 4D are perspective views illustrating a process of irradiating UV light in the method of manufacturing an LCD device according to the second embodiment of the present invention. The second embodiment is similar to the first embodiment except for the UV irradiation process. In the second embodiment, a region where the sealants are not formed is covered with a mask before the UV light is irradiated. Since the other elements of the second embodiment are the same as those of the first embodiment, the same reference numerals will be given to the same elements and their detailed description will be omitted.

If the UV light is irradiated upon the entire surface of the attached substrates, the UV light may deteriorate characteristics of devices such as a thin film transistor on the substrate and may change a pre-tilt angle of an alignment film formed for the initial alignment of the liquid crystal.

Therefore, in the second embodiment of the present invention, the UV light is irradiated when the area where no sealant is formed is covered with a mask.

Referring to FIG. 4A, a region where the auxiliary UV sealant 70a and the main UV sealant 70b are formed is covered with a mask 80. The mask 80 is placed at an upper side of the attached substrates, and the UV light is irradiated.

Also, the mask 80 may be placed at a lower side of the attached substrates. Also, although the UV light is irradiated upon the upper substrate 30 of the attached substrates as shown, the UV light may be irradiated upon the lower substrate 10 by turning the attached substrates.

US 7,218,374 B2

7

8

If the UV light from a UV irradiating device **90** is reflected and irradiated upon an opposite side, it may deteriorate characteristics of devices, such as the thin film transistor on the substrate and the alignment film, as described above. Therefore, masks are preferably formed at lower and upper sides of the attached substrates.

That is, as shown in FIG. 4B, masks **80** and **82** that cover the region where the sealants **70**a and **70**b are not formed are placed are at upper and lower sides of the attached substrates. The UV light is then irradiated thereupon.

Meanwhile, since the auxiliary UV sealant **70**a does not act as a sealant, it does not require hardening. Also, since the region of the auxiliary UV sealant **70**a overlaps the cell cutting line during the later cell cutting process, it is more desirable for the cell cutting process that the auxiliary UV sealant **70** is not hardened.

Referring to FIGS. 4C and 4D, the auxiliary UV sealant **70**a is not hardened by irradiating the UV light when only the area where the main UV sealant **70**b is not formed is covered with the mask, i.e., the auxiliary sealant **70**a is also covered by a mask.

In this case, in FIG. 4C, the UV light is irradiated with the mask **80** in place at a lower or upper side of the attached substrates. In FIG. 4D, the UV light is irradiated when the mask **80** is respectively placed at lower and upper sides of the attached substrates.

FIGS. 5A and 5B are perspective views illustrating a process of forming a UV sealant in a method of manufacturing an LCD device according to the third embodiment of the present invention of the present invention.

The third embodiment is identical to the second embodiment except for the UV irradiation process. In the third embodiment, the UV light is irradiated at a tilt angle. Since the other elements of the third embodiment are identical to those of the second embodiment, the same reference numerals will be given to the same elements and their detailed description will be omitted.

If a light-shielding layer and a metal line such as gate and data lines are formed on a region where the UV sealant is formed, the UV light is not irradiated upon the region, thereby failing to harden the sealant. For this reason, adherence between the lower and upper substrates is reduced.

Therefore, in the third embodiment of the present invention, the UV light is irradiated at a tilt angle upon the substrate where the UV sealant is formed, so that the UV sealant is hardened even if the light-shielding layer or the metal line layer is formed between the UV irradiating surface and the sealant.

To irradiate the UV light at a tilt angle, as shown in FIG. 5A, the attached substrates are horizontally arranged and a UV irradiating device **90** is arranged at a tilt angle of θ. Alternatively, as shown in FIG. 5B, the attached substrates may be arranged at a tilt angle and the UV irradiating device **90** may horizontally be arranged.

Also, the UV light may be irradiated at a tilt angle when the area where the sealant is not formed is covered with the mask as shown in FIGS. 4A to 4D.

FIG. 6 is a perspective view illustrating an LCD device according to the fourth embodiment of the present invention, and FIGS. 7A and 7B are sectional views taken along lines I—I and II—II of FIG. 6.

As shown in FIGS. 6 and 7, an LCD device according to the present invention includes lower and upper substrates **10** and **30**, a UV sealant between the lower and upper substrates **10** and **30**, having an auxiliary UV sealant **70**a in a dummy area and a perimeter of main UV sealant **70**b connected to

the auxiliary UV sealant **70**a, and a liquid crystal layer **50** between the lower and upper substrates **10** and **30**.

At this time, although not shown, a thin film transistor, a pixel electrode, and an alignment film are formed on the lower substrate **10**. A black matrix layer (not shown), a color filter layer (not shown), a common electrode (not shown) and an alignment film (not shown) are formed on the upper substrate **30**. Also, spacers are formed between the lower and upper substrates **10** and **30** to maintain a cell gap between the substrates.

As aforementioned, the LCD device and the method of manufacturing the same according to the present invention have the following advantages.

Since the sealant concentrated upon the end of the nozzle of the dispensing device is formed in the dummy area on the substrate, the liquid crystal layer is not contaminated by the attaching process of the substrates and the cell cutting process is easily performed.

Furthermore, if the UV light is irradiated upon the substrate when the mask is formed at the lower and/or upper side of the attached substrates, the UV light is irradiated upon only the region where the UV sealant is formed. In this case, the alignment film formed on the substrate is not damaged and the characteristics of the devices, such as the thin film transistor, are not deteriorated.

Finally, if the UV light is irradiated at a tilt angle, the sealant can be hardened even if the light-shielding layer or the metal line is formed on the sealant, thereby avoiding reducing adherence between the lower and upper substrates.

It will be apparent to those skilled in the art that various modifications and variations can be made in the present invention. Thus, it is intended that the present invention covers the modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

1. A method of manufacturing a liquid crystal display (LCD) device comprising:
preparing a lower substrate and an upper substrate;
forming an auxiliary sealant and subsequently forming a main sealant on one of the lower and upper substrates, wherein the auxiliary sealant is formed in a dummy region and connects to the main sealant, and wherein the auxiliary sealant and the main sealant are contiguous;
applying a liquid crystal on one of the lower and upper substrates;
attaching the lower and upper substrates; and
curing at least the main sealant.

2. The method of claim 1, wherein the main sealant and the auxiliary sealant are at least partially curable by irradiating UV light and curing the main sealant includes irradiating UV light.

3. The method of claim 2, wherein the sealant is formed using oligomers each having both ends coupled to an acrylic group.

4. The method of claim 2, wherein the sealant is formed using monomers each having both ends coupled to an acrylic group.

5. The method of claim 2, wherein the sealant is formed using oligomers each having one end coupled to an acrylic group and the other end coupled to an epoxy group.

6. The method of claim 5, further comprising heating the sealant after irradiating the UV light.

7. The method of claim 2, wherein the sealant is formed using monomers each having one end coupled to an acrylic group and the other end coupled to an epoxy group.

US 7,218,374 B2

<table>
<tr><td>9</td><td>10</td></tr>
</table>

**8.** The method of claim **7**, further comprising heating the sealant after irradiating the UV light.

**9.** The method of claim **2**, further comprising heating the sealant after irradiating the UV light.

**10.** The method of claim **2**, wherein a region where the sealant is not formed is covered with a mask during the irradiating with UV light.

**11.** The method of claim **2**, wherein a region where the main UV sealant is not formed is covered with a mask during the irradiating with UV light.

**12.** The method of claim **2**, wherein the UV light is irradiated at a tilt angle with respect to the attached substrates.

**13.** The method of claim **2**, further comprising:

providing a mask over a region where the main sealant is not formed before irradiating UV light such that the auxiliary sealant is not exposed to the UV light; and

cutting the attached substrates.

**14.** The method of claim **1**, further comprising forming column spacers on the upper substrate.

**15.** The method of claim **1**, wherein the main and auxiliary sealants are formed on the upper substrate and the liquid crystal is applied to the lower substrate.

**16.** The method of claim **1**, further comprising cutting the attached substrates.

**17.** The method of claim **16**, wherein the attached substrates are cut across a portion of the auxiliary sealant.

**18.** The method of claim **1**, wherein the applying the liquid crystal includes dropping the liquid crystal onto the one of the upper and lower substrates.

**19.** The method of claim **18**, wherein the liquid crystal is applied in a predetermined pattern onto the one of the upper and lower substrates.

**20.** The method of claim **1**, wherein the auxiliary sealant contacts the main sealant.

**21.** A method of manufacturing a liquid crystal display (LCD) device comprising:

preparing a lower substrate and an upper substrate;

forming an auxiliary UV sealant and a main UV sealant on one of the lower and upper substrates, wherein the auxiliary UV sealant is formed in a dummy region and extends outside from the main UV sealant, wherein the auxiliary UV sealant contacts the main UV sealant;

applying a liquid crystal on one of the lower and upper substrates;

attaching the lower and upper substrates; and

irradiating UV light on the attached substrates.

**22.** The method of claim **21**, wherein the UV light is irradiated at a tilt angle with respect to the attached substrates.

* * * * *

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | |
| Plaintiff, | |
| v. | Civil Action No. 2:07-cv-00176-TJW |
| | **JURY TRIAL DEMANDED** |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | |
| Defendants. | |
| LG.PHILIPS LCD CO., LTD., and LG.PHILIPS LCD AMERICA, INC., | |
| Counterclaim Plaintiffs, | |
| v. | |
| CHI MEI OPTOELECTRONICS CORPORATION; and CHI MEI OPTOELECTRONICS USA, INC., a Delaware Corporation, | **JURY TRIAL DEMANDED** |
| Counterclaim Defendants. | |

## LG.PHILIPS LCD AMERICA INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFF

Defendant LG.Philips LCD America, Inc. ("LPLA"), by and through its undersigned counsel, hereby files its Answer in Response to the Complaint For Patent Infringement of Plaintiff Chi Mei Optoelectronics Corporation ("CMO"), in the above titled action, filed on or about May 4, 2007, asserts affirmative defenses to those claims, and asserts counterclaims against CMO.  A jury trial is demanded for all claims so triable.

**RESPONSE TO ALLEGATIONS AS TO JURISDICTION AND VENUE**

1.      LPLA admits that CMO purports to assert claims arising under the patent laws of the United States, but denies the remaining allegations in paragraph 1 of the Complaint.

2.      LPLA denies the allegations of paragraph 2 in the Complaint.

3.      LPLA denies the allegations of paragraph 3 in the Complaint.

**RESPONSE TO ALLEGATIONS AS TO PARTIES**

4.      LPLA admits that CMO is a Taiwanese Corporation also having its principal place of business in Taiwan, but denies the remaining allegations in paragraph 4 of the Complaint.

5.      LPLA admits that LG.Philips LCD Co., Ltd. ("LPL") is a Korean corporation with its principal place of business at 20 Youido-Dong, Yongdeungpo, Seoul 150-721, the Republic of Korea and that it designs, manufactures, and distributes TFT-LCD panels and Liquid Crystal Display ("LCD") modules, but denies the remaining allegations in paragraph 5 of the Complaint.

6.      LPLA admits that LPLA has sales offices in California, Texas (Austin and Houston), North Carolina, and Illinois, but denies the remaining allegations in paragraph 6 of the Complaint.

7.      LPLA admits the allegations in paragraph 7 of the Complaint.

8.      LPLA denies the allegations in paragraph 8 of the Complaint.

**RESPONSE TO FIRST CLAIM FOR RELIEF**

9.      LPLA hereby incorporates paragraphs 1-8 above as though fully set forth herein.

10. LPLA admits that Exhibit A to the Complaint purports to be a copy of United States Patent No. 6,008,786, entitled "Method for Driving Halftone Display for a Liquid Crystal Display" ("the '786 patent"), but LPLA lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 10 of the Complaint, and therefore denies them.

11. LPLA denies the allegations in paragraph 11 of the Complaint.

12. LPLA denies the allegations in paragraph 12 of the Complaint.

13. LPLA denies the allegations in paragraph 13 of the Complaint.

14. LPLA denies the allegations in paragraph 14 of the Complaint.

15. LPLA denies the allegations in paragraph 15 of the Complaint.

16. LPLA denies the allegations in paragraph 16 of the Complaint.

## RESPONSE TO SECOND CLAIM FOR RELIEF

17. LPLA hereby incorporates paragraphs 1-16 above as though fully set forth herein.

18. LPLA admits that Exhibit B to the Complaint purports to be a copy of United States Patent No. 6,013,923 entitled "Semiconductor Switch Array with Electrostatic Discharge Protection and Method of Fabricating" ("the '923 patent"), but LPLA lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 18 of the Complaint, and therefore denies them.

19. LPLA denies the allegations in paragraph 19 of the Complaint.

20. LPLA denies the allegations in paragraph 20 of the Complaint.

21. LPLA denies the allegations in paragraph 21 of the Complaint.

22. LPLA denies the allegations in paragraph 22 of the Complaint.

23. LPLA denies the allegations in paragraph 23 of the Complaint.

24.    LPLA denies the allegations in paragraph 24 of the Complaint.

## RESPONSE TO THIRD CLAIM FOR RELIEF

25.    LPLA hereby incorporates paragraphs 1-24 above as though fully set forth herein.

26.    LPLA admits that Exhibit C to the Complaint purports to be a copy of United States Patent No. 5,619,352 entitled "LCD Splay/Twist Compensator having Varying Tilt and/or Azimuthal Angles for Improved Gray Scale Performance" ("the '352 patent"), but LPLA lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 26 of the Complaint, and therefore denies them.

27.    LPLA denies the allegations in paragraph 27 of the Complaint.

28.    LPLA denies the allegations in paragraph 28 of the Complaint.

29.    LPLA denies the allegations in paragraph 29 of the Complaint.

30.    LPLA denies the allegations in paragraph 30 of the Complaint.

31.    LPLA denies the allegations in paragraph 31 of the Complaint.

32.    LPLA denies the allegations in paragraph 32 of the Complaint.

## RESPONSE TO FOURTH CLAIM FOR RELIEF

33.    LPLA hereby incorporates paragraphs 1-32 above as though fully set forth herein.

34.    LPLA admits that Exhibit D to the Complaint purports to be a copy of United States Patent No. 6,734,926 B2 entitled "Display Apparatus with a Reduced Thickness" ("the '926 patent"), but LPLA lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 34 of the Complaint, and therefore denies them.

35.    LPLA denies the allegations in paragraph 35 of the Complaint.

36.    LPLA denies the allegations in paragraph 36 of the Complaint.

37.    LPLA denies the allegations in paragraph 37 of the Complaint.

38.    LPLA denies the allegations in paragraph 38 of the Complaint.

39.    LPLA denies the allegations in paragraph 39 of the Complaint.

40.    LPLA denies the allegations in paragraph 40 of the Complaint.

## RESPONSE TO PRAYER FOR RELIEF

41.    As to paragraphs 1 through 11 of the Prayer For Relief, LPLA denies that CMO is entitled to the requested relief.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following are not already at issue by virtue of the foregoing denials, and without prejudice to LPLA's right to plead additional defenses as discovery into the facts of the matter warrants, LPLA hereby asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

42.    CMO has failed to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

43.    One or more claims of the '786 patent, the '923 patent, the '352 patent and the '926 patent (collectively "the CMO Patents") are invalid for failing to meet one or more of the requisite conditions or requirements for patentability specified by 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD AFFIRMATIVE DEFENSE

44.    LPLA's products have not and do not infringe any claim of the CMO Patents, either literally or under the doctrine of equivalents.

### FOURTH AFFIRMATIVE DEFENSE

45.    LPLA has not directly or indirectly contributed to infringement of, nor induced another to infringe the CMO Patents.

### FIFTH AFFIRMATIVE DEFENSE

46.    Pursuant to 35 U.S.C. § 287(b), LPLA is not liable for damages for infringement under any section of 35 U.S.C. § 271 before receiving notice of CMO's allegations of infringement in this action.

### SIXTH AFFIRMATIVE DEFENSE

47.    CMO's claims are barred, in whole or in part, because of the affirmative defense of license.

### LPLA'S COUNTERCLAIMS AGAINST CMO

48.    By these Counterclaims and pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant/Counterclaim Plaintiff LG.Philips LCD America, Inc. ("LPLA") seeks declaratory relief against Plaintiff Chi Mei Optoelectronics Corporation ("CMO").

49.    Counterclaim Plaintiff LPLA is a California corporation having its principal place of business at 150 East Brokaw Road, San Jose, California 95112-4203.

50.    Counterclaim Defendant CMO is a Taiwanese corporation, having its principal place of business at 2F, No. 1, Chi-Yeh Road, Tainan Science Based Industrial Park, Hsinshih Hsiang, Tainan Hsien 710,  TAIWAN 74147, R.O.C.

51.    CMO claims to be the owner of United States Patent No. 6,008,786 ("the '786 Patent"), United States Patent No. 6,013,923 ("the '923 Patent"), United States

Patent No. 5,619,352 ("the '352 Patent"), and United States Patent No. 6,734,926 ("the '926 Patent") (collectively "the CMO Patents").

52.    These Counterclaims are under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq*., based upon an actual controversy between LPLA and CMO regarding the validity and infringement of the claims of the CMO Patents, and is intended to provide appropriate and necessary declaratory relief.

53.    This Court has jurisdiction over the subject matter of these Counterclaims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a), and under 28 U.S.C. § 1331.

54.    This Court has personal jurisdiction and venue over CMO because, *inter alia*, CMO has submitted itself to the jurisdiction of this Court.

**COUNTERCLAIM COUNT I**
**CLAIM FOR DECLARATORY JUDGMENT OF INVALIDITY OF**
**THE '786 PATENT, THE '923 PATENT, THE '352 PATENT,**
**AND THE '926 PATENT AGAINST CMO**

55.    LPLA hereby incorporates paragraphs 48-54 above as though fully set forth herein.

56.    CMO has accused LPLA of infringing the CMO Patents, as such, there is a substantial controversy between the parties having adverse legal interests.

57.    Claims of the '786 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

58.    Claims of the '923 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

59.    Claims of the '352 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

60.    Claims of the '926 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

61.    Because CMO has asserted the CMO Patents against LPLA, thereby creating an actual controversy, declaratory relief is both appropriate and necessary to establish that one or more of the claims of the '786 Patent, the '923 Patent, the '352 Patent, and the '926 Patent are invalid.

## COUNTERCLAIM COUNT II
## CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '786 PATENT, THE '923 PATENT, THE '352 PATENT, AND THE '926 PATENT AGAINST CMO

62.    LPLA hereby incorporates paragraphs 48-61 above as though fully set forth herein.

63.    LPLA's LCD modules and/or methods of driving LCD modules do not infringe any claim of the '786 Patent, either literally or under the doctrine of equivalents.

64.    LPLA's LCD modules and/or methods for forming LCD modules do not infringe any claim of the '923 Patent, either literally or under the doctrine of equivalents.

65.    LPLA's LCD modules and/or methods for forming LCD modules do not infringe any claim of the '352 Patent, either literally or under the doctrine of equivalents.

66.    LPLA's LCD modules and/or methods for forming LCD modules do not infringe any claim of the '926 Patent, either literally or under the doctrine of equivalents.

67.    Because CMO maintains that LPLA infringes the CMO Patents, thereby creating an actual controversy, a declaration of rights between LPLA and CMO is both

appropriate and necessary to establish that LPLA has not infringed and does not infringe any claim of the '786 Patent, the '923 Patent, the '352 Patent, or the '926 Patent.

## PRAYER FOR RELIEF

**WHEREFORE**, LPLA prays for judgment as follows:

A.     That the Court dismiss CMO's complaint with prejudice; post trial accounting be done as part of the monetary relief awarded to LPL;

B.     That the Court issue a declaratory judgment that LPLA does not directly or indirectly infringe any of the CMO Patents under any applicable provision of 35 U.S.C. § 271;

C.     That the Court issue a declaratory judgment that the CMO Patents are invalid;

D.     That this is an exceptional case under 35 U.S.C. § 285 and that LPLA be awarded the attorneys' fees, costs and expenses that it incurs prosecuting this action; and

E.     That the Court award LPLA other relief as it may find appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, LG.Philips LCD Co., Ltd. respectfully demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Law Office of Mike C. Miller, P.C.


/s/ Mike C. Miller
Mike C. Miller
Texas State Bar No. 14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorneys for Defendants*
*LG.Philips LCD Co., Ltd. and*
*LG.Philips LCD America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

August 13, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation | § § § | |
| PLAINTIFF | § § | C.A. 2:07-CV- 176 |
| VS. | § § | Honorable T. John Ward |
| L.G. PHILIPS LCD CO., LTD., a Korean Corporation, and L.G. PHILIPS LCD AMERICA, INC. S California Corporation | § § § § § | JURY TRIAL DEMANDED |
| DEFENDANTS | § § | |

**<u>DEFENDANTS' UNOPPOSED MOTION FOR WITHDRAWAL OF COUNSEL</u>**

Defendants, L.G. Philips LCD Co. LTD and L. G. Philips LCD America, Inc.,
respectively request that Franklin Jones, Jr. and the law firm of Jones & Jones, Inc., P. C.be
permitted to withdraw as counsel of record for L. G. Philips LCD Co. LTD and L. G. Philips
LCD America, Inc. in this matter. The Defendants are represented by other counsel who are
not seeking to withdraw. No other changes are requested at this time regarding the other
attorneys acting as  Philips' counsel of record. No party opposes this request.

Dated: August 14, 2007.

1

Respectfully submitted,


By: /s/ Franklin Jones, Jr.
      Franklin Jones, Jr.
      State Bar No. 00000055
      JONES, JONES, INC.
      201 W. Houston Street
      Marshall, Texas 75670
      Phone: (903) 938-4395
      Fax: (903) 938-3360

ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF CONFERENCE

I hereby certify that Defendants conferred with Plaintiff's counsel regarding this Motion to Withdraw, and Plaintiff does not object to the relief requested.

/s/ Franklin Jones, Jr.


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of August, 2007, with a copy of this document via the Court's electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Franklin Jones, Jr.

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **CHI MEI OPTOELECTRONICS** | § | |
| **CORPORATION, a Taiwan Corporation** | § | |
| | § | |
| **PLAINTIFF** | § | **C.A. 2:07-CV- 176** |
| | § | |
| **VS.** | § | **Honorable T. John Ward** |
| | § | |
| **L.G. PHILIPS LCD CO., LTD., a Korean** | § | |
| **Corporation, and** | § | **JURY TRIAL DEMANDED** |
| **L.G. PHILIPS LCD AMERICA, INC. S** | § | |
| **California Corporation** | § | |
| | § | |
| **DEFENDANTS** | § | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED
MOTION FOR WITHDRAWAL OF COUNSEL**

CAME ON for consideration Defendants' Unopposed Motion for Withdrawal of Counsel.  The Court, having considered the Motion finds that it is meritorious and should be GRANTED.

IT IS THEREFORE ORDERED that Defendants' Unopposed Motion for Withdraw of Counsel is hereby GRANTED.

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **CHI MEI OPTOELECTRONICS** | § | |
| **CORPORATION, a Taiwan Corporation** | § | |
| | § | |
| **PLAINTIFF** | § | **C.A. 2:07-CV- 176** |
| | § | |
| **VS.** | § | **Honorable T. John Ward** |
| | § | |
| **L.G. PHILIPS LCD CO., LTD., a Korean** | § | |
| **Corporation, and** | § | **JURY TRIAL DEMANDED** |
| **L.G. PHILIPS LCD AMERICA, INC. S** | § | |
| **California Corporation** | § | |
| | § | |
| **DEFENDANTS** | § | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED**
**MOTION FOR WITHDRAWAL OF COUNSEL**

CAME ON for consideration Defendants' Unopposed Motion for Withdrawal of

Counsel.  The Court, having considered the Motion finds that it is meritorious and should be

GRANTED.

IT IS THEREFORE ORDERED that Defendants' Unopposed Motion for Withdraw

of Counsel is hereby GRANTED.

SIGNED this 15th day of August, 2007.


_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHI MEI OPTOELECTRONICS** | ) | |
| **CORPORATION,** a Taiwan Corporation | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:07-cv-176-TJW** |
| | ) | |
| **LG.PHILIPS LCD CO., LTD,** a Korean | ) | |
| Corporation, | ) | **JURY TRIAL DEMANDED** |
| **and** | ) | |
| **LG.PHILIPS LCD AMERICA, INC,** a | ) | |
| California Corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| **LG. PHILIPS LCD CO., LTD., and** | | |
| **LG.PHILIPS LCD AMERICA, INC.,** | | |

**Counterclaim Plaintiffs,**

**v.**

**CHI MEI OPTOELECTRONICS**
**CORPORATION; and CHI MEI**
**OPTOELECTRONICS USA, INC., a**
**Delaware Corporation,**

**Counterclaim Defendants.**

**AGREED AND STIPULATED MOTION FOR EXTENSION OF TIME TO ANSWER
OR OTHERWISE RESPOND TO DEFENDANTS' COUNTERCLAIMS AND WAIVER
OF SERVICE OF PROCESS**

TO THE HONORABLE JUDGE OF SAID COURT:

1.    Chi Mei Optoelectronics Corporation, and Chi Mei Optoelectronics USA, Inc.

and LG Philips LCD Co., Ltd. and LG Philips LCD America, Inc. respectfully move the Court to

extend the time within which Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics

- 1 -

USA, Inc. are required to respond to Defendants' Counterclaims up to and including October 9, 2007.

2.      Counsel for the parties have conferred, and all counsel have agreed and stipulated to this Motion.  Additionally, Counterclaim Defendant Chi Mei Optoelectronics USA, Inc. has agreed to waive service and has authorized counsel for Chi Mei Optoelectronics Corporation. to accept service of the Summons and Counterclaims.

WHEREFORE, the parties respectfully pray that the time for Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc., to respond to Defendants' Counterclaims be enlarged up to and including October 9, 2007.

Respectfully submitted,

GILLAM & SMITH, LLP


  /s/ Melissa R. Smith_____
Melissa R. Smith
LEAD ATTORNEY
State Bar No. 24001351
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

**ATTORNEYS FOR PLAINTIFF,
CHI MEI OPTOELECTRONICS
CORPORATION**

- 2 -

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Plaintiff and counsel for Defendants conferred on August 22, 2007, and this is an agreed motion.

    /s/ Melissa R. Smith
Melissa R. Smith

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 23rd day of August, 2007.

    /s/ Melissa R. Smith
Melissa R. Smith

Motion to Extend Time to October 9 2007.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHI MEI OPTOELECTRONICS** | ) | |
| **CORPORATION,** a Taiwan Corporation | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:07-cv-176-TJW** |
| | ) | |
| **LG.PHILIPS LCD CO., LTD,** a Korean | ) | **JURY TRIAL DEMANDED** |
| Corporation, | ) | |
| **and** | ) | |
| **LG.PHILIPS LCD AMERICA, INC,** a | ) | |
| California Corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**LG. PHILIPS LCD CO., LTD., and**
**LG.PHILIPS LCD AMERICA, INC.,**

      **Counterclaim Plaintiffs,**

**v.**

**CHI MEI OPTOELECTRONICS**
**CORPORATION; and CHI MEI**
**OPTOELECTRONICS USA, INC., a**
**Delaware Corporation,**

      **Counterclaim Defendants.**

## <u>ORDER</u>

The parties' Agreed and Stipulated Motion for Extension of Time to Respond to

Defendants Counterclaims is **GRANTED**.  The deadline for Plaintiff to file their response to

Defendants Counterclaims is extended up to and including October 9, 2007.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-CV-176 (TJW) |
| | § | |
| LG PHILIPS LCD CO., LTD., ET AL., | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

Before the Court is Defendants' Motion for Leave to File Response to Plaintiff's Sur-reply

(Docket Entry No. 22) and related briefing.  The court hereby:

(1)    GRANTS the Motion, and

(2)    ORDERS the Plaintiff, should it choose to respond, to file a response to Defendants'

Response to Plaintiff's Sur-reply Regarding the Motion to Transfer this Case to

Delaware within five (5) business days of this order.  Such response should not

exceed two (2) pages.

It is so ORDERED.

SIGNED this 23rd day of August, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHI MEI OPTOELECTRONICS CORPORATION,** a Taiwan Corporation | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | |
| **LG.PHILIPS LCD CO., LTD,** a Korean Corporation, | ) ) ) | Civil Action No. 2:07-cv-176-TJW |
| **and** | ) | **JURY TRIAL DEMANDED** |
| **LG.PHILIPS LCD AMERICA, INC,** a California Corporation, | ) ) ) | |
| **Defendants.** | ) ) | |

**LG. PHILIPS LCD CO., LTD., and
LG.PHILIPS LCD AMERICA, INC.,**

**Counterclaim Plaintiffs,**

**v.**

**CHI MEI OPTOELECTRONICS
CORPORATION; and CHI MEI
OPTOELECTRONICS USA, INC., a
Delaware Corporation,**

**Counterclaim Defendants.**

## ORDER

The parties' Agreed and Stipulated Motion for Extension of Time to Respond to

Defendants Counterclaims is **GRANTED**. The deadline for Plaintiff to file their response to

Defendants Counterclaims is extended up to and including October 9, 2007.

SIGNED this 24th day of August, 2007.

_T. John Ward_
_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | ) ) ) | Case No. 2:07-cv-00176-TJW |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF CHI MEI OPTOELECTRONICS CORPORATION'S RESPONSE TO**

**<u>DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING ITS MOTION TO TRANSFER</u>**

Defendants' supplemental brief on its motion to transfer is limited to a single substantive argument:  that this Court need not perform a "relation back" analysis to determine whether LPL's later-filed second amended complaint in Delaware is entitled to priority over CMO's earlier-filed action here because Judge Shabaz already performed this analysis in *AU Optronics Corp. v. LG.Philips LCD Co*.  As CMO explained in its opposition brief (and Defendants do not – and cannot – dispute), pursuant to Federal Rule of Civil Procedure 15(c)(2), LPL's amended pleading "relates back" to the date of the original pleading only if the claims from its amended pleading "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading."  Because CMO filed suit on its patents well before the date of LPL's second amended complaint, Defendants must rely on the "relation back" test to try to claim priority under the "first-to-file" rule.

LPL knows it cannot satisfy the "relation back" test because the new patent claims in its second amended complaint involve different patents, inventors, patent families, and accused products than its original claims.  It therefore tries to distract this Court from applying the "relation back" test by arguing that Judge Shabaz already did so, and that he rejected CMO's arguments.  Defendants are wrong.  Neither CMO nor its patents were at issue before Judge Shabaz, so he had no occasion to examine CMO's patents, much less compare them to the LPL patents at issue.

The portion of Judge Shabaz's decision Defendants cite in their response does not refer at all to CMO's patents or to the merits of the "relation back" test.  Rather, it is a statement of the general rule – with which CMO agrees – that it is possible for a party to claim priority under the "first-to-file" rule based on an amended (and later-filed) pleading.  Indeed, the question of whether an amended pleading is entitled to priority based on an earlier pleading is determined by applying Rule 15's "relation back" test.  While Defendants' cite the general rule with which CMO agrees, they fail to provide any citation showing that Judge Shabaz applied the "relation back" test to the CMO patent claims.  Defendants did not provide this citation because none exists.  As CMO explained in its reply brief, Judge Shabaz never considered claims relating to CMO's patents, and he thus could not have rejected CMO's arguments relating to those claims.

Moreover, Judge Shabaz did not order a transfer based on the "first-to-file" rule, but, instead relied on 28 U.S.C. § 1404.  The facts relating to a § 1404 analysis are significantly different in this

case.  For example, *AU Optronics* expressly notes that Defendants did not maintain offices in Wisconsin or Delaware.  Defendants do, however, maintain a sales representative in Plano and have two sales offices in Texas.  CMO's U.S. subsidiary also has two sales offices in Texas.  As another example, in *AU Optronics*, the party opposing transfer voluntarily agreed to not to contest personal jurisdiction in Delaware (*see* April 11, 2007 Stipulation (attached ex. A)), but CMO has contested personal jurisdiction in Delaware.  A § 1404 transfer requires that the case "might have been brought" in Delaware, and without personal jurisdiction over CMO, this case could not have been brought in Delaware.  Thus, unlike in *AU Optronics*, the facts in this case relevant to the § 1404 analysis weigh decidedly against transfer.

Defendants also accuse CMO of not being forthright with the Court , but they do so by taking CMO's statements out of context.  CMO told Defendants that it would not oppose Defendants' motion for leave to file its second amended complaint "if it is properly styled and **does not seek treatment nunc pro tunc**."  June 5, 2007 letter to Bono at 2 (attached as Ex. B).  But Defendants have consistently attempted to mischaracterize their second amended complaint as a "first" amended complaint, and have sought to manufacture an earlier priority date for their claims.  CMO has opposed – and will continue to oppose – this type of  procedural gamesmanship.

Date:  August 30, 2007                              Respectfully submitted,


                                   By:  ____/s/ Melissa R. Smith_____ _
                                        Melissa R. Smith
                                        LEAD ATTORNEY
                                        State Bar No. 24001351
                                        Harry L. Gillam, Jr.
                                        State Bar No. 07921800
                                        GILLAM & SMITH, L.L.P.
                                        303 South Washington Avenue
                                        Marshall, Texas 75670
                                        Telephone: (903) 934-8450
                                        Facsimile: (903) 934-9257

                                        *Of Counsel:*

                                        Jonathan S. Kagan (Pro  Hac Vice)
                                        IRELL & MANELLA LLP
                                        1800 Avenue of the Stars, Suite 900
                                        Los Angeles, California 90067-4276

Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

**ATTORNEYS FOR PLAINTIFF,
CHI MEI OPTOELECTRONICS
CORPORATION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by United States mail on this the 30th day of August, 2007.

_____/s/ Melissa R. Smith_____
Melissa R. Smith

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 2:07-cv-00176-TJW |

### PLAINTIFF CHI MEI OPTOELECTRONICS CORPORATION'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING ITS MOTION TO TRANSFER

**ADDITIONAL ATTACHMENTS TO PLAINTIFFS RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING ITS MOTION TO TRANSFER**

**Index of Additional Attachments to Main Document**

## Exhibit A
## Exhibit B

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 4th day of September, 2007.

 

                           /s/ _____
                           Melissa R. Smith

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG.PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-726-JJF |
| | ) | |
| CHI MEI OPTOELECTRONICS CORPORATION, | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| AU OPTRONICS CORPORATION AMERICA, | ) | |
| TATUNG COMPANY, | ) | |
| TATUNG COMPANY OF AMERICA, INC., and | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATION AND AGREEMENT NOT TO CONTEST PERSONAL JURISDICTION
OR SUFFICIENCY OF PROCESS OR SUFFICIENCY OF SERVICE OF PROCESS
AND TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

IT IS HEREBY STIPULATED by and between the plaintiff, LG.Philips LCD

Co., Ltd. ("LG.Philips"), and the defendants AU Optronics Corporation and AU

Optronics Corporation America (collectively, the "AUO Entities"), as follows:

(1) The AUO Entities agree not to contest either personal jurisdiction or

sufficiency of process or sufficiency of service of process; and

(2) The time for the AUO Entities to move, answer, or otherwise plead in

response to the Complaint is extended to and including June 5, 2007.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

THE BAYARD FIRM

/s/ *Richard D. Kirk*
_____

Richard D. Kirk (#0922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box. 25130
Wilmington, DE 19899-5130
(302) 655-5000
*rkirk@bayardfirm.com*
*astitzer@bayardfirm.com*

OF COUNSEL:

MCKENNA LONG & ALDRIDGE LLP
Gaspare J. Bono
Matthew T. Bailey
R. Tyler Goodwyn
Lora A. Brzezynski
Cass W. Christenson
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

*Attorneys for Plaintiff,*
*LG.Philips LCD Co., Ltd.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen L. Pascale*
_____

John W. Shaw (#3362)
Karen L. Pascale (#2903)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
*jshaw@ycst.com*
*kpascale@ycst.com*

OF COUNSEL:

PAUL HASTINGS JANOFSKY & WALKER LLP
Vincent K. Yip
Peter J. Wied
Jay C. Chiu
Hua Chen
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000

*Attorneys for Defendants*
*AU Optronics Corporation and*
*AU Optronics Corporation America*

SO ORDERED this _____ day of _____, 2007.

_____
        UNITED STATES DISTRICT JUDGE

656823-1

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on April 11, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard D. Kirk [rkirk@bayardfirm.com]
> Ashley B. Stitzer [astitzer@bayardfirm.com]
> THE BAYARD FIRM
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899-5130
> (302) 655-5000
> *Attorneys for Plaintiff, LG.Philips LCD Co., Ltd.*

> Philip A. Rovner [provner@potteranderson.com]
> David E. Moore [dmoore@potteranderson.com]
> POTTER, ANDERSON & CORROON
> 6th Floor, Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE 19801
> *Attorneys for Defendant Chi Mei Optoelectronics Corporation*

> Edmond D. Johnson [johnsone@pepperlaw.com]
> PEPPER HAMILTON LLP
> 1313 Market Street, Suite 5100
> P.O. Box 1709
> Wilmington, DE 19899-1709
> *Attorneys for Defendant ViewSonic Corporation*

I further certify that I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

*By E-mail*

Gaspare J. Bono [gbono@mckennalong.com]
Matthew T. Bailey [mbailey@mckennalong.com]
R. Tyler Goodwyn, IV [tgoodwyn@mckennalong.com]
Lora A. Brzezynski [lbrzezynski@mckennalong.com]
Cass W. Christenson [cchristenson@mckennalong.com]
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500
    *Attorneys for Plaintiff, LG.Philips LCD Co., Ltd.*

Kenneth R. Adamo [kradamo@jonesday.com]
Robert C. Kahrl [rckahrl@jonesday.com]
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
(216) 586-3939
    *Attorneys for Defendant Chi Mei Optoelectronics Corporation*

John N. Zarian [jnzarian@stoel.com]
Samia E. McCall [semccall@stoel.com]
Matthew D. Thayne [mdthayne@stoel.com]
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID  83702
(208) 389-9000
    *Attorneys for Defendant ViewSonic Corporation*

YOUNG CONAWAY STARGATT & TAYLOR LLP

April 11, 2007                    /s/ *Karen L. Pascale*
                    John W. Shaw (No. 3362) *[jshaw@ycst.com]*
                    Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
                    The Brandywine Building
                    1000 West St., 17th Floor
                    P.O. Box 391
                    Wilmington, Delaware 19899-0391
                    Phone:  302-571-6600
                        *Attorneys for Defendants*
                        *AU Optronics Corporation and*
                        *AU Optronics Corporation America*

DB02:5897686.1                                                    065944.1001

EXHIBIT "B"

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number:  (216) 586-7177
rckahrl@jonesday.com

JP027128/1522428                    June 5, 2007
987893-600001

**VIA ELECTRONIC MAIL**

Gaspare J. Bono, Esq.
McKenna Long & Aldridge
1900 K Street, NW
Washington, D.C. 20006

Re:    **LG. Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,**
Civil Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Bono:

This letter responds further to your letter of May 24.  Please see my earlier response dated May 29.

CMO intends to present its response to LPL's opposition in its reply brief, not in a letter exchange with you.  It is worth pointing out at this point that LPL's opposition brief repeatedly states that CMO has sold products in Delaware, but when we examined the supporting papers, we did not find any evidence of any sales by CMO.  Instead, we found in your papers some evidence of sales by others in Delaware.  This evidence does not meet the test of personal jurisdiction set forth by the Federal Circuit in the *CEA* case.  Indeed, LPL's brief concludes by asking for discovery on the jurisdictional issue, so LPL is aware that it has not adequately addressed the personal jurisdiction test of *CEA*.

LPL did not have enough confidence in its position on personal jurisdiction to stand on its pleadings, but instead filed on the same day as its opposition to CMO's motion a "first amended complaint" adding as an additional defendant Chi Mei Optoelectronics USA, Inc. ["CMO USA"].  Apparently the decision to add CMO USA was made in haste, because LPL either ignored or forgot that it had already filed a "first amended complaint" on April 11, and therefore could not file an additional amended complaint without permission of the Court, pursuant to Rule 15(a), Fed. R. Civ. P.  Permission of the Court was neither sought nor received.  Instead, the second amended complaint was mislabeled as the "First Amended Complaint," suggesting to the clerk's office that the complaint could be filed without an accompanying order granting leave to file it.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Gaspare J. Bono, Esq.
June 5, 2007
Page 2

You knew before you filed LPL's first amended complaint on April 11 about the existence of CMO USA because we had already described CMO USA in CMO's motion to dismiss. LPL's first amended complaint added new claims against another defendant, AU Optronics, but did not seek to add a new defendant to this case. Since you passed up the opportunity to add CMO USA in LPL's only opportunity to amend the complaint as a matter of course, we surmise that your hasty filing of a second "First Amended Complaint" without complying with Rule 15(a) was done after assessing LPL's inability to hold jurisdiction over CMO on the papers you were submitting the same day. Indeed, we notice that the second "First Amended Complaint" omitted claims that were added in the April 11 "First Amended Complaint."

Now it will be necessary for LPL to seek permission of the Court to file its second amended complaint. Hopefully it will be properly styled as a "Second Amended Complaint." If it is properly styled and does not seek treatment nunc pro tunc, we would not oppose LPL's motion for leave to file and serve it, but we would need to review the motion prior to your filing it. We expect that you will then attempt to make proper service, although CMO will not concede personal jurisdiction, and will move to dismiss again if service does not comply with the statutes and rules governing service.

You might also choose to take this opportunity to fix the inconsistent paragraph numbering that exists between LPL's First Amended Complaint filed April 11 and its second "First Amended Complaint" dated May 22. These inconsistencies are the subject of the Tatung defendants' motion for a more definite statement filed earlier today.

Very truly yours,

Robert C. Kahrl

cc:     Richard D. Kirk, Esq. (via e-mail)
        Philip A. Rovner, Esq. (via e-mail)

**Appendix K**                                                    Revised: 1/24/07

FILED-CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**Marshall   DIVISION**
**APPLICATION TO APPEAR PRO HAC VICE**

2007 OCT -4  PM 2:01

TX EASTERN-MARSHALL

BY_____

1 This application is being made for the following: Case #  2:07-cv-00176-IJW _____

Style:   CHI MEI OPTOELECTRONICS CORP. v. LG.PHILIPS LCD CO., LTD.

2.  Applicant is representing the following party/ies:  PLAINTIFF CHI MEI OPTOELECTRONICS CORP.

3. Applicant was admitted to practice in  California __ (state) on  1/12/2001 _____ (date).

4.  Applicant is in good standing and is otherwise eligible to practice law before this court

5.  Applicant is not currently suspended or disbarred in any other court

6.  Applicant has (has not) had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7.  Applicant has (has not ever) had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page

8.  Applicant has (has not) been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle).   If so, give complete information on a separate page

9.   Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:

U.S. District Court, Central and Northern Districts of California; U.S. Court of Appeals for Federal Circuit

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d))

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only

**Application Oath:**

    I,  Alexander Chester Giza _____ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States

Date 9/28/07 _____                      Signature  _Alexander C.D. Giza_

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**APPLICATION TO APPEAR PRO HAC VICE** (Continued)

Name (please print)  Alexander Chester Giza

State Bar Number  CA Bar #212327

Firm Name:    Irell & Manella LLP

Address/P.O. Box:    1800 Avenue of the Stars, Suite 900

City/State/Zip: Los Angeles, CA  90067-4276

Telephone #:    (310) 203-7143

Fax #:    (310) 203-7199

E-mail Address:  agiza@irell.com

Secondary E-Mail Address:

Applicant is authorized to enter an appearance as counsel for the party/parties listed above.  This

application has been approved for the court on: _____ 10/4/07 _____

_____
David J. Maland, Clerk
U.S. District Court, Eastern District of Texas

By _____
Deputy Clerk

**Receipt for Payment**                                       Receipt No:  2-1-0003084

# United States District Court

for the

Eastern District of Texas at Marshall

Date:                    **Thursday, October 4, 2007**

Received from:

| Account | | Description |
| --- | --- | --- |
| 085000 | _ | Attorney Admission Fees |
| 086400 | _ | New Case Fee |
| 086900 | _ | Filing Fees |
| 121000 | _ | Conscience Fund |
| 129900 | _ | Gifts |
| 143500 | _ | Interest |
| 322340 | _ | Sale of Publications |
| 322350 | _ | Copy Fees |
| 322360 | _ | Miscellaneous Fees |
| 322380 | _ | Recoveries of Court Costs |
| 322386 | _ | Cost of Prosecution |
| 504100 | _ | Crime Victims Fund |
| 508800 | _ | Immigration Fees |
| 510000 | _ | Civil Filing Fee (1/2) |
| 5100PL | _ | Partial Filing Fee (PLRA) |
| 510100 | _ | Registry Fee |
| 604700 | _ | Registry Funds/General and Special Funds |
| 613300 | _ | Unclaimed Monies |
| 6855XX | _ | Deposit Funds |

**GILLAM SMITH**

**MARSHALL TX**

| Account | Amount |
| --- | --- |
| 6855XX | $25.00 |
| | |
| | |
| **Total** | $25.00 |

Payment method:            **Check**

Case or other reference:   **2:007cv176  PHV Giza**

Comments:                  **CK 2981**

Received by:               **pa**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation<br><br>           Plaintiff,<br>    v.<br><br>LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation,<br><br>        Defendants. | Civil Action No. 2:07-CV-00176-TJW<br><br>**JURY TRIAL DEMANDED** |
| LG.PHILIPS LCD CO., LTD., and LG.PHILIPS LCD AMERICA, INC.,<br><br>        Counterclaim Plaintiffs,<br><br>    v.<br><br>CHI MEI OPTOELECTRONICS CORPORATION; and CHI MEI OPTOELECTRONICS USA, INC., a Delaware Corporation<br><br>        Counterclaim Defendants. | **JURY TRIAL DEMANDED** |

**CHI MEI OPTOELECTRONICS CORPORATION'S AND
CHI MEI OPTOELECTRONICS USA, INC.'S
REPLY TO LG.PHILIPS LCD COMPANY'S COUNTERCLAIMS AND
CHI MEI OPTOELECTRONICS CORPORATION'S RELATED COUNTERCLAIMS**

Plaintiff and Counterclaim Defendant Chi Mei Optoelectronics Corp. ("CMO") and Counterclaim Defendant Chi Mei Optoelectronics USA, Inc. ("CMO USA") (collectively "Counterdefendants") hereby reply to the allegations of Defendant and Counterclaim Plaintiff LG.Philips LCD Co., LTD. ("LPL") set forth in Paragraphs 48-104 of its Counterclaims ("LPL Counterclaims").  CMO also asserts additional related counterclaims.

**COUNTERDEFENDANTS' REPLY TO THE LPL COUNTERCLAIMS**

1.     Answering Paragraph 48 of the LPL Counterclaims, Counterdefendants admit that LPL asserts counterclaims against Counterdefendants but deny that LPL is entitled to any of the relief it seeks.  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

2.     Answering Paragraph 49 of the LPL Counterclaims, Counterdefendants admit that LPL is a company registered under the laws of Korea with its head office at 18th Floor, West Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of Korea 150-721.

3.     Answering Paragraph 50 of the LPL Counterclaims, Counterdefendants admit that CMO is a Taiwanese corporation having its principal place of business in Tainan, Taiwan 74147, R.O.C.  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

4.     Answering Paragraph 51 of the LPL Counterclaims, Counterdefendants admit that CMO USA is a domestic subsidiary of CMO and that CMO USA is a Delaware corporation having its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

5.     Answering Paragraph 52 of the LPL Counterclaims, Counterdefendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore deny them.

6.     Answering Paragraph 53 of the LPL Counterclaims, Counterdefendants admit this paragraph.

7.     Answering Paragraph 54 of the LPL Counterclaims, Counterdefendants admit that LPL purports to base its Counterclaims on 35 U.S.C. § 100 *et seq*.  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

8.     Answering Paragraph 55 of the LPL Counterclaims, Counterdefendants admit there is a justiciable controversy between LPL and CMO regarding the validity and infringement

of the claims of United States Patent Nos. 6,008,786 ("the '786 Patent"); 6,013,923 ("the '923 Patent"); 5,619,352 ("the '352 Patent"); and 6,734,926 ("the '926 Patent") (collectively "the CMO Patents").  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

9.      Answering Paragraph 56 of the LPL Counterclaims, Counterdefendants admit that LPL alleges that the Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Insofar as the allegations of this paragraph purport to state legal conclusions, no response thereto is required.

10.     Answering Paragraph 57 of the LPL Counterclaims, Counterdefendants admit that LPL alleges that the Court has jurisdiction over the Counterclaims for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a), and under 28 U.S.C. § 1331.   Insofar as the allegations of this paragraph purport to state legal conclusions, no response thereto is required.  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

11.     Answering Paragraph 58 of the LPL Counterclaims, Counterdefendants admit the allegations of this paragraph, except that, insofar as the allegations of this paragraph purport to state legal conclusions, no response thereto is required.  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

12.     Answering Paragraph 59 of the LPL Counterclaims, Counterdefendants deny the allegations in this paragraph.

## THE LPL PATENTS

13.     Answering Paragraph 60 of the LPL Counterclaims, Counterdefendants admit Exhibit A to the LPL Counterclaims purports to be a copy of United States Patent No. 5,905,274 ("the '274 Patent") and that the '274 Patent states on its face that it was issued on May 18, 1999, and that it is titled "Thin-Film Transistor And Method Of Making Same."  Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

14.    Answering Paragraph 61 of the LPL Counterclaims, Counterdefendants admit that Exhibit B to the LPL Counterclaims purports to be a copy of United States Patent No. 6,815,321 ("the '321 Patent") and that the '321 Patent states on its face that it was issued on November 9, 2004, and that it is titled "Thin-Film Transistor And Method of Making Same." Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

15.    Answering Paragraph 62 of the LPL Counterclaims, Counterdefendants admit that Exhibit C to the LPL Counterclaims purports to be a copy of United States Patent No. 7,176,489 ("the '489 Patent") and that the '489 Patent states on its face that it was issued on February 13, 2007, and that it is titled "Thin-Film Transistor And Method of Making Same." Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

16.    Answering Paragraph 63 of the LPL Counterclaims, Counterdefendants admit that Exhibit D to the LPL Counterclaims purports to be a copy of United States Patent No. 6,803,984 ("the '984 Patent") and that the '984 Patent states on its face that it was issued on October 12, 2004, and that it is titled "Method and Apparatus for Manufacturing Liquid Crystal Display Device Using Serial Production Processes." Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

17.    Answering Paragraph 64 of the LPL Counterclaims, Counterdefendants admit that Exhibit E to the LPL Counterclaims purports to be a copy of United States Patent No. 7,218,374 ("the '374 Patent") and that the '374 Patent states on its face that it was issued on May 15, 2007, and that it is titled "Liquid Crystal Display Device and Method of Manufacturing the Same." Except as expressly admitted herein, Counterdefendants deny each and every allegation contained in this paragraph.

18.    Answering Paragraph 65 of the LPL Counterclaims, Counterdefendants do not have sufficient information to either admit to or deny this paragraph, and on that basis denies it.

19.     Answering Paragraph 66 of the LPL Counterclaims, Counterdefendants deny the allegations in this paragraph.

## RESPONSE TO COUNTERCLAIM COUNT I
## INFRINGEMENT OF THE '274 PATENT

20.     Answering Paragraph 67 of the LPL Counterclaims, Counterdefendants refer to and incorporate their above responses to Paragraphs 48-66 of the LPL Counterclaims.

21.     Answering Paragraph 68 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

22.     Answering Paragraph 69 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

23.     Answering Paragraph 70 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

24.     Answering Paragraph 71 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

## RESPONSE TO COUNTERCLAIM COUNT II
## INFRINGEMENT OF THE '321 PATENT

25.     Answering Paragraph 72 of the LPL Counterclaims, Counterdefendants refer to and incorporate their above responses to Paragraphs 48-71 of the LPL Counterclaims.

26.     Answering Paragraph 73 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

27.     Answering Paragraph 74 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

28.     Answering Paragraph 75 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

29.     Answering Paragraph 76 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

**RESPONSE TO COUNTERCLAIM COUNT III**
**INFRINGEMENT OF THE '489 PATENT**

30.     Answering Paragraph 77 of the LPL Counterclaims, Counterdefendants refer to and incorporate their above responses to Paragraphs 48-76 of the LPL Counterclaims.

31.     Answering Paragraph 78 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

32.     Answering Paragraph 79 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

33.     Answering Paragraph 80 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

34.     Answering Paragraph 81 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

**RESPONSE TO COUNTERCLAIM COUNT IV**
**INFRINGEMENT OF THE '984 PATENT**

35.     Answering Paragraph 82 of the LPL Counterclaims, Counterdefendants refer to and incorporate their above responses to Paragraphs 48-81 of the LPL Counterclaims.

36.     Answering Paragraph 83 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

37.     Answering Paragraph 84 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

38.     Answering Paragraph 85 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

39.     Answering Paragraph 86 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

**RESPONSE TO COUNTERCLAIM COUNT V**
**INFRINGEMENT OF THE '374 PATENT**

40.     Answering Paragraph 87 of the LPL Counterclaims, Counterdefendants refer to and incorporate their above responses to Paragraphs 48-86 of the LPL Counterclaims.

41.    Answering Paragraph 88 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

42.    Answering Paragraph 89 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

43.    Answering Paragraph 90 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

44.    Answering Paragraph 91 of the LPL Counterclaims, Counterdefendants deny the allegations of this paragraph.

**RESPONSE TO COUNTERCLAIM COUNT VI
CLAIM FOR DECLARATORY JUDGMENT OF INVALIDITY OF
THE '786 PATENT, THE '923 PATENT, THE '352 PATENT,
AND THE '926 PATENT AGAINST CMO**

45.    Answering Paragraph 92 of the LPL Counterclaims, CMO refers to and incorporates Counterdefendants' above responses to Paragraphs 48-91 of the LPL Counterclaims.

46.    Answering Paragraph 93 of the LPL Counterclaims, CMO admits the allegations of this paragraph.

47.    Answering Paragraph 94 of the LPL Counterclaims, CMO denies the allegations of this paragraph.

48.    Answering Paragraph 95 of the LPL Counterclaims, CMO denies the allegations of this paragraph.

49.    Answering Paragraph 96 of the LPL Counterclaims, CMO denies the allegations of this paragraph.

50.    Answering Paragraph 97 of the LPL Counterclaims, CMO denies the allegations of this paragraph.

51.    Answering Paragraph 98 of the LPL Counterclaims, CMO admits that it has asserted the CMO Patents against LPL and LG.Philips LCD America, Inc. ("LPLA") (collectively "Defendants").  Except as expressly admitted herein, CMO denies each and every allegation contained in this paragraph.

**RESPONSE TO COUNTERCLAIM COUNT VII**
**CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF**
**THE '786 PATENT, THE '923 PATENT, THE '352 PATENT,**
**AND THE '926 PATENT AGAINST CMO**

52.    Answering Paragraph 99 of the LPL Counterclaims, CMO refers to and

incorporates Counterdefendants' above responses to Paragraphs 48-98 of the LPL Counterclaims.

53.    Answering Paragraph 100 of the LPL Counterclaims, CMO denies the allegations

of this paragraph.

54.    Answering Paragraph 101 of the LPL Counterclaims, CMO denies the allegations

of this paragraph.

55.    Answering Paragraph 102 of the LPL Counterclaims, CMO denies the allegations

of this paragraph.

56.    Answering Paragraph 103 of the LPL Counterclaims, CMO denies the allegations

of this paragraph.

57.    Answering Paragraph 104 of the LPL Counterclaims, CMO admits that it has

asserted the CMO Patents against Defendants.  Except as expressly admitted herein, CMO denies

each and every allegation contained in this paragraph.

## AFFIRMATIVE DEFENSES

Counterdefendants assert the following affirmative defenses.  Counterdefendants also

reserve the right to add defenses that may be supported by the facts upon the completion of

discovery.

### First Affirmative Defense

58.    LPL has failed to state a claim for which relief can be granted.

### Second Affirmative Defense

59.    Counterdefendants do not infringe and have not infringed any claims of the '274

Patent, the '321 Patent, the '489 Patent, the '984 Patent, or the '374 Patent (collectively "the LPL

Patents"), either literally or under the doctrine of equivalents.

## Third Affirmative Defense

60.    The claims of the LPL Patents are invalid for failing to comply with one or more provisions of the Patent Laws of the United States of America, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## Fourth Affirmative Defense

61.    Counterdefendants have not directly or indirectly contributed to infringement of, nor induced another to infringe, the LPL Patents.

## Fifth Affirmative Defense

62.    On information and belief, LPL has failed properly to mark commercial embodiments of its patented products in accordance with 35 U.S.C. § 287, and therefore is precluded from recovering damages pursuant to Section 287.

## Sixth Affirmative Defense

63.    LPL's claims for relief are barred, in whole or in part, by the doctrines of laches, estoppel, waiver, and acquiescence.

## Seventh Affirmative Defense

64.    LPL is not entitled to injunctive relief because, among other things, any injury to it is not immediate or irreparable, and LPL has an adequate remedy at law.

## PRAYER FOR RELIEF ON LPL'S COUNTERCLAIMS

WHEREFORE, Counterdefendants demand judgment against LPL by:

a.    An order and decree that the CMO Patents are infringed by LPL;

b.    An order and decree that the CMO Patents are not invalid;

c.    An order and decree that the LPL Patents are not infringed by CMO;

d.    An order and decree that the LPL Patents are invalid;

e.    Granting the relief requested in CMO's Complaint against Defendants.

f.    Dismissing Defendants' Counterclaims with prejudice;

g.    A determination that Defendants take nothing;

h.    A determination that no injunctive relief issues to Defendants;

i.      A determination that no damages be awarded to Defendants;

j.      A determination that no costs or attorneys' fees be awarded to Defendants; and

k.      Such other and further relief as the Court may deem just and proper.

## II.    CMO'S COUNTERCLAIMS

CMO, upon knowledge with respect to itself, and upon information and belief with respect to all other matters, for its Counterclaims against Defendants alleges as follows:

1.      CMO's Counterclaims are brought for declaratory judgments of noninfringement and invalidity of the LPL Patents, arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. and the Patent Laws of the United States of America, 35 U.S.C. §§ 1 et seq.

2.      In addition, CMO brings a counterclaim of patent infringement of U.S. Patent Nos. 6,134,092 ("the '092 Patent") and 7,280,179 ("the '179 Patent"), arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 1 et seq.

3.      This Court has subject matter jurisdiction over CMO's Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and because LPL has accused CMO of infringing the LPL Patents.

4.      This Court has personal jurisdiction over the Defendants because, among other things, Defendants have submitted themselves to the jurisdiction of this Court

5.      Chi Mei Optoelectronics Corp. ("CMO") is a corporation organized and existing under the laws of Taiwan, having a principal place of business at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan Country, 74147 Taiwan R.O.C.

6.      Defendant LG.Philips LCD Co., Ltd ("LPL") is a Korean corporation having its head office at 18th Floor, West Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of Korea 150-721.

7.      Defendant LG.Philips LCD America, Inc. ("LPLA") is a wholly-owned subsidiary of LPL.  LPLA is a corporation organized and existing under the laws of California, having a principal place of business at 150 E. Brokaw Rd., San Jose, CA 95112.

8.      CMO is informed and believes, and thereon alleges, that LPL and LPLA have placed infringing devices into the stream of commerce by shipping those products into this judicial district or knowing that the devices would be shipped into this judicial district.

9.      CMO is informed and believes, and thereon alleges, that LPL has ongoing and systematic contacts throughout the United States.  LPL has sales offices in California, Texas, North Carolina, and Illinois, and it has continuous and systematic contacts with this judicial district and elsewhere in the United States for the purpose of, among other things, meetings with employees of its subsidiary and promoting the sale of its products.

10.     CMO is informed and believes, and thereon alleges, that LPLA has ongoing and systematic contacts throughout the United States.  LPLA has placed TFT-LCD panels and LCD modules into the stream of commerce by shipping those panels and modules into this judicial district or knowing that they would be shipped into this judicial district.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1400(b) and 1391(b)-(d) because, among other reasons, LPL is subject to personal jurisdiction in this judicial district, has committed acts of infringement in this judicial district, and is an alien subject to suit in this judicial district; and LPLA is subject to personal jurisdiction in this judicial district and has committed acts of infringement in this judicial district.

### Counterclaim Count I for Declaratory Judgment of Non-Infringement and Invalidity Against LPL

12.     CMO incorporates by reference the allegations contained in Paragraphs 1-11 of its Counterclaim as though fully set forth herein.

13.     CMO is informed and believes, and thereon alleges, that the Counterdefendants have not infringed and are not now infringing any claim of the LPL Patents, either literally or under the doctrine of equivalents.

14.     CMO is informed and believes, and thereon alleges, that each of the LPL Patents is invalid for failing to comply with one or more provisions of the Patent Laws of the United States of America, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

15.     LPL's Counterclaims, filed in the present action, accuse the Counterdefendants of infringing the LPL Patents.  Accordingly, there is an actual and substantial controversy between LPL and the Counterdefendants as to whether the LPL patents are valid and infringed.

### Counterclaim Count II for
### Infringement of the '092 Patent

16.     Counterdefendant CMO is the owner of the entire right, title and interest in and to the '092 Patent, entitled "Illumination Device for Non-emissive Displays," which was duly issued on October 17, 2000, in the name of inventors David G. Pelka, John M. Popovich, and Thomas W. Dowland, Jr., and is now assigned to CMO.  A copy of the '092 Patent is attached hereto as Exhibit A.

17.     CMO is informed and believes, and thereon alleges, that LPL and LPLA have infringed, and are currently infringing, the '092 Patent, in violation of 35 U.S.C. § 271, by making, using, offering for sale, selling and/or importing, within this judicial district and elsewhere in the United States, without license or authority from CMO, TFT-LCD panels, LCD modules, and/or components thereof falling within the scope of one or more claims of the '092 Patent.

18.     CMO is informed and believes, and thereon alleges, that LPL and LPLA actively induced and are actively inducing the infringement of the '092 Patent, in violation of 35 U.S.C. § 271(b), by actively and knowingly aiding and abetting others to make, use, offer for sale, sell and/or import within this judicial district and elsewhere in the United States, without license or authority from CMO, TFT-LCD panels, LCD modules, and/or components thereof falling within the scope of one or more claims of the '092 Patent.

19.     CMO is informed and believes, and thereon alleges, that LPL and LPLA have contributorily infringed and are currently contributorily infringing the '092 Patent, in violation of 35 U.S.C. § 271(c), by selling, offering for sale and/or importing within this judicial district and elsewhere in the United States, without license or authority from CMO, TFT-LCD panels, LCD

modules, and/or components thereof, which constitute a material part of the '092 Patent, knowing that such panels, modules, and/or components are especially made or especially adapted for use in the infringement of the '092 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

20.    CMO is informed and believes, and thereon alleges, that LPL and LPLA's infringement of the '092 Patent has been and continues to be willful and deliberate.

21.    Unless enjoined, LPL and LPLA will continue to infringe the '092 Patent, and CMO will suffer irreparable injury as a direct and proximate result of LPL's and LPLA's conduct.

22.    CMO has been damaged by LPL's and LPLA's conduct and until an injunction issues will continue to be damaged in an amount yet to be determined.

**Counterclaim Count III for
Infringement of the '179 Patent**

23.    Counterdefendant CMO is the owner of the entire right, title and interest in and to the '179 Patent, entitled "Liquid Crystal Display Cell and Method for Manufacturing Same," which was duly issued on October 9, 2007, in the name of inventors Hsin-Yi Hsu and Shang-Tai Tsai, and is now assigned to CMO.  A copy of the '179 Patent is attached hereto as Exhibit B.

24.    CMO is informed and believes, and thereon alleges, that LPL and LPLA have infringed, and are currently infringing, the '179 Patent, in violation of 35 U.S.C. § 271, by making, using, offering for sale, selling and/or importing, within this judicial district and elsewhere in the United States, without license or authority from CMO, TFT-LCD panels, LCD modules, and/or components thereof falling within the scope of one or more claims of the '179 Patent.

25.    CMO is informed and believes, and thereon alleges, that LPL and LPLA actively induced and are actively inducing the infringement of the '179 Patent, in violation of 35 U.S.C. § 271(b), by actively and knowingly aiding and abetting others to make, use, offer for sale, sell

and/or import within this judicial district and elsewhere in the United States, without license or authority from CMO, TFT-LCD panels, LCD modules, and/or components thereof falling within the scope of one or more claims of the '179 Patent.

26.     CMO is informed and believes, and thereon alleges, that LPL and LPLA have contributorily infringed and are currently contributorily infringing the '179 Patent, in violation of 35 U.S.C. § 271(c), by selling, offering for sale and/or importing within this judicial district and elsewhere in the United States, without license or authority from CMO, TFT-LCD panels, LCD modules, and/or components thereof, which constitute a material part of the '179 Patent, knowing that such panels, modules, and/or components are especially made or especially adapted for use in the infringement of the '179 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

27.     CMO is informed and believes, and thereon alleges, that LPL and LPLA's infringement of the '179 Patent has been and continues to be willful and deliberate.

28.     Unless enjoined, LPL and LPLA will continue to infringe the '179 Patent, and CMO will suffer irreparable injury as a direct and proximate result of LPL's and LPLA's conduct.

29.     CMO has been damaged by LPL's and LPLA's conduct and until an injunction issues will continue to be damaged in an amount yet to be determined.

## <u>PRAYER FOR RELIEF ON CMO'S COUNTERCLAIMS</u>

WHEREFORE, CMO demands judgment against Defendants, on its Counterclaims, as follows:

a.     That the LPL Patents are not infringed by CMO;

b.     That the LPL Patents are invalid;

c.     That CMO's '092 Patent and '179 Patent are valid;

d.     That LPL and LPLA have directly infringed the '092 Patent and the '179 Patent;

e.  That LPL and LPLA have induced the infringement of the '092 Patent and the '179 Patent;

f.  That LPL and LPLA have contributorily infringed the '092 Patent and the '179 Patent;

g.  That LPL and LPLA and their affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for them and on their behalf, or acting in concert with them directly or indirectly, be enjoined from infringing, inducing others to infringe or contributing to the infringement of the '092 Patent and the '179 Patent;

h.  That LPL and LPLA be ordered to pay compensatory damages to CMO, together with interest;

i.  That LPL and LPLA be ordered to provide an accounting;

j.  That LPL and LPLA be ordered to pay supplemental damages to CMO, together with interest;

k.  That the infringement by LPL and LPLA be adjudged willful and that the damages to CMO be increased under 35 U.S.C. § 284 to three times the amount found or measured;

l.  That this be adjudged an exceptional case pursuant to 35 U.S.C. § 285;

m.  That CMO be awarded attorneys' fees and costs; and

n.  That CMO be awarded such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Counterclaimant Chi Mei Optoelectronics hereby demands trial by jury on all issues.

Dated:  October 9, 2007                    Respectfully submitted,


                                           By:    /s/Alexander C.D. Giza
                                               Alexander C.D. Giza

                                           GILLAM & SMITH
                                           Melissa Smith (Attorney-in-Charge)
                                           303 S. Washington Ave.
                                           Marshall, TX 75670
                                           Tel: (903) 934-8450
                                           Fax: (903) 934-9257

                                           Of counsel:
                                           IRELL & MANELLA LLP
                                           Jonathan S. Kagan
                                           Alexander C.D. Giza
                                           1800 Avenue of the Stars, Suite 900
                                           Los Angeles, CA  90067

                                           Attorneys for Plaintiff and Counterdefendants
                                           Chi Mei Optoelectronics and
                                           Chi Mei Optoelectronics USA


                          **Certificate of Service**

        The undersigned certifies that the foregoing document was filed electronically in

compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who

have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P.

5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to

electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this

the 9th day of October, 2007.

                                            /s/ Alexander C.D. Giza

# EXHIBIT  A



US006134092A

# United States Patent [19]

## Pelka et al.

[11] **Patent Number:** **6,134,092**

[45] **Date of Patent:** **Oct. 17, 2000**

[54] **ILLUMINATION DEVICE FOR NON-EMISSIVE DISPLAYS**

[75] Inventors: **David G. Pelka**, Los Angeles; **John M. Popovich**, Del Mar; **Thomas W. Dowland, Jr.**, Fountain Valley, all of Calif.

[73] Assignee: **Teledyne Lighting and Display Products, Inc.**, Hawthorne, Calif.

[21] Appl. No.: **09/057,199**

[22] Filed: **Apr. 8, 1998**

[51] Int. Cl.⁷ ............................................. F21V 7/04
[52] U.S. Cl. .................................. 361/31; 361/800
[58] Field of Search ................................. 364/26, 27, 29, 364/800, 31, 545, 326, 330, 511

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| Re. 33,987 | 7/1992 | Suzawa . | |
| 1,734,834 | 11/1929 | Steward et al. | 362/300 |
| 2,448,244 | 8/1948 | Arnold | 40/546 |
| 2,761,056 | 8/1956 | Lazo | 362/26 |
| 2,907,869 | 10/1959 | Hudson et al. | 362/27 |
| 3,223,833 | 12/1965 | Protzman | 362/26 |
| 3,300,646 | 1/1967 | Casebeer | 250/228 |
| 3,349,234 | 10/1967 | Schwarz | 362/26 |
| 3,497,686 | 2/1970 | Young | 362/31 |
| 3,539,796 | 11/1970 | Zychal | 362/553 |
| 3,586,851 | 6/1971 | Rudolph | 362/293 |
| 3,610,941 | 10/1971 | West | 250/227.21 |
| 3,752,974 | 9/1973 | Baker et al. | 362/31 |
| 3,754,130 | 8/1973 | Stone et al. | 362/29 |
| 3,892,959 | 7/1975 | Pulles | 362/31 |
| 3,957,351 | 5/1976 | Stockwell | 349/62 |
| 4,011,001 | 3/1977 | Moriya | 349/65 |
| 4,043,636 | 8/1977 | Eberhardt et al. | 349/65 |
| 4,115,994 | 9/1978 | Tomlinson | 368/241 |
| 4,118,110 | 10/1978 | Saurer et al. | 249/61 |
| 4,183,628 | 1/1980 | Laesser et al. | 349/65 |
| 4,195,915 | 4/1980 | Lichty et al. | 349/11 |
| 4,212,048 | 7/1980 | Castleberry | 362/19 |
| 4,252,416 | 2/1981 | Jaccard | 349/65 |

| | | | |
|---|---|---|---|
| 4,257,084 | 3/1981 | Reynolds | 362/31 |
| 4,392,750 | 7/1983 | Mettler | 368/228 |
| 4,440,474 | 4/1984 | Tcks | 349/63 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 403 764 A1 | 12/1990 | European Pat. Off. . |
| 0 442 529 A2 | 8/1991 | European Pat. Off. . |
| 495 273 | 7/1992 | European Pat. Off. . |
| 0 531 939 A1 | 3/1993 | European Pat. Off. . |
| 0 733 928 A2 | 9/1996 | European Pat. Off. . |
| 1 450 285 | 11/1966 | France . |
| 363 3203 | 9/1986 | Germany . |
| 382 5436 | 7/1988 | Germany . |
| 63-55503 | 3/1988 | Japan . |
| 63-206713 | 8/1988 | Japan . |
| 2-143202 | 6/1990 | Japan . |
| 2 283 849 | 5/1995 | United Kingdom . |
| WO 92/13232 | 8/1992 | WIPO . |
| WO 97/30431 | 8/1997 | WIPO . |

OTHER PUBLICATIONS

*3M Optical Systems*, Brightness Enhancement Film (BEF), 2 pgs., 1993.

*Primary Examiner*—Sandra O'Shea
*Assistant Examiner*—Hargobind S. Sawhney
*Attorney, Agent, or Firm*—Knobbe, Martens Olson & Bear, LLP

[57] **ABSTRACT**

An illumination device comprises a waveguide having a peripheral edge. A series of point light sources are mounted in spaced relationship adjacent a peripheral portion of the waveguide. A series of diffusive reflective surfaces, preferably formed by posts, are disposed adjacent the peripheral portion of the waveguide, between pairs of the point light sources. The diffusive reflective surfaces are oriented relative to the series of point light sources and the waveguide so as to introduce light into regions of the waveguide between pairs of the point light sources, whereby the peripheral portion of the waveguide is substantially uniformly illuminated.

**29 Claims, 9 Drawing Sheets**



**6,134,092**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,453,200 | 6/1984 | Trcka et al. | 362/31 |
| 4,528,617 | 7/1985 | Blackington | 362/558 |
| 4,560,264 | 12/1985 | Kitazawa et al. | 396/374 |
| 4,616,295 | 10/1986 | Jewell et al. | 362/31 |
| 4,649,462 | 3/1987 | Dabrowolski et al. | 362/2 |
| 4,706,173 | 11/1987 | Hamada et al. | 362/341 |
| 4,714,983 | 12/1987 | Lang | 362/27 |
| 4,720,706 | 1/1988 | Stine | 345/84 |
| 4,723,840 | 2/1988 | Humbert et al. | 349/68 |
| 4,735,495 | 4/1988 | Henkes | 349/62 |
| 4,737,896 | 4/1988 | Mochizuki et al. | 362/301 |
| 4,766,526 | 8/1988 | Morimoto et al. | 362/255 |
| 4,798,448 | 1/1989 | van Raalte | 349/62 |
| 4,826,294 | 5/1989 | Imoto | 368/67 |
| 4,875,200 | 10/1989 | Tillery | 368/67 |
| 4,910,652 | 3/1990 | Rhine | 362/234 |
| 4,914,553 | 4/1990 | Hamada et al. | 362/560 |
| 4,945,349 | 7/1990 | Sanai | 349/58 |
| 4,972,394 | 11/1990 | DiMarco | 368/227 |
| 4,998,804 | 3/1991 | Horiuchi | 349/64 |
| 5,008,658 | 4/1991 | Russay et al. | 345/87 |
| 5,029,045 | 7/1991 | Sanai et al. | 362/26 |
| 5,029,986 | 7/1991 | De Vaan | 349/113 |
| 5,050,946 | 9/1991 | Hathaway et al. | 385/33 |
| 5,070,431 | 12/1991 | Kitazawa et al. | 349/31 |
| 5,083,240 | 1/1992 | Pasco | 362/26 |
| 5,128,783 | 7/1992 | Abileah et al. | 349/162 |
| 5,161,041 | 11/1992 | Abileah et al. | 349/62 |
| 5,169,230 | 12/1992 | Palmer | 362/350 |
| 5,202,950 | 4/1993 | Arego et al. | 385/146 |
| 5,237,641 | 8/1993 | Jacobson et al. | 385/146 |
| 5,303,322 | 4/1994 | Winston et al. | 385/146 |
| 5,339,294 | 8/1994 | Rodgers | 368/67 |
| 5,365,411 | 11/1994 | Rycroft | 362/800 |
| 5,410,453 | 4/1995 | Ruskouski | 362/20 |
| 5,440,197 | 8/1995 | Gleckman | 313/110 |
| 5,481,637 | 1/1996 | Whitehead | 385/125 |
| 5,485,291 | 1/1996 | Qiao et al. | 349/62 |
| 5,575,549 | 11/1996 | Ishikawa et al. | 362/31 |
| 5,618,096 | 4/1997 | Parker et al. | 362/31 |
| 5,655,832 | 8/1997 | Pelka et al. | 362/296 |
| 5,684,354 | 11/1997 | Gleckman | 313/110 |
| 5,721,795 | 2/1998 | Pelka | 349/65 |
| 5,806,995 | 9/1998 | Tsushima et al. | 400/200 |
| 5,883,684 | 3/1999 | Millikan et al. | 349/65 |
| 6,007,209 | 12/1999 | Pelka | 362/30 |



*FIG. 1A*



*FIG. 1B*



*FIG. 2*



FIG. 3



FIG. 4



FIG. 5



FIG. 6A



FIG. 6B



*F/G. 7*



*F/G. 8*



FIG. 9



FIG. 10



*FIG. 11*



*FIG. 12*



FIG. 13



FIG. 13A



*F/G.   14*

6,134,092

1

## ILLUMINATION DEVICE FOR NON-EMISSIVE DISPLAYS

### BACKGROUND OF THE INVENTION

The present invention relates generally to a device for illuminating a display, and, more particularly, to an illumination device which uniformly injects light into an optical cavity, such as a waveguide.

Illumination devices are used to illuminate non-emissive displays, such as LCD displays for personal digital assistants or cellular phones. One type of illumination device comprises a waveguide having a plurality of light sources disposed along the periphery of the waveguide. The light sources are energized and the emitted light illuminates the waveguide.

It is highly desirable for the illumination to be bright and substantially uniform across the area of the display. However, in prior art, the intensity of the light from the light sources tends to decrease as the distance from the light source increases, thereby causing undesirable bright spots along the periphery of the display where the light sources are mounted.

Miniature fluorescent tubes are commonly used as light sources. Such tubes do not produce much heat, and thus, minimize heat build-up. However, they are not very bright. Solid state point light sources, such as LEDs, are relatively bright, but have relatively small thermal mass which causes a relatively high amount of heat build-up. Such heat build-up can cause the level of light output of the LEDs to significantly decrease over time after the LED is initially energized. Consequently, the brightness of the illumination is degraded.

In view of the foregoing, there is a need for a compact device and method for injecting light into the periphery of a waveguide such that the waveguide provides a bright, uniform illumination for the display.

### SUMMARY OF THE INVENTION

The present invention comprises an illumination device utilizing a waveguide. A series of point light sources are mounted in spaced relationship adjacent a peripheral portion of the waveguide. A series of diffusive reflective surfaces are provided adjacent the peripheral portion of the waveguide between pairs of the point light sources. The diffusive reflective surfaces are oriented relative to the series of point light sources and the waveguide so as to introduce light into regions of the waveguide between pairs of the point light sources, such that the peripheral portion of the waveguide is substantially uniformly illuminated. Preferably, the diffusive reflective surfaces comprise a series of posts mounted in spaced relationship adjacent the peripheral portion of the waveguide. In the preferred embodiment, the point light sources comprises LEDs, and a heat sink is coupled to the point light sources to draw heat therefrom. An angular spectrum restrictor, such as a brightness enhancing film, is preferably included in combination with a diffuser to enhance the brightness of the output.

In accordance with another aspect of the invention, a series of diffusive reflective optical cavities are formed by diffusive reflective surfaces. Each of the cavities has an entry mouth sized to receive a point light source and an exit mouth. A point light source is mounted at each of the entry mouths. A peripheral portion of a waveguide extends along the exit mouth of the diffusive reflective optical cavity.

2

A further aspect of the invention comprises an illumination device utilizing an optical cavity having an output aperture and a series of diffusive reflective optical cavities, each substantially smaller than the aforesaid optical cavity. The series of optical cavities have exit mouths disposed along a side of the aforesaid optical cavity. A series of point sources of light are mounted to emit light into the series of optical cavities, respectively, whereby light is injected from the exit mouth into a peripheral portion of the optical cavity.

An additional aspect of the invention comprises a method of illuminating a waveguide. Light emitted by a first point light source is confined using diffusive reflective surfaces to reflect the light. This confining is repeated for additional point light sources. All of the confined light is spatially arranged to substantially uniformly illuminate a peripheral portion of the waveguide.

### BRIEF DESCRIPTION OF THE DRAWINGS

These and other features of the invention will now be described with reference to the drawings of a preferred embodiment, which are intended to illustrate and not to limit the invention, and in which:

FIG. 1A is a perspective view of a personal digital assistant incorporating one embodiment of the illumination device of the present invention;

FIG. 1B is a cross-sectional view of the personal digital assistant along line 1B—1B of FIG. 1A;

FIG. 2 is an exploded view of the illumination device of the present invention;

FIG. 3 is a top view of a light guide of the illumination device;

FIG. 4 is a side view of the light guide of FIG. 3;

FIG. 5 is a top view of a waveguide of the illumination device;

FIG. 6A is a side view of the waveguide of FIG. 5;

FIG. 6B is an end view of the waveguide of FIG. 5;

FIG. 7 is a top view of a cover of the illumination device;

FIG. 8 is a side view of the cover of FIG. 7;

FIG. 9 is a top view of a heat sink of the illumination device;

FIG. 10 is a side view of the heat sink of FIG. 9;

FIG. 11 is a top view of the illumination device;

FIG. 12 is a cross-sectional view of the illumination device along line 12—12 of FIG. 11;

FIG. 13 is an enlarged top view of a portion of the light guide used with the illumination device;

FIG. 13A is a fragmentary plan view of an alternative embodiment of the waveguide in which diffusive reflective cavities are formed by the waveguide material; and

FIG. 14 is a graph illustrating the increased efficiency of the illumination device incorporating the heat sink component.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference to FIGS. 1A and 1B, one embodiment of the illumination device 40 (FIG. 2) of the present invention is incorporated into a personal digital assistant 30 comprised of an outer housing 32 that supports a display 36, such as, for example, a liquid crystal display (LCD). As best shown in FIG. 1B, the LCD display 36 has a front face 37 and an opposed rear face 38. The illumination device 40 is located within the outer housing 32 in a juxaposed relationship with

6,134,092

3

the display **36** and is configured to act as a backlight to the display **36**. In the illustrated embodiment, a set of electronic components **33** are located rearward of the illumination device **40** for providing power to the illumination device **40** and to the personal digital assistant **30** in a well known manner. While described in the context of backlighting a personal digital assistant, it will be understood that the invention may be used as a backlight for other devices, such as, for example, a cellular phone, pager, camcorder, digital camera, or global positioning system display. Moreover, although described herein as a backlight, it will be appreciated that the illumination device **40** may be also be used as an illumination device in any of a wide variety of applications, including as a front light.

With reference to the exploded view of FIG. 2, the illumination device **40** comprises a plurality of components, including a heat sink **42**, a light guide **44**, a waveguide **46**, a cover **48**, and a film stack **49**. A plurality of point light sources, such as light-emitting diodes (LEDs) **50**, are positioned adjacent the peripheral edges of the light guide **44** and are configured to inject light into the waveguide **46**, as described in more detail below. In the illustrated embodiment, each of a pair of LED strips **51**, such as printed circuit boards or electrical-conductive strips, mount the LEDs **50** in a linear array with equidistant spacing. The LEDs **50** within a strip **51** are parallel connected and the two strips **51** are series connected to one another via an electrical conductor **54**. The various components of the illumination device **50** are mechanically coupled to one another, as described more fully below with reference to FIGS. 11 and 12.

With reference to FIGS. 3 and 4, the light guide **44** of the disclosed embodiment comprises a planar member **56** having a substantially flat top surface **57** and an opposed, substantially flat bottom surface **58** parallel thereto. The planar member **56** is rectangular-shaped so as to define a pair of substantially straight, opposed side edges **62a** and **62b** (referred to collectively as "side edges **62**") and a pair of opposed, substantially straight end edges **63a** and **63b** (referred to collectively as "end edges **63**"). The end edges **63** are both shorter than either of the side edges **62**.

A plurality of guide members **60** are disposed in a spaced, side-by-side relationship along each of the side edges **62a** and **62b** of the planar member **56**. In the illustrated embodiment, each of the guide members **60** comprises a post with a triangular cross-section that extends upwardly from the top surface **57** of the planar member **56**. The post-shaped guide members **60** on the edge **62a** will be referred to as the members **60a** and those on the edges **62b** will be referred to as the members **60b**. The portion of the top surface **57** between the post-shaped guide members **60a** and the post-shaped guide members **60b** forms a waveguide receiving region.

The guide members **60** each include a pair of flat side surfaces **65** that angle toward each other and intersect to form an apex line **66** that points toward the waveguide receiving region. For clarity, the apexes **66** of the guide members **60a** are designated using the suffix "a"and the apexes **66** of the guide members **60b** are designated using the suffix "b."Preferably, the guide members **60a** are positioned such that the apexes **66a** are aligned along a first edge or boundary of the waveguide receiving region. Similarly, the guide members **60b** are preferably positioned such that the apexes **66b** are aligned along a second edge or boundary of the waveguide receiving region. The aforementioned side surfaces **65** of each post-shaped guide member **60** are disposed at an angle of about 45° relative to the adjacent

4

boundary of the waveguide receiving region. The remaining surface of the post-shaped guide member **60** is parallel to the side edges **62**.

In the illustrated embodiment, the top surfaces of the post-shaped guide members **60** are substantially flat and parallel to the top surface **57**. Moreover, it will be understood that the side surfaces **65**, while flat in the disclosed embodiment, may also be curved to form convex or concave surfaces.

With reference to FIGS. 3 and 4, the guide members **60** are spaced apart along the side edges **62** so as to define a plurality of spaces **70** between adjacent guide members **60**. Each of the spaces **70** is substantially funnel-shaped so as to form a relatively narrow entry mouth **71** adjacent the side edges **62**. The spaces **70** gradually widen in size moving from the entry mouths **71** toward the apexes **66** of the guide members **60** to thereby form an exit mouth between the apexes **66** adjacent the boundary of the waveguide receiving section. The exit mouths are wider than the entry mouths **71**. Moreover, the entry mouths **71** of the spaces **70** are preferably each configured to receive light from one of the LEDs **50** which are mounted adjacent thereto, as described more fully below.

The top surface **57** of the planar member **56** and the side surfaces **65** of the guide members **60** are comprised of a material which diffusively reflects light impinging thereon. In one embodiment, the top surface **57** of the planar member **56** and the side surfaces **65** of the guide members **60** are coated with a diffusive reflective material. Alternately, the planar member **56** and guide members **60** may be manufactured of a diffusive reflective material. In either case, the top surface **57** and the side surfaces **65** preferably have a reflectivity of at least 90%. More preferably, the top surface **57** and the side surfaces **65** have a reflectivity of at least 94% and, most preferably, the reflectivity of the surfaces **57** and **65** is at least 99%.

The diffusive reflective material on the top surface **57** and the side surfaces **65** may comprise a coating of one or more layers of diffusely reflective tape, such as DRP™ Backlight Reflector, manufactured by W. L. Gore & Associates. DRP™ Backlight Reflector has a reflectivity of approximately 97%–99.5%, depending on the thickness of the material and the wavelength of the light. Alternatively, the reflective material could comprise a paint or coating that is applied to the top surface **57** and the side surfaces **65**, such as white house paint or a more exotic material, such as the Labsphere Corporation's Spectraflect paint. Spectraflect paint's reflectivity is considerably higher than house paint, roughly 98%, while the reflectivity of a good white house paint is approximately 90%. As mentioned, the planar member **56** and the guide members **60** may also be manufactured of a diffusive reflective material, such as, for example, cycolac, which is manufactured by General Electric. Cycolac has a reflectivity of approximately 94%.

FIGS. 5, 6A, and 6B are top, side, and end views, respectively, of the waveguide **46**. In the illustrated embodiment, the waveguide **46** is substantially rectangular-shaped and includes a top surface **90** and an opposed bottom surface **92**. The bottom surface **92** of the waveguide **46** is curved so as to form a longitudinal indentation or trough in the center of the waveguide extending in a direction parallel to the first and second edges of the waveguide. As best shown in FIG. 6B, the curvature of the bottom surface **92** is smooth and continuous so as to define an area of reduced thickness in the center portion of the waveguide **46**, and provide an air space between the bottom surface **52** and the top surface **57** of the light guide **44**.

6,134,092

5

6

Such air gap provides a low index substance (i.e., air) along the bottom surface 92 to enhance the waveguiding function of the guide 46. The bottom surface 92 follows a geometric contour that redirects light propagating in the waveguide between the top surface 90 and the bottom surface 92, so that more of the light exits the center portion of the waveguide, thereby providing more uniform illumination from the top surface 90 of the waveguide 46.

A pair of opposed side surfaces 94a and 94b (referred to collectively as "side surfaces 94") and a pair of opposed end surfaces 95a and 95b (referred to collectively as "end surfaces 95") connect the top surface 90 to the bottom surface 92 and define the periphery or perimeter of the waveguide 46. The distance between the top and bottom surfaces 90 and 92 along the side surfaces 94 is substantially equal to the height of the post-shaped guide members 60, which in the disclosed embodiment is approximately 0.067 at the side surfaces 94. Preferably, the waveguide 46 is sized to be positioned on the light guide 44 between the guide members 60 such that the side surfaces 94a and 94b abut the apexes 66a and 66b, respectively, of the guide members 60. The end surfaces 95 are preferably coated with a reflective material, such as described above with respect to the light guide 44.

The waveguide 46 is preferably comprised of a material that is transparent to light produced by the LEDs 50, such as a transparent polymeric material, and may be manufactured by various well-known methods, such as machining or injection molding. Preferred materials for the waveguide 46 are acrylic, polycarbonate, and silicone. Acrylic, which has an index of refraction of approximately 1.5, is scratch resistant and has a lower cost relative to polycarbonate. Polycarbonate, which has an index of refraction of approximately 1.59, has higher temperature capabilities than acrylic. Polycarbonate also has improved mechanical capabilities over acrylic. Silicone has a refractive index of approximately 1.43. Alternatively, the waveguide 46 may be formed by a set of diffusive reflective surfaces that enclose an optical cavity containing a light transmissive medium, such as air.

The waveguide may be injection molded to include v-shaped grooves that are configured to be positioned within the spaces 70 between the guide members 60. In such case, the LEDs may be butt coupled to the waveguide by a suitable coupling gel.

With reference to FIGS. 7 and 8, the cover 48 of the illumination device 40 comprises a frame member 80 that is substantially planar in configuration and sized to fit over the light guide 44. An aperture 82 extends through the frame member 80 so as to define an optical output area or illumination region through which light escapes from the illumination device 40 to thereby illuminate the LCD display 36, as described more fully below. In the illustrated embodiment, the aperture 82 is rectangular-shaped, which corresponds to the rectangular shape of the display 36 of the personal digital assistant 30. It will be appreciated, however, that the aperture 82 may define any of a wide variety of shapes and sizes depending upon the desired shape and size of the illumination region.

As best shown in FIG. 8, the illustrated embodiment of the cover 48 includes a pair of opposed end walls 84 and 86 that extend downwardly from opposite end edges of the frame member 80. The end walls 84 and 86 preferably define a distance therebetween that is slightly larger than the distance between the end edges 63 of the light guide 44. Accordingly, the light guide 44 may be positioned snugly between the end

walls 84 and 86 of the cover 48. Each of the walls 84 and 86 extends perpendicularly from a top wall 85. Preferably, the interior surfaces formed by the walls 84, 85, and 86 are coated with the same diffusive reflective material as the surface 57 and the surfaces 65. Additionally, the end walls 84 and 86 are sized so that the top wall 85 abuts the tops of the post-shaped guide members 60.

With reference to FIGS. 9 and 10, a preferred embodiment of the illumination device 40 further comprises the heat sink 42 which is configured to be coupled to the light guide 44, as described more fully below. In the illustrated embodiment, the heat sink 42 comprises a substantially flat base portion 96 and a pair of opposed side walls 98a and 98b (referred to collectively as "side walls 98") that extend upwardly along opposed edges of the base portion 96. As best shown in FIG. 9, the base portion 96 of the heat sink 42 is substantially rectangular-shaped, and is approximately the same size as the planar member 56.

As shown in FIG. 10, the side walls 98 are bent so as to define a pair of opposed concave portions 102 adjacent the intersections of the side walls 98 with the base portion 96 of the heat sink 42. A pair of opposed convex portions 104 of the end walls 98 are formed above the concave portions 102. The side walls 98a and 98b preferably define a space therebetween that is sized to snugly receive the light guide 44. The heat sink 42 preferably comprises a material that readily absorbs heat and that is highly heat conductive, such as copper.

FIGS. 11 and 12 show the illumination device 40 in an assembled state. As best shown in FIG. 12, the light guide 44 is positioned within the heat sink 42 such that the planar member 56 of the light guide 44 is in a spaced parallel relationship to the base portion 96 of the heat sink 42. As best shown in FIG. 4, a set of legs 72 extend downwardly from the bottom surface 58 of the planar member 56. In the illustrated embodiment, two legs 72 are located near opposite corners of the planar member 56. However, the size, position, and number of legs 72 may be varied. With reference to FIG. 12, the legs 72 of the light guide 44 extend through apertures in the base portion 96 of the heat sink 42. The protruding ends of the legs 72 are used as reference points to facilitate alignment of the illumination device 40 during assembly.

With reference to FIGS. 11 and 12, an LED strip 51 is positioned between each of the side edges 62 of the light guide 44 and each of the side walls 98 of the heat sink 44. The LED strips 51 are preferably oriented so that an LED 50 is disposed at each of the mouths 71 of the spaces 70 between the guide members 60. The bent side walls 98 of the heat sink 42 causes the convex portions 104 (FIG. 10) of the side walls 98 to exert pressure against the LED strips 51 to thereby maintain a strong mechanical contact between the heat sink 42 and the LED strips 51. This facilitates the transfer of heat from the LEDs 50 to the heat sink 42. The pressure that the side walls 98 exert against the LED strips 51 is also transferred to the light guide 44 to thereby provide a slight biasing force of the guide members 60 on the waveguide 46 to inhibit the various components of the illumination device 40 from falling apart.

With reference to FIGS. 11 and 12, the waveguide 46 is mounted on the light guide 44 such that the bottom surface 92 of the waveguide 46 is juxtaposed with the top surface 57 of the light guide 44. As mentioned, the side surfaces 94a and 94b of the waveguide 46 preferably abut the apexes 66a and 66b, respectively, of the guide members 60. The cover 48 (shown in phantom lines) is mounted over the periphery

6,134,092

7

of the waveguide 46 with the aperture 82 preferably aligned midway between the apexes 66a and 66b.

In operation, the LEDs 50 are energized to introduce light into the waveguide 46. Preferably, the LEDs emit light having a wavelength in the range of 400 nm to 700 nm. The portion of the diffusive reflective top surface 57 between the diffusive reflective surfaces 65, together with the diffusive reflective interior surface of the top wall 85 of the frame 80, and the diffusive reflective side surfaces 65 of the guide members 60 form a series of diffusive reflective air filled cavities that confine the emitted light and inject it into the side surfaces 94 of the waveguide 46. Advantageously, the guide members 60 facilitate a uniform distribution of light from the point light sources into a peripheral portion (FIG. 13) of the waveguide 46, adjacent to the cavities.

FIG. 13 is an enlarged top view of a pair of the guide members 60 with an LED 50 positioned at the mouth 71 of a cavity comprising a space 70 between the guide members 60. Light rays from the LED 50 are represented by dashed lines. As shown, light rays emitted laterally from the LED 50 impinge the diffusive reflective side surfaces 65 of the guide members 60. The angled side surfaces 65 reflect the light rays into the waveguide 46. This reflected light fills the regions between adjacent LEDs 50 to thereby provide a relatively uniform distribution of light injection from the LED 50 into the peripheral portion 93 of the waveguide 46. The plurality of LEDs 50 along the length of the side surfaces 94 of the waveguide 46 thus provide a more or less uniform illumination profile along the peripheral portion 93 of the waveguide 46 adjacent the cavities 70.

Once injected into the waveguide 46, the light is guided towards the center of the aperture 82. The diffusive reflective surfaces, including the diffusive reflective top surface 57 of the light guide 44 and the diffusive reflective end surfaces 95 of the waveguide 46, mix the light to facilitate a uniform distribution across the aperture 82. The light eventually achieves the correct angles of incidence to exit the waveguide 46 through the top surface 90 and out of the aperture 82 in the cover 48. As shown in FIG. 1B, the illumination device 40 is juxtaposed with the LCD display 36 so that the light exiting the illumination device 40 backlights the LCD display 36.

Referring to FIG. 13A, in another embodiment, the waveguide 46 may be configured to include v-shaped grooves. The edges of the waveguide 46 (between the top and bottom surfaces thereof) may be coated with a diffusive reflective material to form diffusive reflective surfaces 67 within the v-shaped grooves. The LEDs 60 may be recessed into respective notches in the waveguide on flats between the v-shaped grooves. The diffusive reflective surfaces 67 on the waveguide material provide the same function as the diffusive reflective surfaces 65 of the guide members 60 (discussed above), thereby permitting the guide members 60 to be eliminated if desired. The portions of the waveguide material between the v-shaped grooves thus provide a series of diffusive reflective cavities 69 which uniformly illuminate the peripheral portion 93 of the waveguide that is adjacent the cavities 69. Although formed of transparent solid material, the cavities 69 function in substantially the same manner as the air-filled cavities 70 shown in FIG. 13.

Referring to FIG. 12, the top surface 90 of the waveguide 46 may be covered with an angular spectrum restrictor 108 that restricts the output radiation pattern from the aperture 82 of the cover 48 to a predetermined range of angles (in this context, the term "spectrum" is used in the sense of an angular spectrum rather than a wavelength spectrum). The

8

angular spectrum restrictor 108 comprises a planar micro-replicated optical structure, such as a holographic diffuser, binary diffractive diffuser, or array of microlenses or prisms. In the preferred embodiment, the angular spectrum restrictor 108 comprises a brightness enhancing film (BEF) which, in addition to restricting the output spectrum, enhances the intensity of the illumination from the illumination device 40.

The BEF 108 is preferably placed in physical contact with a diffuser 110 to collectively form a light quality enhancing apparatus (LQE) 112. In FIG. 12, the thickness of and spacing between the BEF 108 and the diffuser 110 is shown only for clarity of illustration. Preferably, the diffuser 110 is disposed between the BEF 108 and the waveguide 46 and in contact with the waveguide 46. The diffuser 110 desirably removes the effect of residual nonuniformities, such as cosmetic imperfections, in the surfaces of the waveguide 46. The diffuser 110 may comprise a translucent material, typically a thin plastic surface or volume diffuser, both of which are characterized by very low absorption and minimum energy losses. The diffuser 110 may be supplemented or replaced with a groove or scratching pattern on the top surface 90 that is formed by abrading the top surface 90 of the waveguide 46 with an abrasive, such as sandpaper. The abrading is preferably non-uniform such that the density of the scratches or grooves increase with distance from the light-emitting diodes 50.

As mentioned above, the BEF 108 restricts output illumination within defined boundary lines and also increases the brightness of the light exiting the aperture 82. In the preferred embodiment, the BEF 108 is a commercially available thin film having linear pyramidal structures, such as 3M model 90/50 film. The BEF transmits only those light rays from the waveguide that satisfy certain incidence angle criteria with respect to the top surface 90 of the waveguide 46. All other light rays are reflected back into the waveguide 46 toward the bottom, side, or end surfaces 92, 94, and 95 respectively, where they are reflected. In effect, the reflected rays are "recycled" until they are incident on the BEF 108 at an angle which permits them to pass through the BEF 108.

As is well known, a BEF, such as the BEF 108, concentrates illumination within boundaries defined by a pair of mutually inclined planes (which in cross-section form a "V") and does not provide concentration in the orthogonal direction. In some applications of the invention, it is preferable to concentrate the illumination within two orthogonal directions, and for such applications, a second BEF oriented orthogonally to the first BEF, may be included. With two crossed BEFs, the emission from the waveguide will be within boundaries resembling a truncated inverted cone. As is conventional in the art, the boundaries are defined by the full-width, halfmaximum (FWHM) of the optical intensity. By way of example, the boundaries of the cone may be inclined relative to a line normal to the top surface 90 by an angle of no more than about 35 degrees, in which case the illumination will be visible only within viewing angles of 35 degrees or less.

As mentioned, the heat sink 42 greatly improves the efficiency of the illumination device 40 by absorbing and dispersing heat generated by the LEDs 50. Light-emitting diodes typically undergo a significant decrease in light output over time after being initially energized. This is a result of the relatively high build-up of heat in the LED, which is caused by the relatively small thermal mass of a typical LED. FIG. 13 is a graph illustrating the light emitted by the illumination device 40 as a function of time. The solid line represents the light output of the illumination device utilized without the heat sink 40. After an initial illumination

6,134,092

9

of $I_o$ at energization, the LED typically undergoes a 25% decrease in light output after 60 seconds. The light output of the LED then gradually decreases over time until it reaches equilibrium after about 5 minutes with no heat sinking.

The dashed line of FIG. 14 represents the light output of the illumination device 40 when used with the heat sink 42. Advantageously, the heat sink 42 absorbs heat from the LEDs so that the there is significantly less decrease in light output over time. The thermal equilibrium of the illumination device 40 is thus improved when the heat sink 42 is incorporated in the illumination device 40. Typically, a device utilizing the heat sink 42 provides a 25% to 30% increase in light output (measured in foot lamberts or candela per square meter) over an illumination device 40 that does not use the heat sink 42.

Although the foregoing description of the preferred embodiment of the preferred invention has shown, described, and pointed out certain novel features of the invention, it will be understood that various omissions, substitutions, and changes in the form of the detail of the apparatus as illustrated as well as the uses thereof, may be made by those skilled in the art without departing from the spirit of the present invention. Consequently, the scope of the present invention should not be limited by the foregoing discussion, which is intended to illustrate rather than limit the scope of the invention.

What is claimed is:

1. An illumination device, comprising:

a waveguide having a peripheral portion;

a series of point light sources mounted in spaced relationship adjacent the peripheral portion of the waveguide;

a series of diffusive reflective surfaces adjacent the peripheral portion of the waveguide and between pairs of said point light sources, the diffusive reflective surfaces oriented relative to the series of point light sources and the waveguide so as to introduce light in regions of said waveguide between pairs of said point light sources whereby the peripheral portion of the waveguide is substantially uniformly illuminated.

2. The device of claim 1, wherein the diffusive reflective surfaces comprise a series of posts mounted in a spaced relationship adjacent the peripheral portion of the waveguide.

3. The device of claim 2, wherein each of the posts have triangular cross-section.

4. The device of claim 1, wherein the diffusive reflective surfaces are oriented at an angle of approximately 45° relative to the peripheral portion of the waveguide.

5. The device of claim 1, wherein the series of point light sources comprise light-emitting diodes mounted on an electrical-conductive strip of material.

6. The device of claim 1, additionally comprising a heat sink coupled to the series of point light sources.

7. The device of claim 1, wherein the waveguide comprises a top surface having an optical output area through which light exits the waveguide.

8. The device of claim 7, additionally comprising an angular spectrum restrictor proximate the top surface of the waveguide to enhance the brightness of the light exiting the waveguide.

9. The device of claim 8, additionally comprising a diffuser between the angular spectrum restrictor and the top surface of the waveguide.

10

10. The device of claim 9, wherein the diffuser comprises a series of scratches arranged in a non-uniform pattern on the top surface of the waveguide.

11. The device of claim 1, wherein the diffusive reflective surfaces have a reflectivity of at least approximately 90%.

12. An illumination device, comprising:

a series of diffusive reflective optical cavities formed by diffusive reflective surfaces, each of said cavities having an entry mouth sized to receive a point light source and an exit mouth;

a point light source mounted at each of the entry mouths;

a pair of surfaces forming a waveguide, said waveguide having a peripheral portion extending along the exit mouths of said diffusive reflective optical cavities.

13. The device of claim 12, wherein the diffusive reflective surfaces comprise diffusive reflective posts mounted adjacent the peripheral edge of the waveguide.

14. The device of claim 13, wherein the posts have a triangular-shaped cross-section.

15. The device of claim 12, additionally comprising a heat sink coupled to the point light sources.

16. The device of claim 12, wherein each of the optical cavities are funnel-shaped such that the exit mouth is larger than the entry mouth.

17. An illumination device, comprising:

an optical cavity having an output aperture;

a series of diffusive reflective optical cavities each substantially smaller than said optical cavity and having an exit mouth disposed along a side of said optical cavity;

a series of point sources of light mounted to emit light into said series of diffusive reflective optical cavities, respectively, whereby light is injected from said exit mouths into a peripheral portion of said optical cavity.

18. The device of claim 17, wherein said optical cavity comprises a waveguide.

19. The device of claim 18, wherein said series of diffusive reflective optical cavities are formed by a series of posts disposed in a side-by-side relationship along said side of said optical cavity.

20. The device of claim 17, wherein the point sources of light comprise light-emitting diodes.

21. An illumination device, comprising:

an optical cavity formed by diffusive reflective surfaces, said cavity having an output region through which light exits said cavity;

a plurality of guide members formed by diffusive reflective surfaces, the guide members positioned along a periphery of the optical cavity such that spaces are defined between each of the guide members, each of the spaces having an entry mouth spaced from the periphery of the optical cavity and an exit mouth wider than the entry mouth and adjacent the periphery of the optical cavity; and

a light source mounted at the entry mouths of each of the spaces between the guide members.

22. The device of claim 21, additionally comprising an angular spectrum restrictor proximate the output region of the optical cavity.

23. The device of claim 22, additionally comprising a diffuser adjacent the angular spectrum restrictor.

24. The device of claim 21, wherein each of the guide members have a triangular cross-section.

6,134,092

11

**25**. The device of claim **21**, wherein the guide members comprise a set of diffusive reflective surfaces disposed at an angle of approximately 45° relative to a peripheral edge of the waveguide.

**26**. A method of illuminating a waveguide, comprising:

confining light emitted by a first point light source by using diffusive reflective surfaces to reflect the light;

repeating said confining for additional point light sources;

spatially arranging all of the confined light to substantially uniformly illuminate a peripheral portion of said waveguide.

12

**27**. The method of claim **26**, additionally comprising coupling a heat sink to the point light sources to absorb heat therefrom.

**28**. The method of claim **26**, additionally comprising orienting the diffusive reflective surfaces at an angle of approximately 45° relative to the edge of the waveguide.

**29**. The method of claim **26**, additionally comprising mounting the point light sources in a side-by-side, spaced relationship along the peripheral portion of the waveguide.

* * * * *

**EXHIBIT  B**



US007280179B2

(12) **United States Patent**     (10) **Patent No.:**     **US 7,280,179 B2**
Hsu et al.                         (45) **Date of Patent:**     **Oct. 9, 2007**

(54) **LIQUID CRYSTAL DISPLAY CELL AND METHOD FOR MANUFACTURING THE SAME**

(75) Inventors: **Hsin-Yi Hsu**, Tainan County (TW); **Shang-Tai Tsa**, Tainan County (TW)

(73) Assignee: **CHI MEI Optoelectronics Corp.**, Tainan County (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 113 days.

(21) Appl. No.: **10/921,508**

(22) Filed: **Aug. 19, 2004**

(65) **Prior Publication Data**

US 2005/0094084 A1     May 5, 2005

(30) **Foreign Application Priority Data**

Nov. 3, 2003     (TW) .............................. 92130636 A

(51) **Int. Cl.**
**G02F 1/1339**     (2006.01)
(52) **U.S. Cl.** ...................... **349/153**; 349/190; 349/187
(58) **Field of Classification Search** ................ 349/153, 349/190, 187, 189
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

6,674,507 B2 *  1/2004  Yoshizoe ................... 349/190

6,822,725 B2 *  11/2004  Choo et al. ................. 349/187
2002/0012094 A1 *  1/2002  Suzuki ....................... 349/153

FOREIGN PATENT DOCUMENTS

JP       2002122870       4/2002

* cited by examiner

*Primary Examiner*—David Nelms
*Assistant Examiner*—(Nancy) Thanh-Nhan Nguyen
(74) *Attorney, Agent, or Firm*—Thomas, Kayden, Hortemeyer & Risley

(57) **ABSTRACT**

A liquid crystal display cell and a method for manufacturing the same are disclosed. The method includes the following steps. First, a sealing member including a main portion enclosing a display region and a protrusion part extending from the main portion is formed. Then, a liquid crystal material is dispensed upon one of a pair of substrates, and then one substrate is superposed upon the other substrate so as to perform alignment and assembly processes. After the sealing member is cured, the pair of substrates is cut thereby obtaining the liquid crystal display cell. The sealing member is formed by starting application of a sealing material to either one of a pair of substrates from a position outside of the display region toward the display region to form the protrusion part of the sealing member, and continuing the application of the sealing material along the display region to form the main portion of the sealing member.

**19 Claims, 5 Drawing Sheets**





# FIG. 1

FIG. 2



FIG. 3





FIG. 4



FIG. 5

US 7,280,179 B2

1

# LIQUID CRYSTAL DISPLAY CELL AND METHOD FOR MANUFACTURING THE SAME

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention generally relates to a liquid crystal display device, and more particularly relates to a liquid crystal display device manufactured by one drop fill (ODF) process and a method for manufacturing the same.

### 2. Description of the Related Art

Generally, conventional liquid crystal display (LCD) devices include a light source and a LCD cell and control the transmission of light by utilizing the birefringence characteristic of liquid crystal thereby displaying variety of images. In a process of making LCD panels, two substrates are generally assembled together as a cell by a sealing material with only an injection hole left thereof, and then a liquid crystal material is injected into the cell gap formed between the two substrates. Finally, the injection hole of the cell is sealed.

There has been a new technique recently provided in which a liquid crystal material is dispensed upon a substrate and the other substrate is covered thereupon. This technique greatly reduces the steps of a process of making LCD panels and improves manufacturing efficiencies. More specifically, the one drop fill (ODF) method includes the following steps. First, a sealant is applied to the whole periphery of one of a pair of substrates so as to form a sealing member and then a liquid crystal material is dispensed upon one of the pair of substrates. After the dispensing step, one substrate is superposed upon the other one and then the sealing member is to be cured. It should be noted that, in this method, a pure thermosetting sealant can not be used in the step of dispensing the liquid crystal material before the two substrates are sealed. Accordingly, the sealant for forming the sealing member is preferably a radiation-curable adhesive (e.g. an ultraviolet-curable adhesive).

Compared to the vacuum injection method widely utilized in making LCD cells, the one drop fill (ODF) method can greatly reduce the manufacturing cost of LCD cells and improve the yield rate due to following reasons. First, the ODF method can reduce the usage amount of liquid crystal material. Secondly, it can also reduce the time for liquid crystal material injection. Therefore, there exists a strong necessity of applying the ODF method to the process of manufacturing LCD cells.

However, in the ODF method, the sealing member formed before the liquid crystal material being dispensed is required to fully enclose a display region of one substrate without leaving any opening thereof. When the sealing member is formed by an application manner, it is designed to have an overlapping segment between the initial end and the final end of the sealant so as to ensure that the formed sealing member can fully enclose the display region. However, the usage amount of the sealant for forming this overlapping segment is generally more than that for forming other parts. Besides, at the beginning of applying the sealant, the applied amount of the sealant is not easily controlled resulting in that the applied amount of the initial end being too large. Therefore, after dispensing the liquid crystal material and superposing the two substrates, the shape of the initial end of the sealant is usually larger than its predetermined size and thus overlapped by a light-shielding matrix of the substrate. Consequently, in the step of curing the sealing member by a radiation (e.g. ultraviolet), the part of the

2

sealant covered (overlapped) by the light-shielding matrix will not be completely cured due to not obtaining rays from the radiation. Further, the uncured part of the sealant will react with the liquid crystal material and thus adversely affect the performance of the liquid crystal material.

Accordingly, in order to ensure that the sealing member can be completely cured so as not to react with the liquid crystal material, the distance between the sealing member and the part of the light-shielding matrix that causes a light-blocking effect should be kept larger. It signifies that the area outside the display region of an LCD panel should be increased or that the area of the display region should be reduced in an LCD panel having a fixed size. However, these significations are apparently not the trend of developing liquid crystal displays.

Accordingly, the present invention provides a liquid crystal display that can overcome or at least improve the above-mentioned problem situations.

## SUMMARY OF THE INVENTION

Therefore, it is an object of the present invention to provide a manufacturing method for sealing a liquid crystal material between two substrates by utilizing one drop fill (ODF) process, which can overcome or at least improve the above-mentioned problem situations.

In order to achieve above-mentioned and other objectives, the present invention provides a method for manufacturing liquid crystal display (LCD) cells that comprises the following steps. First, a sealing member including a main portion enclosing a display region and a protrusion part extending from the main portion is formed. Then, a liquid crystal material is dispensed upon one of a pair of substrates, and then one substrate is superposed upon the other substrate so as to perform alignment and assembly processes. After the sealing member is cured, the pair of substrates is cut thereby obtaining the LCD cells. The sealing member is formed by starting application of a sealing material to either one of a pair of substrates from a position outside the display region toward the display region to form the protrusion part of the sealing member, and continuing the application of the sealing material along the display region to form the main portion of the sealing member.

The LCD cell obtained through above-mentioned method comprises a pair of substrates, a liquid crystal layer sandwiched between the pair of substrates and a sealing member disposed between and at the periphery of the pair of substrates for fixing one of the substrates to the other, wherein the sealing member has a main portion enclosing a display region and a protrusion part extending from the main portion. Besides, the present invention also provides a liquid crystal display device having the LCD cell.

The present method for manufacturing LCD cells can keep the initial end of a sealing member, which is generally formed by a great amount of sealing material, away from the display region and thus more accurately control the width of the sealing member especially in the overlapping area of the sealing member and a light-shielding matrix such that the sealing member is not overlapped with the light-shielding matrix. Since the width of the sealing member can be accurately controlled, the formed sealing member can avoid overlapping with the light-shielding matrix without keeping a larger distance between the sealing member and the part of the light-shielding matrix that causes a light-blocking effect.

US 7,280,179 B2

3

BRIEF DESCRIPTION OF THE DRAWINGS

Other objects, advantages, and novel features of the invention will become more apparent from the following detailed description when taken in conjunction with the accompanying drawings.

FIG. 1 is a partially sectional view of a liquid crystal display cell according to one embodiment of the present invention.

FIGS. 2 to 4 illustrate the main steps of method for manufacturing liquid crystal display cells according to one embodiment of the present invention.

FIG. 5 is an exploded view of a liquid crystal display device according to one embodiment of the present invention.

DESCRIPTION OF THE PREFERRED EMBODIMENT

FIGS. 1 and 4 illustrate a liquid crystal display (LCD) cell 100 according to one embodiment of the present invention. Referring to FIG. 1, the LCD cell 100 includes a substrate 102, a substrate 104, a liquid crystal layer 106 sandwiched between the two substrates 102, 104 and a sealing member 110 (see FIG. 4) for sealing the liquid crystal layer 106. The liquid crystal layer 106 of the LCD cell 100 is formed by a one drop fill (ODF) method.

Referring to FIG. 1, the substrate 102 is a color filter (CF) substrate which is provided with a plurality of color filter areas 112 (only one is shown in FIG. 1), a light-shielding matrix 114 disposed between two adjacent color filter areas 112 and a transparent electrode 116 substantially coving the whole surface of the substrate 102. The substrate 104 is a thin film transistor (TFT) substrate which is provided with a plurality of parallel data lines (not shown), a plurality of parallel gate lines (not shown), a plurality of thin film transistors 118 each disposed at the intersection of each data line and each gate line and a plurality of pixel electrodes each disposed at the area defined by two adjacent gate lines and two adjacent data lines and opposite to each color filter area 112 of substrate 102. The LCD cell 100 has a display region 122 (see FIG. 4) such that the pixel electrodes 120 and the color filter areas 112 are substantially arranged within the display region 122.

Referring to FIG. 4, the sealing member 110 is disposed between and at the periphery of the substrate 102, 104 for fixing the substrate 102 to the substrate 104 and sealing the liquid crystal layer 106. The sealing member 110 has a main portion 110a enclosing the display region 122 and a protrusion part 110b extending from the main portion 110a wherein the liquid crystal layer 106 is formed within the display region 122 enclosed by the main portion 110a. The main portion 110a, for example, is a sealing element that is rectangular in shape or at least has four side walls.

It should be understood that one pair of substrates of the LCD cell can also be a color filter on array (COA) substrate and a counter substrate having a common electrode respectively. Besides, the pair of substrates of the LCD cell can also be an in-plane switching mode TFT substrate and a counter substrate.

Referring to FIGS. 2 to 4, the sealing member 110 is formed by following steps. Referring to FIGS. 2 and 3, first, an injector 202 is used to dispense a sealing material (or sealant) 204 on a glass substrate 206. It should be understood that a large glass substrate 206 can be used for manufacturing more than one LCD cells 100 at the same time in order to improve manufacturing efficiencies. The

4

injector 202 has a needle 202a, and the sealing material 204 contained within the injector 202 is squeezed out through the needle 202a by pressurizing a gas (e.g. Nitrogen) and then applied on the glass substrate 206. Since the sealing material 204 is squeezed by gas pressure, the applied amount of the sealing material 204 is not easily controlled such that the initial end 208 of the sealing member 110 is not uniform in size. More specifically, since the gas pressure at the beginning should be increased till a level greater than that which can start applying the sealing material 204, the applied amount of the sealing material 204 at the initial end 208 is uncontrollably over-applied. Therefore, the present invention provides a novel applying method. Referring to FIG. 2, the needle 202a of the injector 202 is set to a position outside the display region 122 for starting to apply the sealing material 204, and then the sealing material 204 is applied toward the display region 122 to form the protrusion part 110b of the sealing member 110. Referring to FIG. 3, the sealing material 204 is then continued being applied along the display region 122 according to the arrow direction till forming a small overlapping area 210, thereby enclosing the display region 122 and thus forming the main portion 110a of the sealing member 110. Preferably, the main portion 110a and the protrusion part 110b of the sealing member 110 are formed at a time. Accordingly, the initial end 208 of the sealing material 204 can be kept away from the display region 122 such that the width and volume of the sealing member, especially the overlapping area 210, can be more accurately controlled and the formed sealing member 110 is not overlapped with the light-shielding matrix 114 (see FIG. 1).

In the next step, a liquid crystal material is dispensed upon the glass substrate 206. Then, the other glass substrate (not shown) is superposed upon the glass substrate 206. In this stage, the liquid crystal material is enclosed by the main portion 110a of the sealing member 110 so as to form the liquid crystal layer 106.

After curing the sealing member 110 for fixing the substrate 206 to the other substrate (not shown), the pair of substrates is cut along a cutting line 212 (see FIG. 3). It should be noted that the cutting line 212 is preset outside the display region 122 and selectively across the protrusion part 110b of the sealing member 110. After the cutting step, a plurality of LCD cells 100 (see FIG. 4) can be obtained. It should be understood that the substrate 102 or substrate 104 can be one of plurality of substrates on a pair of mother glasses.

It should be noted that, in the present method, a pure thermosetting sealant can not be used in the step of dispensing the liquid crystal material before the two substrates are sealed. Accordingly, the sealing material for forming the sealing member 110 is preferably a radiation-curable adhesive (e.g. an ultraviolet-curable adhesive).

The LCD cell provided by the present invention can be used in a LCD device as shown in FIG. 5. The LCD device 500 includes the LCD cell 100, a light source (backlight device) 502 disposed under the LCD cell 100 for illuminating the LCD cell 100 and a frame 504 connecting to the backlight device 502, thereby assembling the LCD cell 100 and the backlight device 502 together to form the LCD device 500. The LCD device 500 further includes two printed circuit boards 506 and 508 which transmit control and driving signals to the LCD cell 100 through tape carrier packages (TCP) 510.

The method for manufacturing LCD cells provided by the present invention can utilize ODF method with low cost and time saving to form the liquid crystal layer and also can

US 7,280,179 B2

<table>
<tr><td>5</td><td>6</td></tr>
</table>

accurately control the width of the sealing member especially in the overlapping area of the sealing member and the light-shielding matrix. Therefore, the formed sealing member can surely avoid overlapping with the light-shielding matrix without keeping a larger distance between the sealing member and the part of the light-shielding matrix that causes a light-blocking effect.

Although the preferred embodiments of the invention have been disclosed for illustrative purposes, those skilled in the art will appreciate that various modifications, additions and substitutions are possible, without departing from the scope and spirit of the invention as disclosed in the accompanying claims.

What is claimed is:

**1.** A method for manufacturing a liquid crystal display cell comprising the following steps:

forming a sealing member having a main portion enclosing a display region and a protrusion part extending from the main portion wherein the sealing member is formed by the following steps:

applying a sealing material to either one of a pair of substrates from a position outside of the display region toward the display region to form the protrusion part of the sealing member; and

continuing applying the sealing material along the display region to form the main portion of the sealing member, wherein positions of an initial end and an overlapping area within the sealing member are different and the overlapping area extends along one side of the display region;

dispensing a liquid crystal material upon one of the pair of substrates;

superposing one of the pair of substrates upon the other one such that the liquid crystal material is enclosed by the sealing member;

curing the sealing member;

cutting the pair of substrates to obtain the liquid crystal display cell.

**2.** The method for manufacturing a liquid crystal display cell according to claim **1**, wherein the sealing material is a radiation-curable adhesive.

**3.** The method for manufacturing a liquid crystal display cell according to claim **1**, wherein one of the pair of substrates has a light-shielding matrix, and the sealing member is not overlapped with a vertical projected area of the light-shielding matrix.

**4.** The method for manufacturing a liquid crystal display cell according to claim **1**, wherein the cutting step proceeds along a cutting line of the pair of substrates, and the cutting line is across the protrusion part of the sealing member.

**5.** A liquid crystal display cell comprising:

a first substrate;

a second substrate;

a liquid crystal layer sandwiched between the first substrate and the second substrate; and

a sealing member disposed between the first and second substrates for fixing the first substrate to the second substrate, wherein the sealing member has a main portion enclosing a display region and a protrusion part extending from the main portion and the sealing member is formed by the following steps:

applying a sealing material to either one of a pair of substrates from a position outside of the display region toward the display region to form the protrusion part of the sealing member; and

continuing applying the sealing material along the display region to form the main portion of the sealing

member after forming the protrusion part, wherein positions of an initial end and an overlapping area within the sealing member are different and the overlapping area extends along one side of the display region.

**6.** The liquid crystal display cell according to claim **5**, wherein the sealing material is a radiation-curable adhesive.

**7.** The liquid crystal display cell according to claim **5**, wherein the first substrate has a light-shielding matrix, and the sealing member is not overlapped with a vertical projected area of the light-shielding matrix.

**8.** A liquid crystal display device including at least a backlight module and a liquid crystal display cell, wherein the liquid crystal display cell comprises:

a first substrate;

a second substrate;

a liquid crystal layer sandwiched between the first substrate and the second substrate; and

a sealing member disposed between the first and second substrates for fixing the first substrate to the second substrate, wherein the sealing member has a main portion enclosing a display region and a protrusion part extending from the main portion and the sealing member is formed by the following steps:

applying a sealing material to either one of a pair of substrates from a position outside of the display region toward the display region to form the protrusion part of the sealing member; and

continuing applying the sealing material along the display region to form the main portion of the sealing member after forming the protrusion part, wherein positions of an initial end and an overlapping area within the sealing member are different and the overlapping area extends along one side of the display region.

**9.** The liquid crystal display device according to claim **8**, wherein the sealing material is a radiation-curable adhesive.

**10.** The liquid crystal display device according to claim **8**, wherein the first substrate is a light-shielding matrix, and the sealing member is not overlapped with a vertical projected area of the light-shielding matrix.

**11.** A liquid crystal display cell comprising:

a first substrate;

a second substrate;

a sealing member disposed between the first and second substrates for fixing the first substrate to the second substrate, wherein the sealing member has a main portion enclosing a display region and only a protrusion part extending from the main portion, wherein positions of an initial end and an overlapping area within the sealing member are different and the overlapping area extends along one side of the display region; and

a liquid crystal layer sandwiched between the first substrate and the second substrate and formed within the display region enclosed by the main portion of the sealing member.

**12.** The liquid crystal display cell according to claim **11**, wherein the main portion has at least four side walls.

**13.** The liquid crystal display cell according to claim **12**, wherein the main portion is rectangular in shape.

**14.** The liquid crystal display cell according to claim **11**, wherein the first substrate has a light-shielding matrix, and the sealing member is not overlapped with a vertical projected area of the light-shielding matrix.

**15.** A liquid crystal display device including at least a backlight module and a liquid crystal display cell, wherein the liquid crystal display cell comprises:

US 7,280,179 B2

**7**

a first substrate;

a second substrate;

a sealing member disposed between the first and second substrates for fixing the first substrate to the second substrate, wherein the sealing member has a main portion enclosing a display region and only a protrusion part extending from the main portion, wherein positions of an initial end and an overlapping area within the sealing member are different and the overlapping area extends along one side of the display region; and

a liquid crystal layer sandwiched between the first substrate and the second substrate and formed within the display region enclosed by the main portion of the sealing member.

**8**

**16**. The liquid crystal display device according to claim **15**, wherein the first substrate has a light-shielding matrix, and the sealing member is not overlapped with a vertical projected area of the light-shielding matrix.

**17**. The liquid crystal display device according to claim **15**, wherein the main portion has at least four side walls.

**18**. The liquid crystal display device according to claim **17**, wherein the main portion is rectangular in shape.

**19**. The liquid crystal display device according to claim **15**, wherein the width of the protrusion part is substantially the same width as the main portion enclosing the display region.

\* \* \* \* \*